PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice* application to be filed)
sazalesin@pbwt.com
Jane Metcalf (*pro hac vice* application to be filed)
jmetcalf@pbwt.com
Shelli Gimelstein (*pro hac vice* application to be filed)
sgimelstein@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 336-2000
Facsimile:   (212) 336-2222

CARLTON FIELDS, LLP
Mark A. Neubauer (SBN 73728)
mneubauer@carltonfields.com
2029 Century Park East, Suite 1200
Los Angeles, California 90067-2913
Telephone:   (310) 843-6300
Facsimile:   (310) 843-6301

*Attorneys for Defendant The Brita Products Company*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE BRITA PRODUCTS COMPANY,<br><br>Defendant. | Case No.  2:23-cv-7851<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>Removed from the Superior Court of California, Los Angeles County, Case No. 23STCV19534 |

TO THE JUDGES FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

**PLEASE TAKE NOTICE** that The Brita Products Company ("Brita") hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 from the Superior Court for the State of California for the County of Los Angeles to the United States District Court for the Central District of California. Brita is represented by the undersigned counsel and consents to this Notice of Removal. The grounds for removal are set forth below.

1. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as Brita executed on August 22, 2023 an acknowledgment of receipt of the Complaint, a true and correct copy of which is attached as Exhibit B.

2. This action is properly removed to the United States District Court for the Central District of California, and venue is proper in this District, because the Superior Court for the State of California for the County of Los Angeles, in which this action was originally filed, is within the Central District of California. *See* 28 U.S.C. §§ 84(c), 1441(a).

3. Pursuant to 28 U.S.C. § 1446(d), written notice of removal of this action will be promptly served upon Plaintiff's counsel, and a Notice of Filing of Notice of Removal is being filed with the Clerk of the Superior Court for the State of California for the County of Los Angeles.

4. The Court has jurisdiction under the Class Action Fairness Act of 2005, Pub L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified at, *inter alia*, 28 U.S.C. §§ 1332(d), 1441(a), 1452, and 1453. As detailed below, this is a putative class action, comprised of more than 100 members, which places in controversy more than $5 million, and there is minimal diversity between the parties. *See infra* ¶¶ 17-32.

## PLAINTIFF'S COMPLAINT

1. On August 16, 2023, Plaintiff Nicholas Brown commenced this action

by filing a Class Action Complaint in the Superior Court for the State of California for the County of Los Angeles, captioned *Nicholas Brown, Individually and on Behalf of All Others Similarly Situated vs. The Brita Products Company*, Case No. 23STCV19534. As required by 28 U.S.C. § 1446(a), attached as Exhibit A are copies of all process, pleadings, orders, and other papers or exhibits filed in the state court.

2. Plaintiff alleges that he is a resident of California. Cmplt. ¶ 10(a). He does not expressly allege his state of citizenship, as opposed to his state of residence.

3. The Complaint names Brita as a defendant and Plaintiff alleges that Brita is a corporation with its principal place of business in Alameda, California. Cmplt. ¶ 12.

4. Plaintiff's claims relate to certain Brita® brand water filters, pitchers, and dispensers (the "Products") manufactured, marketed, advertised, or sold by Brita. Plaintiff explicitly names 35 different Products in Exhibit 1 of the Complaint.

5. Plaintiff claims that Brita's labeling, advertising, marketing, and packaging of the Products with certain "Challenged Representations"[1], including the so-called "Material Omission"[2], is false and misleading because it leads reasonable

---

[1] The complete, enumerated list of Challenged Representations is as follows: "Brita Water Filtration System"; "Cleaner, Great-Tasting Water" or "Healthier, Great-Tasting Water"; "The #1 Filter"; "Reduces Chlorine (taste and odor) and more!"; "Reduces Chlorine (taste and odor), Mercury, Copper and more"; and "Reduces 3X Contaminants." Cmplt. ¶ 3.

[2] The purported "Material Omission" is the "fail[ure] to state, expressly, clearly, and conspicuously … that the Products will not remove or reduce contaminants hazardous to health, including [certain] Common Hazardous Contaminants"—loosely "defined" to mean "some of the highest risk, notorious, or prevalent contaminants [in] drinking water, such as arsenic, chromium-6 (hexavalent chromium), nitrate and nitrates, perfluorooctanoic acid (PFOA), perfluorooctane sulfonate (PFOS), radium, total trihalomethanes (TTHMs), and uranium, among others"—"to below lab detection limits." Cmplt. ¶¶ 3, 4.

consumers to believe that the Products completely remove from tap water, or reduce to below lab detection limits, all common contaminants that are hazardous to health. Cmplt. ¶ 34.

6. Plaintiff contends that he and other consumers have suffered injury because they would not have purchased the Products or would not have paid a "price premium" for them had they known that the Challenged Representations were false and the Products did not have the attributes claimed, promised, warranted, advertised, and/or represented. Cmplt. ¶ 42.

7. Plaintiff purports to assert claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Count I), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*. (Count II), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. (Count III); breach of warranty (Count IV); and unjust enrichment (Count V).

8. Plaintiff seeks to litigate his claims on behalf of himself and a proposed "Nationwide Class" defined as "[a]ll residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations or Material Omission on the Products' labels or packaging, for purposes other than resale," and a proposed "California Subclass" defined as "[a]ll residents of California who, within four years prior to the filing of this action, purchased the Products, containing the Challenged Representations or Material Omission on the Products' labels or packaging, for purposes other than resale." Cmplt. ¶ 45.

9. Among other forms of relief, Plaintiff seeks class certification, declaratory relief, an injunction, damages, restitution and/or disgorgement, punitive damages/penalties, attorney's fees and costs, and pre- and post-judgment interest. Cmplt. Prayer for Relief.

# BASIS OF FEDERAL JURISDICTION UNDER
# THE CLASS ACTION FAIRNESS ACT

10. This action is removable to this Court because federal diversity jurisdiction exists over Plaintiff's claims pursuant to CAFA.

11. Congress enacted CAFA to enlarge federal jurisdiction over class actions. CAFA applies to any civil action commenced on or after February 18, 2005. This action was commenced on August 16, 2023, well after CAFA's effective date.

12. CAFA provides that a putative class action against a non-governmental entity may be removed to federal court if: (a) the number of proposed class members is not less than 100; (b) any member of the proposed class is a citizen of a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b). As set forth below, each of these requirements is satisfied.

### A. There Are More Than 100 Putative Class Members

13. CAFA's first requirement, that the proposed class contain at least 100 members, is satisfied. *See* 28 U.S.C. § 1332(d)(5).

14. Plaintiff's proposed class is defined as "[a]ll residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations or Material Omission on the Products' labels or packaging, for purposes other than resale" (Nationwide Class) and "[a]ll residents of California who, within four years prior to the filing of this action, purchased the Products, containing the Challenged Representations or Material Omission on the Products' labels or packaging, for purposes other than resale" (California Subclass). Cmplt. ¶ 45.

15. Plaintiff acknowledges that the members of the class are "numerous" and states that he believes the proposed Nationwide Class contains "tens of thousands of purchasers" and the proposed California Subclass contains "thousands

of purchasers (if not more)." Cmplt. ¶ 48.

16. It is therefore reasonable to assume that there are far more than 100 members in the putative class.

### B. Minimal Diversity Exists Between The Parties

17. CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, is also satisfied. *See* 28 U.S.C. § 1332(d)(2).

18. At the time this lawsuit was filed, and at all other times relevant to this lawsuit, Brita has been incorporated in Delaware and has maintained its principal place of business in California. *See* Exhibit C. Thus, Brita is a citizen of California and Delaware for purposes of CAFA. *See* 28 U.S.C. § 1332(c)(1).

19. Plaintiff purports to represent a class of "[a]ll residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations or Material Omission on the Products' labels or packaging, for purposes other than resale." Cmplt. ¶ 45. As such, at least one member of the putative class is a citizen of a state other than California.

20. Diversity of citizenship therefore exists between at least one proposed class member and Brita, satisfying 28 U.S.C. § 1332(d)(2).

### C. The Amount In Controversy Exceeds $5 Million

21. CAFA's final requirement—that the amount in controversy, exclusive of interest and costs, exceed $5 million—is also satisfied. *See* 28 U.S.C. § 1332(d)(2).

22. Although Brita disputes the allegations in the Complaint and denies all liability and damages, Plaintiff's allegations and prayer for relief, irrespective of their merit, place in controversy an amount greater than $5 million.

23. Where, as here, the complaint does not set forth a specific sum of

damages sought, a defendant need only make a "plausible allegation" that the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). The defendant need not make "evidentiary submissions" to establish the amount in controversy, but a district court may consider "summary judgment-type evidence" if the defendant elects to offer it. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

24. On behalf of the putative Nationwide Class and California Subclass, Plaintiff seeks, *inter alia*, "damages, restitution, and/or disgorgement of ill-gotten gains" to compensate for "the amounts paid for the Products, and any interest that would have accrued on those monies." Cmplt. ¶¶ 69, 80, 88, 98, 105, 120, 128, 135.

25. During the three-year fiscal period prior to the filing of the Complaint, net sales of Brita water filtration products in the United States were nearly $800 million. In fiscal year 2023, for example, net sales of Brita water filtration products, as reported by Brita's corporate parent, The Clorox Company, were roughly $296 million. *See* The Clorox Company, Annual Report (Form 10-K) (August 10, 2022) (indicating that sales of water filtration products comprised 4% of The Clorox Company's $7.4 billion in net sales).[3] Similarly, in fiscal year 2022, net sales of Brita water filtration products totaled approximately $284 million. *See* The Clorox Company, Annual Report (Form 10-K) (August 10, 2022) (indicating that sales of water filtration products comprised 4% of The Clorox Company's $7.1 billion in net sales). And in fiscal year 2021, net sales of water filtration products amounted to roughly $219 million. *See* The Clorox Company, Annual Report (Form 10-K) (August 10, 2021) (indicating that sales of water filtration products comprised 3% of The Clorox Company's $7.3 billion in net sales). Indeed, as set forth in the

---

[3] The Clorox Company's fiscal year runs from July 1 through June 30. "International" sales are separately reported and not included in "water filtration" sales.

1  accompanying declaration of Robert Foster ("Foster Decl."), sales to *just one major*
2  *retailer* during the same three-year period exceeded $200 million. Foster Decl. ¶ 9.
3  There can thus be no doubt the amount in controversy exceeds $5 million. CAFA's
4  $5 million amount-in-controversy requirement, therefore, is satisfied on the basis of
5  Plaintiff's restitution demand alone, without considering any other requested relief.

6        26.    Plaintiff also seeks injunctive relief requiring Brita to change its
7  business practices, which may include one or more of the following: removal or
8  modification of the Challenged Representations and disclosure of the Material
9  Omissions on the Products' labels and/or packaging; removal or modification of the
10 Challenged Representations and disclosure of the Material Omissions in the
11 Products' advertising; modification of the Product's Filters so that they live up to
12 the Challenged Representations; registration of all unregistered Products with the
13 California Water Board; certification of each and every performance claim by a
14 California-approved lab, including the Challenged Representations, consistent with
15 Cal. Health & Safety Code §§ 116825, et seq.; and/or discontinuance of the
16 Product's manufacture, marketing, and/or sale. Cmplt. ¶¶ 7, 44(c), 68, 79, 87, 97,
17 121, Prayer for Relief C. It is common sense that complying with these demands
18 would impose millions of dollars of costs on, and cause substantial lost profits to,
19 Brita. These sums are also included in the amount in controversy, driving it even
20 further above $5 million. See Tuong Hoang v. Supervalu Inc., 541 F. App'x 747,
21 747–48 (9th Cir. 2013); see also Int'l Padi, Inc. v. Diverlink, 2005 U.S. App. LEXIS
22 14234, at *3-4 (9th Cir. July 13, 2005) ("[I]n determining the amount in controversy,
23 we may also include the value of the requested injunctive relief to either party.").

24       27.    Plaintiff also seeks payment of attorney's fees (Cmplt. Prayer for Relief
25 F), which further increases the amount in controversy above $5 million. *See*
26 *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007)
27 ("We have held that attorneys' fees were properly included in the amount in

controversy in a class action.").

28. Accordingly, based on the Complaint's demands for restitution, injunctive relief, and attorney's fees, Brita has plausibly alleged that the amount in controversy, exclusive of interest and costs, far exceeds CAFA's $5 million jurisdictional threshold.

### D. None of CAFA's Jurisdictional Exceptions Applies Here

29. To effect removal, Brita's only burden is to plausibly allege that CAFA's three jurisdictional requirements are met. Brita does not have the burden to allege or prove the *inapplicability* of CAFA's jurisdictional exceptions found in 28 U.S.C. § 1332(d)(3) and (d)(4). The burden of asserting and proving the applicability of those exceptions lies squarely with Plaintiff. *See Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).

30. For the avoidance of doubt, however, none of CAFA's jurisdictional exceptions could apply in this case.

31. 28 U.S.C. § 1332(d)(4)(A)—the so-called "local controversy" exception—requires a district court to decline jurisdiction over a removed class action under certain circumstances. However, there are at least two reasons why the exception does not apply here.

32. First, for the "local controversy" exception to apply, "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate" must be "citizens of the State in which the action was originally filed." *Id.*

33. This requirement is not met here. Plaintiff alleges there are "tens of thousands (if not more)" nationwide class members and only "thousands" of California subclass members. Based on these allegations and in view of Brita's nationwide sales footprint, Plaintiff cannot show that the California subclass members comprise more than two-thirds of the total putative class members.

34. Second, the "local controversy" exception applies only where the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III).

35. Here, the Products at issue were advertised and sold on a nationwide basis—not merely in California. Therefore, to the extent the advertising and sale of the Products caused any injury (which Brita denies), that injury was distributed across the nation and did not occur "principal[ly]" in California. *See Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086–87 (N.D. Cal. 2011) ("If the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for [the 'local controversy'] exception, even if it were brought only as a single-state class action. In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class members were injured.").

36. 28 U.S.C. § 1332(d)(4)(B)—the so-called "home state" exception—requires a district court to decline jurisdiction over a removed class action under certain circumstances. One of the necessary prerequisites for this exception is that "two-thirds or more of the members of all proposed plaintiff classes in the aggregate" must be "citizens of the State in which the action was originally filed." *Id.*

37. For the reasons discussed above, Plaintiff cannot satisfy the requirement to demonstrate that two-thirds or more of the members of all proposed plaintiff classes are California citizens.

38. Lastly, 28 U.S.C. § 1332(d)(3)—the so-called "interests of justice" exception—*permits* a court to decline jurisdiction over a removed class action "in the interests of justice," in its discretion, under certain circumstances.

39. One necessary prerequisite for this exception is that "greater than one-

-10-

third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3). For the reasons discussed above, this mandatory prerequisite is not met here, because Plaintiff cannot demonstrate that at least one-third of putative class members are California citizens.

40. Even if this mandatory prerequisite were met, the six discretionary factors relevant to the "interests of justice" exception also militate in favor of retaining jurisdiction. For example, because the Products were advertised and sold nationwide and many of the factual allegations underlying Plaintiff's claims focus on nationwide tap water contamination and federal regulation of water quality, including standards set by the U.S. Environmental Protection Agency (*see* Cmplt. ¶¶ 13-31), the underlying controversy is a "matter of national or interstate interest," 28 U.S.C. § 1332(d)(3)(A) and is not "local" to California. *See, e.g., Melissa D. Duflock Revocable Tr.*, 2013 WL 4236397, at *3–7 (citing Rep. 109–14, 36, 2005 U.S.C.C.A.N. 3, 35); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1068 (N.D. Cal. 2011).

41. In sum, although Brita does not bear the burden of establishing that CAFA's jurisdictional exceptions are inapplicable, Brita has nonetheless shown their inapplicability.

## CONCLUSION

42. For the foregoing reasons, this action is properly removed to this Court.

43. Brita reserves the right to amend or supplement this Notice of Removal, and reserves all rights and defenses, including those available under the Federal Rule of Civil Procedure 12.

**WHEREFORE**, Brita respectfully removes this action from the Superior Court for the State of California for the County of Los Angeles to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332,

1441, 1446, and 1453.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being contemporaneously filed with the Superior Court of the State of California, County of Los Angeles and served upon Plaintiff's counsel.

DATED:  September 20, 2023

PATTERSON BELKNAP WEBB & TYLER LLP

CARLTON FIELDS, LLP

By:   /s/ *Mark A. Neubauer*
　　MARK A. NEUBAUER

*Attorneys for Defendant The Brita Products Company*

# CERTIFICATE OF SERVICE

I, Mark A. Neubauer, hereby certify that, on September 20, 2023, a true and correct copy of the foregoing Notice of Removal, along with all exhibits thereto, was served upon counsel for Plaintiff by regular first-class mail, postage prepaid, addressed to:

CLARKSON LAW FIRM, P.C.
Ryan J. Clarkson (257074)
Katherine A. Bruce (288694)
Kelsey J. Elling (337915)
Olivia Treister (341191)
22525 Pacific Coast Highway
Malibu, CA 90265

DATED: September 20, 2023     CARLTON FIELDS, LLP

By:  /s/ *Mark A. Neubauer*

MARK A. NEUBAUER

*Attorneys for Defendant The Brita Products Company*