# EXHIBIT A

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
Olivia Treister (SBN 341191)
*otreister@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/16/2023 9:39 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

NICHOLAS BROWN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE BRITA PRODUCTS COMPANY,

Defendant.

Case No.: 23STCV19534

## CLASS ACTION COMPLAINT

1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
2. Violation of False Advertising Law (Cal. Bus. & Prof. Code § 17500)
3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)
4. Breach of Warranty
5. Unjust Enrichment

## JURY TRIAL DEMAND

1

## TABLE OF CONTENTS

2

**Page No.**

3   I.    INTRODUCTION ........................................................................................1

4   II.   JURISDICTION .........................................................................................6

5   III.  VENUE ......................................................................................................7

6   IV.   PARTIES ...................................................................................................7

7         A.   Plaintiff .........................................................................................7

8         B.   Defendant ......................................................................................9

9   V.    FACTUAL ALLEGATIONS .....................................................................9

10        A.   Regulatory Background and Contamination of Tap Water ...........9

11        B.   Water Contaminants' Health Hazards & Defendant's Products' Failure to

12             Perform ......................................................................................23

13        C.   Materiality of Challenged Representations, Reasonable Consumer's Perception, and

14             the Failure of the Products to Fulfill Defendant's Promises....................36

15        D.   Plaintiff and Reasonable Consumers Were Misled by the Challenged

16             Representations and Material Omission into Buying the Products, to Their

17             Detriment ....................................................................................38

18        E.   The Products are Substantially Similar..................................................42

19        F.   No Adequate Remedy at Law .................................................43

20  VI.   CLASS ACTION ALLEGATIONS ..........................................................45

21  VII.  CAUSES OF ACTION .............................................................................48

22        COUNT ONE .............................................................................48

23             "Unfair" Prong ............................................................................51

24             "Fraudulent" Prong .....................................................................53

25             "Unlawful" Prong ........................................................................54

26        COUNT TWO .............................................................................58

27        COUNT THREE...........................................................................60

28        COUNT FOUR ............................................................................63

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

i

COUNT FIVE.............................................................................................................65

VIII. PRAYER FOR RELIEF ............................................................................................66

IX.   DEMAND FOR JURY TRIAL ................................................................................68

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

**COMPLAINT**

1.    Plaintiff Nicholas Brown ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), brings this class action complaint against Defendant The Brita Products Company ("**Defendant**" and/or "**Brita**"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

2.    **Background.** Safe and affordable access to clean water is an internationally recognized and fundamental human right, the lack of which has devastating effects on other basic human rights including the health, dignity, and prosperity of billions of people.[1] Numerous municipalities across the United States have recognized the fundamental right to safe and clean water, including, for example, the California legislature. *See*, *e.g.*, Cal. Water Code § 106.3(a) (2012). Consumers have poured billions of dollars into the filtered and purified water market.[2] Companies, like Defendant, manufacture, distribute, and sell home water treatment devices to make millions off people's need for safe and affordable drinking water, including particularly vulnerable or health and environmentally conscious sects of society, such as those who live in disaster stricken areas where access to clean and safe drinking water has been disrupted; rural and metropolitan areas that do not have publicly available access to clean and safe drinking water either because constituents rely on well-water or their water tables and reservoirs have pollutants; and health or environmentally conscious individuals who are particularly concerned about hazardous contaminants in their drinking water or wish to avoid using plastic water bottles. No matter where people reside, or their socioeconomic status and educational background, consumers expect that when they purchase a water filtration device, particularly one with the Challenged Representations at issue here, that it

---

[1]    *Resolution Adopted by the General Assembly on 28 July 2010*, UNITED NATIONS, https://www.un.org/waterforlifedecade/human_right_to_water.shtml#:~:text=On%2028%20July%202010%2C%20through,realisation%20of%20all%20human%20rights (last visited Aug. 15, 2023);, Human Rights to Water and Sanitation, UNITED NATIONS,  https://www.unwater.org/water-facts/human-rights/ (last visited Aug. 15, 2023).

[2]    *US Water Purifier Market*, FORTUNE BUSINESS INSIGHTS, https://www.fortunebusinessinsights.com/us-water-purifier-market-104696 (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

will remove and effectively reduce hazardous contaminants commonly found in drinking water. This case is about Defendant, the manufacturer, marketer, advertiser, and seller of certain Brita brand water pitchers, dispensers, and filters (the "**Products**"), that chose to take advantage of consumers and their families' basic and fundamental need for clean and safe drinking water by misleadingly and deceptively marketing their Products to convince consumers that they will remove common hazardous contaminants from drinking water, or in the very least reduce them to below lab detection limits. Unfortunately, the Products are not nearly as effective as Defendant deliberately leads people to believe, causing consumers to overpay millions and forego more effective alternatives. In this way, Defendant has not only bilked millions of dollars from consumers in ill-gotten gains, but Defendant has put the health and welfare of millions of consumers and their families at risk.

3.    **Challenged Representations.** In an effort to increase profits and gain an unfair advantage over its lawfully acting competitors, Defendant falsely and misleadingly markets, advertises, labels, and packages certain of its Brita brand water Pitchers, Dispensers, and Filters (the "**Products**") with the Challenged Representations: "BRITA WATER FILTRATION SYSTEM" ("**WFS Identification Claim(s)**"); "Cleaner, Great-Tasting Water" or "Healthier, Great-Tasting Water" ("**Clean Claims(s)**"); "The #1 FILTER" ("**#1 Filter Claims**"); and/or "REDUCES Chlorine (taste and odor) and more!", "REDUCES Chlorine (taste and odor), Mercury, Copper and more", "Reduces Chlorine (taste and odor), Mercury, Copper and more", "Reduces 3X Contaminants" ("**More Reduction Claim(s)**") (collectively, the "**Challenged Representations**"). *See* **Exhibit 2** (Product Images); *see also*, *infra* at ¶ 33. The Challenged Representations mislead reasonable consumers into believing that the Products remove or reduce to below lab detection limits common contaminants from their drinking water that are hazardous to health, including the Common Hazardous Contaminants. *See*, *infra* at ¶ 6 (identifying each Product at issue) and at ¶ 4 (identifying Common Hazardous Contaminants); *see also* **Exhibit 1** (Product List); **Exhibit 2** (Product Images); **Exhibit 3** (Performance Chart listing all contaminants, the reduction rate (if any), and highlighting contaminants hazardous to health in red, including the Common Hazardous Contaminants, for each System and Filter). Not only are the Products home water treatment devices ("**WTDs**"), each of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

which Defendant uniformly names and prominently labels as a "BRITA WATER FILTRATION SYSTEM," but Defendant also uses one or more of the above statements and water-related imagery on the Products' front labels and packaging to advertise the Products as home WTDs that will remove or reduce to below lab detection limits common hazardous contaminants from their drinking water, including the Common Hazardous Contaminants. Defendant also fails to state, expressly, clearly, and conspicuously on the Products' packaging and labels that the Products will not remove or reduce contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detection limits ("**Material Omission**"). *See id.*

4.      **Common Hazardous Contaminants, Lack of Registrations, and Lack of Certifications.** The Products fail to remove or reduce to below lab detection limits some of the highest risk, notorious, or prevalent contaminants from drinking water, such as arsenic, chromium-6 (hexavalent chromium), nitrate and nitrites, perfluorooctanoic acid (PFOA), perfluorooctane sulfonate (PFOS), radium, total trihalomethanes (TTHMs), and uranium, among others ("**Common Hazardous Contaminants**"). *See* **Exhibit 3** (Performance Chart); **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). As summarized in the Performance Chart, attached as **Exhibit 3**, none of the Products remove or reduce a litany of common water contaminants hazardous to health to below lab detection limits (indicated in red and tested according to NSF/ANSI 53), including the Common Hazardous Contaminants highlighted here. In addition, as identified in red on the Product List, attached as **Exhibit 1**, numerous Products have not been registered with the California Water Board pursuant to Cal. Health & Safety Code sections 116825, *et seq.*, throughout the time that they have been marketed and sold in the State of California, making their marketing and sale unlawful. *See* **Exhibit 1** (Product List). Similarly, none of the Products have been certified pursuant to Cal. Health & Safety Code sections 116825, *et seq.* to remove or reduce contaminants hazardous to health to below lab detection limits, including the Common Hazardous Contaminants highlighted here, also making their marketing and sale in the State of California unlawful. *See* **Exhibit 3** (Performance Chart).

5.      **The Deception of the Challenged Representations and Unlawful Marketing & Sale of the Products.** The Challenged Representations and Material Omission have misled

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

reasonable consumers, including Plaintiff, into believing that the Products will remove or reduce contaminants hazardous to their health, including the Common Hazardous Contaminants, to below lab detectable limits. However, the Products fail to live up to Defendant's promises. Contrary to the Challenged Representations, the Products fail to entirely remove or reduce the hazardous contaminants that are listed in the Performance, Tap Water Concentration and Safety Limits, and Health Hazards Charts, including the Common Hazardous Contaminants highlighted here. *See* **Exhibit 3-5**. Indeed, the Products fail to significantly reduce, or have otherwise not been certified to reduce, numerous contaminants hazardous to health. *See* **Exhibit 3** (Performance Chart) (blanks indicate no reduction/certification). Additionally, the Products have not been certified to remove or reduce contaminants hazardous to health to below lab detectible limits, including the Common Hazardous Contaminants highlighted here. *See* **Exhibit 3-5**. To be sure, several Products are not registered with the California State Water Resources Control Board ("**California Water Board**"). *See* **Exhibit 1** (Product List). Through falsely, misleadingly, and deceptively marketing the Products with the Challenged Representations and Material Omission, Defendant has sought to take advantage of consumers' need for safe and clean drinking water. In this way, Defendant has charged consumers a premium for Products that comport with the Challenged Representations that they would not have otherwise paid if Defendant disclosed the Material Omission. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage. Accordingly, Defendant's Challenged Representations and Material Omission are misleading and deceptive, and therefore unlawful.

6. **The Products.** The Products at issue are Brita-brand Standard Water Filters (Model #OB03), Stream Filters (Model #OB05), and Elite/Longlast Filters (Model #OB06) (collectively, the "**Filters**"), including all compatible Brita-brand water Dispensers and water Pitchers (collectively, the "**Systems**"), sold to consumers in the United States and the State of California, that contain one or more of the Challenged Representations or contain the Material Omission on Products labels and/or packaging, in all sizes, variations, packs, sets, and bundles (collectively referred to herein and throughout this complaint as the "**Products**"). The Products include, but are not necessarily limited to:

a. **Pitchers-Standard/Elite/Longlast.** Brita water pitchers compatible with the Standard Filter (Model #OB03) and Elite/Longlast Filter (Model #OB06), including but not necessarily limited to:

1) Amalfi (Model #OB32)
2) Atlantis (Model #OB32)
3) Avalon (Model #OB52)
4) Bella (Model #OB44)
5) Capri (Model #OB43)
6) Carmel (Model #OB52)
7) Champlain (Model # Unknown)
8) Chrome (Model #OB39)
9) Classic (Model #OB01)
10) Denali (Model #OB62)
11) Everyday (Model #OB04)
12) Grand (Model #OB36)
13) Huron (Model #OB60)
14) Infinity (Model #OB54)
15) Lake (Model #OB58)
16) Marina (Model #OB47)
17) Metro (Model #OB11)
18) Mini Plus (Model #OB44)
19) Mist (Model #OB01)
20) Monterey (Model #OB50)
21) Oceania (Model #OB48)
22) Pacifica (Model #OB41)
23) Slim (Model #OB11)
24) Soho (Model #OB11)
25) Space Saver (Model #OB21)
26) Stainless Steel (Model #OB51)
27) Tahoe (Model #OB60)
28) Wave (Model #OB53)
29) Vintage (Model #OB43)

b. **Dispensers-Standard/Elite/Longlast.** Brita water dispensers compatible with Standard Filter (Model #OB03) and Elite/Longlast Filter (Model #OB06), including but not necessarily limited to:

30) Ultramax (Model #OB24)
31) Ultraslim (Model # Unknown)

c. **Pitchers-Stream.** Brita water pitchers compatible with Stream Filter (Model #OB05), including but not necessarily limited to:

32) Cascade (Model #OB57)
33) Hydro (Model #OB56)
34) Rapids (Model #OB55)

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

5

d.     **Dispensers-Stream.** Brita water dispensers compatible with Stream Filter (Model #OB05), including but not necessarily limited to:

35)     Ultraslim (Model # Unknown)

7.     **Primary Dual Objectives.** Plaintiff brings this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra* at ¶ 45), for dual primary objectives. *One*, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers have overpaid for Products as a result of the Challenged Representations and Material Omission, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). *Two*, Plaintiff seeks, on their individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations and Material Omission to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations and disclosure of the Material Omissions on the Products' labels and/or packaging; removal or modification of the Challenged Representations and disclosure of the Material Omissions in the Products' advertising; modification of the Product's Filters so that they live up to the Challenged Representations; registration of all unregistered Products with the California Water Board; certification of each and every performance claim by a California-approved lab, including the Challenged Representations, consistent with Cal. Health & Safety Code §§ 116825, *et seq.*; and/or discontinuance of the Product's manufacture, marketing, and/or sale.

## II.   **JURISDICTION**

8.     This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10, California Business and Professions Code, Sections 17203 and 17535, and California Code of Civil Procedure, Section 382. The Court has both general and specific jurisdiction over the Defendant. The Court has personal jurisdiction over Defendant pursuant to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

California Code of Civil Procedure Section 410.10, because Defendant's principal place of business is in the State of California and Defendant operates in the State of California, including, but not limited to, advertising, marketing, distributing, and selling the Products in the State of California.

### III.   VENUE

9.      Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395.5. A substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in this County. Venue is also proper in this Court pursuant to California Civil Code section 1780(d). Defendant is doing business in this County and at least some of the transactions that form the basis of this Complaint have taken place in this County.

### IV.   PARTIES

**A.   Plaintiff**

10.      **Plaintiff Nicholas Brown.** The following is alleged based upon Plaintiff Nicholas Brown's personal knowledge:

    a.   **Residence.** Plaintiff Brown is a resident of the County of Los Angeles, in the State of California.

    b.   **Purchase Details.** Plaintiff Brown purchased the Brita Everyday Water Pitcher with the Standard Filter (the "**Purchased Product**") for approximately $15.00 at a store in Los Angeles, California, in or around early 2022. *See* **Exhibit 2-11** (Exemplar Everyday Product Image).

    c.   **Reliance on Challenged Labeling Claims.** In making the purchase, Plaintiff Brown viewed the Product, which appeared to be a WTD, and read the Challenged Representations on the Product's labels and packaging, an example of which is depicted in **Exhibit 2-11** (Exemplar Everyday Product Image), leading Plaintiff to believe that the Product removes or reduce common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits.

    d.   **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Brown did not know that the Challenged Representations was false—i.e., that the Product does not remove or reduce common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits.

    e.   **No Notice of Contradictions.** Plaintiff Brown did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that contradicted the prominent Challenged Representations or otherwise suggested that the Product does not remove or reduce common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

7

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

f. **Causation/Damages.** Plaintiff Brown would not have purchased the Product or would not have paid as much for the Product, had the Material Omission been disclosed and/or had Plaintiff otherwise known that the Challenged Representations were not true—i.e., that the Product does not remove or reduce common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits.

g. **Desire to Repurchase.** Plaintiff Brown continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were true—i.e., if the Products removed or reduced common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Brown is not personally familiar with the science behind the Products as he does not possess any specialized knowledge, skill, experience, or education in water treatment devices, similar to and including the Products, their filtration technology, and/or the ability of such devices and the Products to remove or hazardous contaminants from water. Thus, Plaintiff Brown is unable to determine whether the Products' Challenged Representations are true—i.e., whether the Products remove or reduce common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits.

i. **Inability to Rely.** Plaintiff Brown is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' labels and packaging.

11. **Plaintiff's Future Harm.** Defendant continues to market and sell the Products with the Challenged Representations and Material Omission. Plaintiff would like to purchase the Products in the future if they lived up to and conformed with the Challenged Representations. However, Plaintiff is an average consumer who is not sophisticated in, for example, water treatment devices, similar to and including the Products, water filtration technology, and/or the ability of the Products to remove or reduce common contaminants hazardous to health. Since Plaintiff would like to purchase the Products again to obtain the benefits of the Challenged Representations that Defendant continues to use—despite the fact that the Products were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representations on their labels, packaging, and Defendant's advertisements. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiff is currently and in the future deprived of the ability to rely on the Challenged Representations in deciding to purchase the Products.

**B.**    <u>**Defendant**</u>

12.    **Defendant The Brita Products Company ("Defendant")** is a corporation that has a principal place of business in the County of Alameda, State of California. Defendant was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is one of the owners, manufacturers, and/or distributors of the Products, and is one of the companies that created and/or authorized the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States, including in particular the State of California and this County. The unfair, unlawful, deceptive, and misleading Challenged Representations and Material Omission on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the State of California into purchasing the Products. Additionally, Defendant knew of the Material Omission, but it failed to disclose it at the time Plaintiff, and all Class Members, purchased the Product(s), notwithstanding its duty to do so. Further, Defendant had the right and authority, at all relevant times, to disclose the Material Omission and otherwise correct the Challenged Representations, including the time leading up to and through the incident giving rise to the claims asserted herein (including, Plaintiff's purchase described *supra* at ¶ 10, in addition to all Class Members' purchase).

**V.    <u>FACTUAL ALLEGATIONS</u>**

**A.    <u>Regulatory Background and Contamination of Tap Water</u>**

13.    **EWG Tap Water Database.** The Environmental Working Group ("**EWG**") is a non-profit organization composed of scientists (including leading experts on toxic chemicals), policy experts, and communications and data experts, among others, that works to protect our environment and public health.[3] Since 2003, the EWG has collected and compiled water contamination data for nearly 50,000 community water systems nationwide in its online Tap Water Database, to the extent

---

[3] *Who We Are*, ENV'T WORKING GRP., https://www.ewg.org/who-we-are (last visited Aug. 15, 2023); *Our Team*, ENV'T WORKING GRP, https://www.ewg.org/who-we-are/our-team (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

State drinking water authorities collected and reported them.[4] In the 2021 Update to EWG's Tap Water Database, it reported nearly 31 million test results for 534 chemicals, 324 of which were detected in drinking water.[5] The EWG also included population statistics obtained from State drinking water programs, supplemented by the U.S. EPA Environfacts database, to determine the amount of affected people.[6] The database reveals that tap water throughout the United States and California have a substantial number of contaminants hazardous to health, including the Common Hazardous Contaminants, many of which exceed regulatory goals, safety recommendations, and legal limits from the EWG and EPA. *See* **Exhibit 4** (Tap Water Concentration and Safety Limits Chart).

14. **EPA Mandatory Contaminant Levels.** More specifically, the United States Environmental Protection Agency sets federal Maximum Contaminant Levels ("**MCL**") for over 90 contaminants found in drinking water.[7] However, as the EWG explains, these "legal limits are based on economic and political considerations that usually don't reflect the lower levels that scientists have found pose health risks."[8] Further, despite the now more than 60,000 chemicals being used in America, no new contaminants have been added to the list of nationally regulated drinking water pollutants in over 20 years.[9] Recognizing the political pressures and that compliance with the EPA's legal limits does not ensure drinking water is safe, the EWG has set Health Guidelines based on the most recent and reliable scientific evidence, legal standards, and health advisories to protect public health.[10]

---

[4] *Tap Water Database—Data Sources and Methodology*, ENV'T WORKING GRP. (Nov. 2021), https://www.ewg.org/tapwater/methodology.php (last visited Aug. 15, 2023).

[5] *Id.*

[6] *Id.*

[7] *National Primary Drinking Water Regulations*, EPA, https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations (last visited Aug. 15, 2023); *Drinking Water Regulations*, EPA, https://www.epa.gov/dwreginfo/drinking-water-regulations#:~:text=EPA%20sets%20legal%20limits%20on,using%20the%20best%20available%20technology (last visited Aug. 15, 2023).

[8] *California Drinking Water: How the Combination of Multiple Contaminants Raises Cancer Risks*, ENV'T WORKING GRP. (Apr. 30, 2019), https://www.ewg.org/research/california-drinking-water (last visited Aug. 15, 2023).

[9] *See id.*

[10] *Developing Health-protective Standards for Drinking Water*, EWG TAP WATER DATABASE (Nov. 2021), https://www.ewg.org/tapwater/ewg-standards.php (last visited Aug. 15, 2023).

15. **EWG Tap Water Database (2021 Update)—Common Hazardous Contaminant Environmental Concentrations.** As summarized in the Tap Water Concentration and Safety Limits Chart (**Exhibit 4**), and according to the EWG Tap Water Database*, each of the Common Hazardous Contaminants was found in more than 40 states, including California; affected between 24 million to nearly 300 million people depending on the contaminant; and often exceeded permissible safe drinking water limits*. Indeed, *most* of the Common Hazardous Contaminants *exceed EWG's Health Guideline and nearly half exceed the EPA* National Public Drinking Water Regulations' ("**NPDWR**") *Public Health Goal* or, at times, the EPA Maximum Contamination Levels. *Id.* For example:

a. **Arsenic** was found in tap water in excess of the EWG's Health Guideline (0.004 ppb), which also exceeds the EPA's Public Health Goal (0 ppb), for 50 states (including California) and over 13,000 utilities, affecting the drinking water of approximately 109 million people. *Id.*

b. **Chromium-6** was found in tap water in excess of EWG's Health Guideline (0.2 ppb) for 50 states (including California) and over 8,000 utilities, affecting approximately 233 million people. *Id.*

c. **Nitrate** was found in tap water in excess of EWG's Health Guideline (0.14 ppb) for 49 states (including California) and over 21,000 utilities, affecting approximately 187 million people. *Id.*

d. **Nitrite** was also found in tap water for 44 states (including California) and over 1,500 utilities, affecting approximately 31 million people. *Id.* PFOA and PFOS (to the extent data was collected) were found in tap water for 28 or more states and approximately 1,000 utilities, affecting approximately 24 million people. *Id.*

e. **Perfluorooctanoic Acid (PFOA)** was found in tap water in excess of EWG's Health Guideline (0.000007 ppb) for 30 states (including California) and over 1,000 utilities, affecting approximately 24 million people. *Id.*

f. **Perfluorooctane Sulfonate (PFOS)** was found in tap water in excess of EWG's Health Guideline (0.001 ppb) for 27 states and over 600 utilities, affecting approximately 19 million people. *Id.* (further noting PFOS found in California tap water).

g. **Radium** was found in tap water in excess of EWG's Health Guideline (0.05 pCi/L), which also exceeds the EPA's Public Health Goal (0 pCi/L), for 49 states (including California) and over 23,000 utilities, affecting approximately 146 million people. *Id.*

h. **Trihalomethanes (THMs or TTHM)** was found in tap water in excess of EWG's Health Guideline (0.05 pCi/L) for 50 states (including California) and over 32,000 utilities, affecting approximately 295 million people. *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

i.    **Uranium** was found in excess of EWG's Health Guideline (0.43 pCi/L) which also exceeds the EPA's Public Health Goal (0 pCi/L), for 44 states (including California) and over 6,000 utilities, affecting approximately 61 million people. *Id.* (further noting Uranium found in tap water, regardless of any limits, affecting 80 million people).

16.    **EWG Tap Water Database (2021 Update)—Additional Hazardous Contaminants Common to Tap Water.** To be sure, many hazardous contaminants exceed EWG's Health Guideline, the EPA National Drinking Water Regulations' Public Health Goal and Maximum Contamination Levels. The Brita Products' Tap Water Concentration and Safety Limits Chart, attached as **Exhibit 4**, summarizes EWG's data for the Common Hazardous Contaminants, in addition to approximately 52 different contaminants that are likewise hazardous to health *and* that Defendant claims to reduce in its Performance Data Sheets with respect to at least one of its Brita-brand filtration systems, regardless of whether it is a Pitcher, Dispenser, or Filter at issue in this case. *See* **Exhibit 4** (Tap Water Concentration and Safety Limits Chart); *see also*, *supra*, at ¶ 6 (identifying the Products).[11] It also includes the safety limits, if any, for those contaminants as set by the EWG Health Guidelines, EPA's Public Health Goals, or EPA's Maximum Concentration Levels for drinking water. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). It further includes the rates of reduction, if any, that Defendant claims on its Performance Data Sheets for the Products. *Id.* As set forth in the Tap Water Concentration and Safety Limits Chart (**Exhibit 4**), *of the Common Hazardous Contaminants and approximately 52 additional hazardous contaminants (noted above), an overwhelming majority have been found in at least 20 states or affected the drinking water for at least 1 million people, including*:

(1)    Alachor,
(2)    Arsenic,
(3)    Atrazine,
(4)    Benzene,
(5)    Cadmium,
(6)    Carbon Tetrachloride,

---

[11] In addition to the Products at-issue, Defendant manufactures, markets, and sells Brita Hub filtration devices, Brita faucet mount filtration devices, and Brita water bottles, which have Performance Data Sheets available online on its website. *Performance Data Sheets*, BRITA, https://www.brita.com/performance-data/ (last visited Aug. 15, 2023). The Performance Chart, attached as **Exhibit 3**, summarizes each of Defendant's reduction claims made in its Performance Data Sheets with respect to all Brita filters, while the Contaminant Reduction, Environmental Concentration, and Permissible Limits Charts, attached as **Exhibit 4**, and the Health Hazards Chart, attached as **Exhibit 5**, include only those reduction claims that Defendant makes for the Products at issue in this case.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

12

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

(7)     Chlordane,
(8)     Chlorobenzene,
(9)     Chloropicrin,
(10)    Copper,
(11)    Dibromochloropropane,
(12)    p-Dichlorobenzene,
(13)    1,2-Dichloroethane,
(14)    1,1-Dichloroethylene,
(15)    cis-1,2-Dichloroethylene,
(16)    trans-1,2-Dichloroethylene,
(17)    1,2-Dichloropropane,
(18)    Dinoseb,
(19)    Endrin,
(20)    Ethylbenzene,
(21)    Ethylene dibromide (EDB),
(22)    Haloacetonitriles (HAN),
(23)    1,1,1-trichloro-2-propanone,
(24)    Heptachlor epoxide,
(25)    Hexachlorocyclopentadiene,
(26)    Mercury,
(27)    Nitrate,
(28)    Nitrite,
(29)    P-Dichlorobenzene,
(30)    Perfluorooctanoic Acid (PFOA),
(31)    Perfluorooctane Sulfonate (PFOS),
(32)    Radium,
(33)    Simazine,
(34)    Styrene,
(35)    Tetrachloroethylene,
(36)    Toluene,
(37)    1,1,1-Trichloroethane,
(38)    Trichloroethylene,
(39)    Thihalomethanes (THMs or TTHM, including Chloroform, Bromoform, Bromodichloromethane, and Chlorodibromomethane),
(40)    Uranium, and
(41)    Xylenes (total).

*Id.* Indeed, only a few hazardous contaminants, of the approximately 60 hazardous contaminants identified in **Exhibit 4**, were not found in tap water, though it appears to the be result of a lack of testing as no data was collected for them. *Id.* (see, for example, Chloropicrin, Copper, 1,1-Dichloro-2-propanone, and 1,1-Dichloro-2-propanone). Moreover, the contaminants listed in the Chart (**Exhibit 4**), are limited to the Common Hazardous Contaminants and those Defendant has claimed to reduce with respect to one of its Brita-brand filtration devices, regardless of whether it is a Product at issue in this case. It does not include more than 250 additional contaminants identified by the

13

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

EWG in its Tap Water Database, many or most of which are regulated and/or carry significant health concerns.[12]

17.    **Prevalence of Chromium-6—EWG 2009-2010 Study.** As far back as approximately 2009-2010, the EWG commissioned testing for hexavalent chromium in tap water from 35 cities and drew from data reported by State drinking water authorities.[13] Laboratory tests detected the contaminant in 89% of the cities sampled (31 cities serving more than 26 million people), more than 70% of which (25 cities) had concentrations in excess of the 0.06 ppb safety limit previously proposed by California regulators to reduce the risk of cancer (including one city more than 200 times higher). *Id.* In fact, the EWG found 35 cities averaged 3 times higher than California's proposed safety goal. *Id.* And, in California alone, the EWG found chromium-6 was detected in tap water supplied to more than 31 million people based on its review of State water agency reports. *Id.* It's analysis of State agency data further revealed that "[a]t least 74 million people in nearly 7,000 communities drink tap water polluted with 'total chromium,' which includes hexavalent and other forms of [chromium]." *Id.* From its review of water utility testing data, combined with EWG's commissioned testing, the EWG prepared the below maps that illustrate the prevalence of chromium, including its carcinogenic form, in tap water across the United States and California. *Id.* The EWG's analysis of this data indicated "chromium-6 constitutes half of the total chromium found in most water supplies." *Id.* To be sure, the EWG found national samples from 25 cities tested higher for chromium-6 than California's previously proposed 0.06 limit, as depicted in the graph below. *Id.*

/ / /

/ / /

/ / /

/ / /

---

[12] *Compare id. with Tap Water Database—Data Sources and Methodology* (Nov. 2021), EWG, https://www.ewg.org/tapwater/methodology.php (last visited Aug. 15, 2023) (noting 324 regulated chemicals detected in drinking water).
[13] *Chromium-6 in U.S. Tap Water*, EWG (Dec. 20, 2010), https://www.ewg.org/research/chromium-6-us-tap-water (last visited Aug. 15, 2023).





Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265



18.    **Prevalence of Chromium-6—EWG 2022 Study.** In 2022, the EWG updated its interactive map (depicted below), which shows chromium-6 contamination has not improved since

its 2009-2010 study.[14] Rather, the EWG estimated that tap water serving 251 million people, "often exceeding levels scientists say are safe." *Id.* As shown in the map and described by EWG, countless communities and every state show chromium-6 tap water contamination in excess of the 0.02 ppb recommendation published by California scientists as far aback as 2010. *Id.*



19. **Prevalence of Nitrate Contamination—EWG 2021.** As part of the EWG's ongoing tap water study, it published a map (depicted below) that illustrates the extent of tap water contamination throughout the United States, including some dire statistics for California, and shows nitrate affects both rural/agricultural communities and major cities.[15] Of note, the EWG's analysis

[14] *EPA Draft review finds 'Erin Brokovich' chemical likely carcinogenic in drinking water*, EWG (Oct. 21, 2022), https://www.ewg.org/news-insights/news-release/2022/10/epa-draft-review-finds-erin-brockovich-chemical-likely (last visited Aug. 15, 2023).
[15] *Nitrate contaminates drinking water for almost 60 million people in cities across the country*, EWG (updated Nov. 3, 2021), https://www.ewg.org/tapwater/nitrate-contaminates-drinking-water.php (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

17

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of tap water systems shows that 757 systems serving 43 states and 59.5 million people tested at or above 3 mg/L, 410 systems serving 39 states and 37.8 million people tested at or above 5 mg/L, and 60 systems serving 11 states and almost 3.9 million people tested at or above 10 mg/L. *Id.* In fact, California has the largest number of systems showing elevated nitrate levels, totaling 223 systems serving 22.7 million people, an overwhelming majority of California's population. *Id.* Indeed, 168 systems in California serving almost 19.2 million people tested at or above 5 mg/L, and 41 systems serving 3.4 million people tested at or above 10 mg/L. *Id.*



MAP KEY

🟣 At least one nitrate test at or above 10 mg/L

🟡 At least one nitrate test at or above 5 mg/L, no tests at or above 10 mg/L

20.     **Prevalence of PFAS Contamination—EWG 2019-2020 Self-Commissioned Study & CDC Biomonitoring Studies.** Noteworthy here, are the persistence of PFAS, which afflict more than half the states in the nation, including California. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). Recently, the EWG reports that "[t]he number of U.S. communities confirmed to be contaminated with the highly toxic fluorinated compounds known as

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

PFAS continues to grow at an alarming rate."[16] In approximately 2019-2020, the EWG commissioned lab tests for the first time that found PFAS in drinking water for dozens of U.S. cities, including major metropolitan areas.[17] They confirmed that prior studies "dramatically underestimated" the "number of Americans exposed to PFAS from contaminated tap water." *Id.* This led scientists to believe that PFAS are "likely detectable in all major water supplies in the U.S." *Id.* Back in 2020, the EWG found that "[o]f tap water samples from 44 places in 31 states and the District of Columbia, only one location had no detectable PFAS, and only two other locations had PFAS below the level that independent studies show pose risks to human health." *Id.* (further noting that, in 34 of the places tested and determined to be contaminated with PFAS, their "contamination ha[d] not been publicly reported by the Environmental Protection Agency or state environmental agencies," as testing was not required for the previously unregulated PFAS). Among PFAS, PFOA and PFOS were detected in 30 and 34 of the 44 samples, respectively, comprising a quarter of the total PFAS level in each sample. *Id.* The graph depicted below shows the results of the EWG's independent PFAS tests. Consistent with the EWG's findings, the CDC's biomonitoring studies, dating back to 1999, show that four PFAS (PFOA, PFOS, PFHxS or perflurohexane sulfonic acid, and PFNA or perfluronoanoic acid) were in "nearly all of the people tested," "indicat[ing] widespread exposure to these PFAS in the U.S. population." [18] The EWG concluded that the CDC's findings "show that ***the blood of nearly all Americans is contaminated with PFAS***," ***though*** noting that ***this "estimate . . . could be much too low***, based on [the EWG's] findings.[19] Ultimately, back in 2019-2020, the EWG found PFAS ubiquitous and the nation's drinking water supply heavily contaminated with them, aptly quoting an expert in the field: "If you sample, you will find it." *Id.* (quotation and citation omitted).

---

[16] *PFAS Contamination in the U.S.* (June 8, 2022, Updated March 14, 2023), EWG, https://www.ewg.org/interactive-maps/pfas_contamination/ (last visited Aug. 15, 2023).
[17] Evans, et al., *PFAS Contamination of Drinking Water Far More Prevalent Than Previously Reported*, EWG, https://www.ewg.org/research/national-pfas-testing (last visited Aug. 15, 2023).
[18] *Per- and Polyfluorinated Substances (PFAS) Factsheet*, CDC (May 2, 2022), https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html (last visited Aug. 15, 2023).
[19] Evans, et al., *PFAS Contamination of Drinking Water Far More Prevalent Than Previously Reported*, EWG, https://www.ewg.org/research/national-pfas-testing (last visited Aug. 15, 2023) (emphasis added).

EWG TESTS FOUND TOXIC PFAS CHEMICALS IN TAP WATER IN 31 STATES AND D.C.

| Location | Total PFAS (ppt) |
| --- | --- |
| Brunswick County, N.C. | 185.9 |
| Quad Cities, Iowa | 109.8 |
| Miami, Fla. | 56.7 |
| Bergen County, N.J. | 51.4 |
| Wilmington, N.C. | 50.5 |
| Philadelphia, Pa. | 46.3 |
| Louisville, Ky. | 45.2 |
| New Orleans, La. | 41.8 |
| Charleston, S.C. | 33.3 |
| Decatur, Ala. | 24.1 |
| Washington, D.C. | 21.7 |
| Prince Georges County, Md. | 17.8 |
| Rockingham County, N.H. | 17.1 |
| Columbus, Ohio | 16.4 |
| Ann Arbor, Mich. | 15.8 |
| Atlanta, Ga. | 15.6 |
| Indianapolis, Ind. | 15.0 |
| Minneapolis, Minn. | 14.2 |
| Chicago, Ill. | 12.6 |
| Cincinnati, Ohio | 11.2 |
| Columbia, Mo. | 9.6 |
| Kansas City, Mo. | 8.4 |
| Pittsburgh, Pa. | 8.4 |
| Boston, Mass. | 8.1 |
| San Antonio, Texas | 7.7 |
| St Louis County, Mo. | 7.4 |
| St Louis, Mo. | 6.7 |
| Las Vegas, N.V. | 6.5 |
| Nashville, Tenn. | 6.0 |
| Omaha, Neb. | 5.9 |
| Birmingham, Ala. | 5.3 |
| Kansas City, Kan. | 5.2 |
| Jackson, Miss. | 3.8 |
| Tulsa, Okla. | 2.6 |
| St Charles County, Mo. | 2.5 |
| New York, N.Y. | 2.3 |
| El Paso County, Colo. | 2.0 |
| Colorado Springs, Colo. | 1.9 |
| Sacramento, Calif. | 1.6 |
| Little Rock, Ark. | 1.4 |
| Memphis, Tenn. | 1.0 |
| Seattle, Wash. | 0.7 |
| Tuscaloosa, Ala. | 0.5 |
| Meridian, Miss. | ND |

EPA limit for PFOA + PFOS: 70 ppt

EWG limit: 1 ppt

Total PFAS (parts per trillion)*

Source: EWG, from samples taken between May and December 2019.

* PFAS previously reported by EPA or State

*Sum of detections of 30 types of PFAS

Samples were taken by either EWG staff or local volunteers and analyzed by an independent accredited laboratory using a modified version of EPA Method 537. Details of all samples taken at each site and the precise sampling dates are in the tables in the Appendix.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

21.     **Prevalence of PFAS Contamination—PFAS Map.** In addition to compiling the EWG Tap Water Database, the EWG mapped the contamination of PFAS across the United States, including territories, based on its analysis of "the best data available from official records," including test data for public drinking water systems (which is limited to those utilities that serve a threshold number of constituents and approximately 6 different PFAS, including PFOA and PFOS), the EPA's Safe Drinking Water Information System, the Department of Defense report "Addressing Perfuorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA)," and the Department of Defense public records, among others.[20] The EWG confirmed that, "[a]s of June 2022, 2,858 locations in 50 states and two territories are known to be contaminated." *Id.* The EWG's map and color legend are depicted below and demonstrate the ubiquity of PFAS in America, and their persistence in the environment and public drinking water, raising a host of public health concerns.



_____

[20] *PFAS Contamination in the U.S. (June 8, 2022)*, EWG (updated Mar. 14, 2023), https://www.ewg.org/interactive-maps/pfas_contamination/#about (accessed Aug. 15, 2023).

*See id.*

22.     **Prevalence of Radium Contamination—EWG 2010-2015.** As part of the EWG's ongoing tap water study, it published a map (depicted below) that illustrates the extent of radium contamination throughout the United States, based on data collected from 2010 to 2015.[21] While all radiation is carcinogenic and there is no safe level for developing fetuses, radium was nonetheless found in the tap water of 153 million people across 49 states, including a few states, including a number of states depicted in orange that far exceed federal limits depicted in orange. *Id.*



Radium levels, 2010-2015

Less than 1 pCi/L

1.0 - 4.99 pCi/L

Greater than 5.0 pCi/L

**System Size**
(circles not to size)

Systems serving more than 100,000 people

Systems serving less than 100,000 people

---

[21] *EWG Tap Water Atlas Radium*, EWG, https://www.ewg.org/research/covid-stimulus/atlas-radium.html (last visited Aug. 16, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**B.**     **Water Contaminants' Health Hazards & Defendant's Products' Failure to Perform**

23.     **Health Hazards—Contaminants Hazardous to Health Commonly Found in Tap Water.** The approximately 50 hazardous contaminants noted above, which Defendant claims to remove in the Performance Data Sheets for at least some of its Brita filters (though not necessarily the Products), in addition to numerous others and the Common Hazardous Contaminants highlighted here, threaten a wide range of serious health concerns. **Exhibit 5** (Health Hazards Chart).[22] The Health Hazards Chart itemizes each of the foregoing hazardous contaminants, including the Common Hazardous Contaminants, that pose risks to health, including, for example:

a.     Cancer

b.     Harm to developing fetus and child development

c.     Harm to the reproductive system and development, and decreased fertility

d.     Hormone disruption

e.     DNA damage

f.     Harm or changes in the brain, nervous system, and resultant behavior

g.     Harm to the heart, intestines, gastrointestinal system, immune system, liver, lungs, kidney, respiratory system, skin, spleen, stomach, thyroid

h.     Harm to hemoglobin, blood vessels

**Exhibit 5** (Health Hazards Chart). And, despite their prevalence throughout tap water systems in the United States and California, including many in excess of safety limits that impact hundreds of millions of people, the Products do not remove or reduce to below lab detectable limits any of the hazardous contaminants listed in the Health Hazards Chart and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 2** (Product Images); **Exhibit 3** (Performance Chart); **Exhibit 4** (Tap Water Concentration and Safety Limits Chart); **Exhibit 5** (Health Hazards Chart).

---

[22] *See Performance Data Sheets*, BRITA, https://www.brita.com/performance-data/ (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

24.      **Health Hazards—Arsenic.** Inorganic arsenic is a potent carcinogen, naturally found in the earth's crust, and "is widely distributed throughout the environment in the air, water, and land."[23] Arsenic is most dangerous to public health when it contaminates water.[24] Arsenic in drinking water comes from natural, industrial, and agricultural sources, whether leached from rocks into groundwater used for drinking or irrigation; the result of mining waste, metal production, coal power plants, and burning of other fossil fuels; or due to arsenic's prior use as a pesticide for orchards and farm fields that has contaminated surrounding soil or water, as poultry feed, or as a lumber preservative, contaminating soil in many residential areas and playgrounds.[25] Indeed, the EWG detected 1.72 ppb of arsenic in Los Angeles drinking water, 430 times the EWG's Health Guideline of 0.004 ppb (and California's Public Health Goal), nearly 5 times the EPA Maximum Contaminant Level, and unacceptable under the EPA's 0 ppb or no-tolerance Public Health Goal. *See* **Exhibit 4** (Tap Water Concentration and Safety Limits Chart).[26] Arsenic can cause a variety of serious adverse health effects, including:

- Cancer (including bladder, lung, and skin)
- Lung damage
- Central nervous system damage
- Brain and nervous system damage
- Skin damage
- Changes to heart and blood vessels
- Increased risk of heart disease, stroke, and diabetes[27]

---

[23] *Arsenic*, WORLD HEALTH ORG. (Feb. 15, 2018), https://www.who.int/news-room/fact-sheets/detail/arsenic (last visited Aug. 15, 2023).
[24] *Id.*
[25] *Arsenic*, EWG (Nov. 2021), https://www.ewg.org/tapwater/reviewed-arsenic.php (last visited Aug. 15, 2023).
[26] *Los Angeles Department of Water and Power*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=CA1910067 (last visited Aug. 15, 2023).
[27] *Tap Water Database—Arsenic*, EWG, https://www.ewg.org/tapwater/contaminant.php?contamcode=1005 (last visited Aug. 15, 2023); *Arsenic*, EWG (Nov. 2021), https://www.ewg.org/tapwater/reviewed-arsenic.php (last visited Aug. 15, 2023).

24

Long-term exposure to even low levels of arsenic can cause cancer, thickening and discoloration of the skin, high blood pressure, heart disease, nerve effects including numbness and pain, and more.[28] According to findings in 2019, arsenic alone was estimated to cause 7,251 cancer cases that could be avoided with efficient filtration in California.[29] While the EPA sets a legal limit of 10 ppb for arsenic in drinking water, the EWG and California Office of Environmental Health Hazard Assessment have determined that "arsenic concentrations in water should be below 0.004 ppb to reduce the lifetime cancer risk to one in a million," as according to the EWG, arsenic levels at 10 ppb "still puts many Americans at risk – as many as 600 cancer cases for every million people who have arsenic in their water."[30] This is consistent with the EPA's no-tolerance Public Health Goal of 0 ppb. *See* **Exhibit 5** (Health Hazard Chart). To be sure, arsenic was found in all tap water for all 50 states, including California, in excess of the EWG's Health Guideline, affecting more than 100 million people, including 31 states that exceed federal limits affecting half a million people. **Exhibit 4** (Tap Water Concentration & Safety Limits Chart). Yet, the Products do not remove or reduce arsenic from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

25.    **Health Hazards—Chromium-6.** Chromium-6, the infamous "Erin Brockovich" chemical, is used in a number of industrial processes, such as corrosion-resistant coatings, leather tanning, chromium plating, colored glass marking, and in paints and inks that color plastics.[31] It is commonly used for anti-corrosion metal coating, wood preservation, and textile dyeing, and detected in groundwater due to these industries' pollution, and natural gas compression stations that

---

[28] *See Arsenic in Well Water*, MICH. DEP'T OF ENV'T, GREAT LAKES, AND ENERGY (Jul. 2019), https://www.michigan.gov/egle/-/media/Project/Websites/egle/Documents/Programs/DWEHD/Water-Well-Construction/Arsenic-in-Well-Water.pdf?rev=da1d29f6a211455c9399f1b88d6eb89e (last visited Aug. 15, 2023).

[29] *See California Drinking Water: How the Combination of Multiple Contaminants Raises Cancer Risks, supra* note 8.

[30] *Arsenic*, EWG (Nov. 2021), https://www.ewg.org/tapwater/reviewed-arsenic.php (last visited Aug. 15, 2023).

[31] *See* John P. Rafferty, *What is Hexavalent Chromium (or Chromium-6)*, BRITANNICA, https://www.britannica.com/story/what-is-hexavalent-chromium-or-chromium-6 (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

use it as anti-corrosion agent.[32] It taints tap water for 251 million Americans. **Exhibit 5** (Tap Water Concentration and Safety Limits Chart).[33] As the EWG explained, "the EPA's national survey of chromium-6 concentrations in drinking water revealed that the contaminant was found in more than three-fourths of water systems sampled, which supply water to more than two-thirds of the American population."[34] Indeed, the EWG found chromium-6 "taints tap water of 251 million Americans."[35] Exposure to chromium-6 through ingestion can cause a host of adverse health effects as severe as cancer, including:

- Cancer,

- Reproductive harm,

- Eye irritation,

- Respiratory irritation, asthma attacks, nasal ulcers,

- Dermal burns,

- Anemia,

- Vertigo,

- Gastrointestinal hemorrhage, convulsions, ulcers, acute gastroenteritis, and

- Damage or failure of the liver and kidneys.[36]

Given the prevalence and grave consequences of exposure to chromium-6, currently, the EWG's Health Guideline for chromium-6 in tap water sets a limit of 0.02 ppb, in line with the California Office of Health Hazard Assessment's 2011 public health goal of 0.02 ppb, even though the EPA

---

[32] Amarelo, Monica, *What is chromium-6? Here's what you need to know*, EWG (Mar. 3, 2022), https://www.ewg.org/news-insights/news/2022/03/what-chromium-6-heres-what-you-need-to-know (last visited Aug. 16, 2023).

[33] *Id.*

[34] *Chromium-6*, EWG (Oct. 2019), https://www.ewg.org/tapwater/reviewed-chromium-6.php (last visited Aug. 15, 2023). Indeed, in one study analyzing the Parajo Valley Unified School District (CA), researchers discovered that the 50 ppb hexavalent chromium maximum contaminant level (MCL) was 500 times higher than the public health goal of 0.02ppb.[34] *See* Todd Guild, *Ohlone School Grappling with Water Quality Issues*, THE PAJARONIAN (Dec. 6, 2019), https://pajaronian.com/ohlone-school-grappling-with-water-quality-issues/ (last visited Aug. 15, 2023).

[35] *EPA draft review finds 'Erin Brockovich' chemical likely carcinogenic in drinking water*, EWG (Oct. 21, 2022), https://www.ewg.org/news-insights/news-release/2022/10/epa-draft-review-finds-erin-brockovich-chemical-likely (last visited Aug. 16, 2023).

[36] *See The Dangers of Hexavalent Chromium (Chromium 6) in California Drinking Water*, CLEAN WATER ACTION, https://www.cleanwateraction.org/features/dangers-hexavalent-chromium-chromium-6-california-drinking-water (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

established a 100 ppb limit for chromium-6 as combined with chromium-3, which is currently considered harmless.[37] Indeed, the contaminant has been detected at levels 29x, 4.5x, 2.1x, and 5.8x EWG's Health Guideline in major cities, including Los Angeles, San Francisco, New York, and Detroit respectively.[38] To be sure, chromium-6 has been found in 50 states in excess of the EWG's Health Guideline, affecting 233 million people. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). Yet, the Products do not remove or reduce hexavalent chromium from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

26.    **Health Hazards—Nitrate.** "Nitrate is a chemical component of fertilizer and animal manure that can run off farm fields and get into both surface water and groundwater sources of drinking water. It can get into drinking water supplies via urban runoff and municipal wastewater discharges."[39] While drinking water contamination is commonly caused by agriculture, and therefore considered a rural, small-town issue, the EWG found "[d]rinking water supplies for almost 60 million people living in major cities and other urban areas throughout the U.S. are contaminated with elevated levels of nitrate." *Id.* It also found that "[a]t least 22.7 million of the people affected live in California." *Id.* Studies have shown nitrate can cause severe and fatal adverse health outcomes, including:

- Methemoglobinemia ("blue baby syndrome"), a potentially fatal condition that starves infants of oxygen if they ingest too much nitrate,

---

[37] Amarelo, Monica, *What is chromium-6? Here's what you need to know*, EWG (Mar. 3, 2022), https://www.ewg.org/news-insights/news/2022/03/what-chromium-6-heres-what-you-need-to-know (last visited Aug. 16, 2023).

[38] *See Los Angeles Department of Water and Power*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=CA1910067 (last visited Aug. 15, 2023); *San Francisco City Water System*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=CA3810011 (last visited Aug. 15, 2023); *City of Detroit*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=MI0001800 (last visited Aug. 15, 2023); *New York City System*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=NY7003493 (last visited Aug. 15, 2023).

[39] *Nitrate contaminates drinking water for almost 60 million people in cities across the country*, EWG (updated Nov. 3, 2021), https://www.ewg.org/tapwater/nitrate-contaminates-drinking-water.php (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

- Increased risk of colorectal cancer at 5 mg/L

- Increased risk of thyroid disease at 5 mg/L, and

- Increased risk of neural tube birth defects at 5 mg/L. *Id.*

- In addition to increased heart rate, headaches, stomach cramps, and vomiting.[40]

These health concerns, when viewed in light of the prevalence of nitrate in tap water, paint a dire picture. The EWG's analysis of tap water systems shows nearly all states are approaching these thresholds, or surpassing them. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). As discussed above, nitrate contaminates drinking water in 43 states (affecting 59.5 million people) at 3 mg/L or more, 39 states (affecting 37.8 million people) at 5 mg/L or more, and 11 states (affecting 3.9 million people) at 10 mg/L or more.[41] In fact, California had the largest number of systems showing elevated nitrate levels, affecting 22.7 million people, including 19.2 and 3.4 million people whose drinking water tested at or above 5 mg/L and 10 mg/L, respectively. *Id.* These statistics show that millions of people have tap water that approaches or exceeds the EPA's 10 mg/L limit, and far surpasses the EWG's Health Guideline of approximately 0.14 mg/L.[42] Indeed, nitrate was detected at levels 12 times the EWG Health Guideline in Los Angeles.[43] Yet, the Products do not remove or reduce nitrate from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

---

[40] *See Nitrate In Drinking Water*, MINN. DEP'T OF HEALTH, https://www.health.state.mn.us/communities/environment/water/contaminants/nitrate.html#Health Effects (last visited Aug. 15, 2023).

[41] *Nitrate contaminates drinking water for almost 60 million people in cities across the country*, EWG (updated Nov. 3, 2021), https://www.ewg.org/tapwater/nitrate-contaminates-drinking-water.php (last visited Aug. 15, 2023).

[42] *Tap Water Database—Nitrate*, EWG, https://www.ewg.org/tapwater/contaminant.php?contamcode=1040#:~:text=The%20EWG%20Health%20Guideline%20of,to%20fetal%20growth%20and%20development (last visited Aug. 16, 2023).

[43] *Los Angeles Department of Water and Power*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=CA1910067 (last visited Aug. 15, 2023); *City of Detroit*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=MI0001800 (last visited Aug. 15, 2023).

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

27.    **Health Hazards—Nitrite.** Nitrite is a salt that often appears in groundwater, both naturally and artificially, due to run-off water, sewage, or mineral deposits,[44] and from fertilizer applied to agricultural lands that pollute drinking water.[45] Nitrate is closely related and often grouped together with nitrate.[46] Nitrite causes similar health risks as nitrate, but is "significantly more toxic."[47] Excessive nitrite in water can cause:

- Cancer, and

- Harm to child development, including deprivation of oxygen in infants. *Id.*

The EPA has set a legal limit of 1 ppm, though it does not fully protect against the risk of cancer. *Id.* Thus, the EWG set a Health Guideline at 0.14 ppm.[48] The EWG also found that 15 states, serving nearly 200,000, have tap water that exceeds the EPA limit, and 48 states, serving 124 million people, have tap water that exceeds the EWG's Health Guideline for nitrate and nitrate combined. *Id.*; *see also* **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). Indeed, nitrate and nitrite combined were detected at a level 7.6 times the EWG's Health Guideline in Los Angeles.[49] Yet, the Products do not remove or reduce nitrite from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

---

[44] *What is Nitrite and Why Is It In My Water?*, H20 DISTRIBUTORS, https://www.h2odistributors.com/info/contaminants/contaminant-nitrites/#:~:text=Nitrites%20come%20from%20fertilizers%20through,into%20a%20body%20of%20water. (last visited Aug. 15, 2023).

[45] *Tap Water Database—Nitrite*, EWG, https://www.ewg.org/tapwater/contaminant.php?contamcode=1041 (last visited Aug. 15, 2023).

[46] *Nitrate and Nitrite*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/contaminant.php?contamcode=1038 (last visited Aug. 15, 2023).

[47] *Id.*; *see also Nitrate and Nitrite in Drinking Water For Well Owners*, MICH. DEP'T OF HEALTH AND HUM. SERV.'S, https://www.michigan.gov/egle/-/media/Project/Websites/egle/Documents/Programs/DWEHD/Water-Well-Construction/Nitrate-and-Nitrite-in-Drinking-Water.pdf?rev=61bc5789d3f045e29fe64ad1a3cc03a5 (last visited Aug. 15, 2023).

[48] *Tap Water Database—Nitrate and Nitrite*, EWG, https://www.ewg.org/tapwater/contaminant.php?contamcode=1038 (last visited Aug. 15, 2023).

[49] *Los Angeles Department of Water and Power*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=CA1910067 (last visited Aug. 15, 2023); *City of Detroit*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=MI0001800 (last visited Aug. 15, 2023).

28.     **Health Hazards—PFAS.**  PFAS are long lasting manufactured chemicals that are widely used and break down very slowly over time.[50] There are many different PFAS, but the most widely used and notorious are perfluorooctanoic acid ("**PFOA**"), perfluorooctane sulfonic acid ("**PFOS**"), and to a lesser extent perfluorohexane sulfonic acid ("**PFHxs**"), and perfluoronoanoic acid ("**PFNA**").[51] They have been used in industry and consumer products since the 1940s because of their useful properties, resulting in their persistence throughout the environment, and growing water contamination, including, for example:

- In public drinking water systems and private drinking wells;

- At landfills, disposal sites, and hazardous waste sites;

- As a result of fire-extinguishing foam used in training and to respond to emergencies at airports, shipyards, military bases, firefighting training facilities, chemical plants, and refineries;

- At and around manufacturing chemical production facilities, including for example those for chrome plating, electronics, textiles, and paper;

- From food packaging, such as grease-resistant paper, containers, wrappers;

- In household products and dust from, for example, stain and water-repellents used on textiles, cleaning products, non-stick cookware, paints, varnishes, and sealants;

- In various personal care products, like shampoo, dental floss, and cosmetics;

- From biosolids, like fertilizer from wastewater treatment plants used on agricultural lands that affect ground and surface water and animals that graze on the land; and

- In the animal products we consume as a result of their environmental exposure, including, for example, fish caught from contaminated water and dairy products from exposed livestock.[52]

There is no sect of society that can escape PFAS. Not only are these chemicals persistent, constantly being released into the environment as described above, but PFAS are known as "forever chemicals" because they build up in our bodies and, generally, do not break down in the

---

[50] *PFAS Explained*, EPA (Apr. 10, 2023), https://www.epa.gov/pfas/pfas-explained (last visited Aug. 13, 2023).

[51] *What are PFAS?*, AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY (Nov. 1, 2022), https://www.atsdr.cdc.gov/pfas/health-effects/overview.html (last visited Aug. 13, 2023).

[52] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, EPA (June 7, 2023), https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Aug. 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

environment.[53] It is for this reason that PFAS are generally found in air, soil, and *water*, with a number of studies showing that exposure to PFAS may cause serious and dire health effects in humans and animals.[54] It is therefore not surprising that the CDC's biomonitoring studies reveal that four PFAS (PFOA, PFOS, PFHxS, and PFNA) are likely in the blood of nearly every American,[55] which the EWG believes is a gross understatement.[56] While research into the harmful effects of PFAS in humans is still ongoing, including adverse health outcomes due to prolonged low level exposure,[57] the EPA notes that "current peer-reviewed scientific studies have shown that exposure to certain levels of PFAS may lead to:

- Reproductive effects such as decreased fertility or increased health blood pressure in pregnant women.

- Developmental effects or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes.

- Increased risk of some cancers, including prostate, kidney, and testicular cancers.

- Reduced ability of the body's immune system to fight infections, including reduced vaccine response.

- Interference with the body's natural hormones.

- Increased cholesterol levels and/or risk of obesity."

*Id.*; *see also* **Exhibit 5** (Contaminant Health Hazard Chart). [58] In light of these of adverse health concerns and the prevalence and persistence of PFAS, including PFOA and PFOS, the EWG has concluded that "there is no safe level for PFAS in [drinking] water."[59] It set a Health Guideline for drinking water at 1 ppt (0.001 ppb), the EPA has proposed legal limit of 4 ppt for PFOA and PFOS,

---

[53] *What are PFAS chemicals?*, ENV'T WORKING GRP., https://www.ewg.org/what-are-pfas-chemicals (last visited Aug. 15, 2023).

[54] *PFAS Explained*, *supra* note 50.

[55] *Per- and Polyfluorinated Substances (PFAS) Factsheet*, CDC (May 2, 2022), https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html (last visited Aug. 15, 2023).

[56] Evans, et al., *PFAS Contamination of Drinking Water Far More Prevalent Than Previously Reported*, EWG, https://www.ewg.org/research/national-pfas-testing (last visited Aug. 15, 2023) (emphasis added).

[57] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, *supra* note 52.

[58] *See also What are the health effects of PFAS?*, AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY (Nov. 1, 2022), https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last visited Aug. 13, 2023).

[59] *PFAS*, EWG (updated Mar. 14, 2023), https://www.ewg.org/tapwater/reviewed-pfcs.php (last visited Aug. 16, 2023).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and California's Office of Environmental Health Hazard Assessment in 2021, drafted a public health goal for PFOA of no more than 0.007 ppt. *Id.* Indeed, PFOA and PFOS has been found in excess of EWG's Health Guideline in 27 and 30 states, affecting the drinking water 24 and 19 million Americans, respectively. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). Yet, the Products do not remove or reduce hexavalent chromium from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

29.    **Health Hazards—Radium.** Radium is a radioactive substance.[60] Radioactive elements, like radium, enter groundwater from natural deposits in the earth's crust, particularly in areas surrounding mining or oil and gas drilling.[61] Radioactive elements produce radiation called "ionizing" as this process can release electrons from atoms and molecules, turning them into ions. *Id.* The EPA has classified all ionizing radiation as carcinogenic, as clear evidence shows high doses of radiation cause cancer and lower doses merely reduce the likelihood of developing cancer. *Id.* When ingested, radium can cause:

- Cancer,
- Impairment of fetal growth, birth defects, and damage to brain development (*id.*)
- Kidney damage[62]
- DNA damage[63]

---

[60] *Radium in Water*, CULLIGAN WATER, https://www.culligannation.com/radium-in-water#:~:text=How%20do%20I%20remove%20radium,and%20faucet%20filters)%20are%20ineffective (last visited Aug. 15, 2023).

[61] *170 Million in U.S. Drink Radioactive Tap Water*, EWG (Jan. 11, 2018), https://www.ewg.org/research/170-million-us-drink-radioactive-tap-water#1 (last visited Aug. 15, 2023).

[62] *Radium in Water*, CULLIGAN WATER, https://www.culligannation.com/radium-in-water#:~:text=How%20do%20I%20remove%20radium,and%20faucet%20filters)%20are%20ineffective (last visited Aug. 15, 2023).

[63] *Radiation*, EWG, https://www.ewg.org/tapwater/reviewed-radiological.php#.WjKcyrT82uo (last visited Aug. 16, 2023).

32

Indeed, "there is no evidence of a dose threshold below which a fetus would be safe from these effects.[64] While the EPA MCL for radium-226 and radium-228 combined is 5 pCi/L (measure of radioactivity in water and gas), the EWG has determined that the lifetime increased cancer risk at this level is 70 cases per 1 million people.[65] Accordingly, the EWG has set the public health guideline for radium-226 and radium-228 combined as 0.05 pCi/L to protect people against cancer.[66] California set a public health goal that likewise limits these isotopes to 5 pCi/L and 0.019 pCi/L, respectively. *Id.* To be sure, EWG found that from 2010 to 2015, water systems in 27 states, serving 276,000 Americans, exceeded the federal limit.[67] And radium-226 and radium-228 continued to contaminate water in every state. *Id.* As of 2021, EWG's analysis of tap water revealed that 165 million people across the United States are exposed to radioactive contaminants in their drinking water.[68] California has the most people affected by radiated drinking water, with almost 25 million people serviced by systems that reported detectable levels of both isotopes.[69] Indeed, the EWG's current database reflects approximately 146 million Americans in 49 states have tap water that exceeds the EWG's Health Guideline, including 32 states and half a million people whose water exceeds the federal limit. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). Yet, the Products do not remove or reduce radium from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

---

[64] *170 Million in U.S. Drink Radioactive Tap Water*, EWG (Jan. 11, 2018), https://www.ewg.org/research/170-million-us-drink-radioactive-tap-water#1 (last visited Aug. 15, 2023).

[65] *Radium, Combined (-226 & -228)*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/contaminant.php?contamcode=4010 (last visited Aug. 15, 2023); *see also 170 Million in U.S. Drink Radioactive Tap Water*, ENV'T WORKING GRP., https://www.ewg.org/research/170-million-us-drink-radioactive-tap-water (last visited Aug. 15, 2023).

[66] *Radium, Combined (-226 & -228*, *supra* note 65.

[67] *170 Million in U.S. Drink Radioactive Tap Water*, EWG (Jan. 11, 2018), https://www.ewg.org/research/170-million-us-drink-radioactive-tap-water#1 (last visited Aug. 15, 2023).

[68] *Radiation* (November 2021), ENV'T WORKING GRP., https://www.ewg.org/tapwater/reviewed-radiological.php#.WjKcyrT82uo (last visited Aug. 16, 2023).

[69] *170 Million in U.S. Drink Radioactive Tap Water*, EWG (Jan. 11, 2018), https://www.ewg.org/research/170-million-us-drink-radioactive-tap-water#1 (last visited Aug. 15, 2023).

33

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

30.    **Health Hazards—Total Trihalomethanes.** Total trihalomethanes (TTHMS) are a group of carcinogenic disinfection byproducts formed during water treatment with chlorine and other disinfectants.[70] TTHMS refer to the four most common byproducts of chlorine disinfection, chloroform, bromodichloromethane, chlorodibromomethane, and bromoform.[71] Long-term and short-term exposure to TTHMS can cause:

- Bladder cancer
- Liver, kidney, and intestinal tumors
- Increased risk during pregnancy of spontaneous miscarriage, cardiovascular defects, neural tube defects, and low birth weight[72]
- Liver damage,
- Kidney damage,
- Dull chest pain,
- Skin sores,
- Testicle damage and more.[73]

The EPA has set legal limits for TTHMS in tap water at 80 ppb, while the EWG set its Health Guideline at 0.15 ppb to reduce the risk of cancer.[74] These contaminants have been detected at levels 177, 274, 254, and 198 times the EWG Health Guideline in major cities across the nation, including Los Angeles, San Francisco, New York, and Detroit, respectively.[75] Indeed, in 48-50 states,

[70] *See Total Trihalomethanes*, FLA. DEP'T OF HEALTH, https://www.floridahealth.gov/environmental-health/hazardous-waste-sites/contaminant-facts/_documents/doh_tthms_faq.pdf (last visited Aug. 15, 2023).
[71] *Id.*
[72] *Tap Water Database--Total Trihalomethanes (TTHMS)*, EWG, https://www.ewg.org/tapwater/contaminant.php?contamcode=2950# (last visited Aug. 16, 2023).
[73] *Id.*
[74] *Tap Water Database--Total Trihalomethanes (TTHMS)*, EWG, https://www.ewg.org/tapwater/contaminant.php?contamcode=2950# (last visited Aug. 16, 2023).
[75] *See Total Trihalomethanes (TTHMs)*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/contaminant.php?contamcode=2950#:~:text=State%20and%20national%20drinking%20water%20standards%20and%20health%20guidelines&text=Guideline%200.15%20ppb-,The%20health%20guideline%20of%200.15%20parts%20per%20billion%2C%20or%20ppb,million%20lifetime%20cancer%20risk%20level (last visited Aug. 15, 2023); *Los Angeles Department of Water and Power*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=CA1910067 (last visited Aug. 15, 2023); *San Francisco City Water System*, EWG TAP WATER DATABASE,

TTHMS have afflicted hundreds of millions of people (between 157 and 296 million, depending on the contaminant), all or nearly all of whom have been exposed to levels exceeding the EWG's guideline, and approximately half a million people in 36 states whose drinking water exceeds the federal limit. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). Yet, the Products do not remove or reduce TTHMS from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

31.    **Health Hazards—Uranium.** Uranium is a naturally occurring radioactive element, similar to radium, present in rocks, which break down to soil, and introduced into water systems.[76] The mining of uranium leads to waste products that are more radioactive than the natural rock and contaminants water, soil, and the air if it is not disposed of properly. *Id.* Exposure to uranium and radiation, similar to radium, can cause adverse health effects:

- Liver cancer,
- Bone cancer, and
- Lung cancer. *Id.*

The EPA set a federal limit on the contamination of water at 20 pCi/L.[77] However, according to the EWG, consuming water with 20 pCi/L of uranium "would cause more than 4.6 cancer cases in a population of 100,000."[78] Accordingly, the EWG set a Health Guideline for 0.43 pCi/L. *Id.* Indeed, uranium has been found in 44 states, in excess of the EWG guideline, affecting 61 million people, and in 22 states in excess of the federal limit, affecting more than 62,000 people. **Exhibit 4** (Tap Water Concentration and Safety Limits Chart). It has also been detected at levels 7 times the EWG's

---

https://www.ewg.org/tapwater/system.php?pws=CA3810011 (last visited Aug. 15, 2023); *City of Detroit*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=MI0001800 (last visited Aug. 15, 2023); *New York City System*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/system.php?pws=NY7003493 (last visited Aug. 15, 2023).
[76] *Radionuclide Basics: Uranium*, EPA, https://www.epa.gov/radiation/radionuclide-basics-uranium (last visited Aug. 16, 2023).
[77] *See Uranium*, EWG TAP WATER DATABASE, https://www.ewg.org/tapwater/contaminant.php?contamcode=X006 (last visited Aug. 15, 2023).
[78] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

guideline in Los Angeles.[79] Yet, the Products do not remove or reduce uranium from consumers' drinking water to below detectable lab limits, and Defendant fails to adequately inform consumers of this on the Products' packaging and labels. **Exhibit 3** (Performance Chart); **Exhibit 2** (Product Images).

**C.    Materiality of Challenged Representations, Reasonable Consumer's Perception, and the Failure of the Products to Fulfill Defendant's Promises**

32.    **Consumer Demand for Clean Drinking Water.** Millions of Americans are harmed by drinking water, as discussed above. There are now more than 60,000 chemicals used in America which means consumers are not drinking one chemical at a time; rather, each glass of tap water often contains a cocktail of harmful chemicals.[80] The array of toxic pollutants in just California drinking water could in combination cause more than 15,000 excess cases of cancer, according to a peer-reviewed study to assess cumulative risk from carcinogenic drinking water contaminants.[81] The health hazards of water contaminants, including the contaminants listed in the Health Hazards and Tap Water Concentration Charts are numerous, severe, and can result in death or debilitating and lifelong diseases. Consumers and public health concerns over the safety of drinking water drive consumers to buy the Products. Defendant takes advantage of those fears through its marketing and advertising of the Products. Indeed, the only purpose behind the Products is to provide safe and clean water. Thus, the Challenged Representations and Material Omission are material to consumers in deciding to the buy the Products.

33.    **Challenged Representations on Products' Labels and Packaging.** Defendant trades on the consumers' need for clean and safe drinking water to convince consumers that the Products remove or reduce common water contaminants hazardous to health, including the Common Hazardous Ingredients.

---

[79] *Los Angeles Department of Water and Power*, EWG Tap Water Database, https://www.ewg.org/tapwater/system.php?pws=CA1910067 (last visited Aug. 15, 2023).

[80] *See* Whitney, *Is LA Tap Water Safe to Drink? Los Angeles Tap Water Quality 2021*, Premiere Sales Water Blog (May 30, 2019), https://premieresales.com/la-tap-water-drinking-water-los-angeles-california-water-quality/ (last visited Aug. 15, 2023).

[81] *California Drinking Water: How the Combination of Multiple Contaminants Raises Cancer Risks*, *supra* note 8.

a.  **Design/Purpose.** The Product is a home water filtration device that functions as a water pitcher or dispenser. By its very nature, the device conveys to consumers that it will remove hazardous contaminants from their drinking water. *See* **Exhibit 2** (Product Images).

b.  **Uniform Name and Product Identification.** Defendant uniformly names and prominently labels as a "BRITA WATER FILTRATION SYSTEM." *Id.*

c.  **Challenged Representations.** Defendant packages and labels the Products with the Challenged Representations, each of which convey, alongside the Products' very nature and uniformly labeled name, that the Products will remove or reduce hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits. *Id.*

d.  **Reinforcing Labeling Claims.** Defendant repeats one or more of the Challenged Representations on the back, side, or top panels of the Products' labels and packaging, in addition to water-related imagery and reinforcing claims, such as "BRITA WATER FILTRATION SYSTEM", "Better water for you. Better water for the planet.", "TRANSFORM YOUR WATER", "FRESH FILTER = FRESHER WATER", "GET MORE WITH BRITA", "Reduces 30 contaminants including Lead, Benzene, Mercury, Cadmium, Asbestos, & more", "Reduces 3X more contaminants vs. Brita Standard Filters", and/or "Improves water taste & odor" (collectively "**Reinforcing Labeling Claims(s)**"), to buttress the Challenged Representations and support the consumers' perception.

e.  **Material Omission.** Defendant fails to disclose that the Material Omission anywhere on the Products' packaging or labeling, including in particular on the front-facing or top panels to inform consumers that the Products will not, contrary to their design, name, Challenged Representations, and Reinforcing Labeling Claims, remove or reduce common hazardous water contaminants to below lab detectable limits, including the Common Hazardous Contaminants. *Id.*

Indeed, the Challenged Representations are prominently placed on each Product's primary display panel of the front label or packaging. *Id.* The front primary display panel contains scant imagery and information about the Products, largely limited to the brand name (Brita), identity of the product (i.e., water filters), and one or a few claims about the Products' attributes. *Id.* The Challenged Representations are stated in clear, legible, and highly visible font, including a typeface that starkly contrasts with the background color and imagery. *Id.* The net-effect or net-impression on consumers who view the Products is that the Products will remove or reduce common hazardous water contaminants, such as the Common Hazardous Contaminants, to below lab detectable limits. Defendant reinforces its deceptive labeling by materially omitting that the Products fail to do so. *Id.*

34.     **Brita Filters Fail to Remove Hazardous Contaminants.** However, the Products fail to remove or reduce contaminants hazardous to health, including the Common Hazardous Contaminants and those identified in the Performance, Tap Water Concentration and Safety Limits, and Health Hazards Charts, to at least below lab detectible limits. *See* **Exhibit 3-5**. Accordingly, Defendant's labeling, advertising, marketing, and packaging of the Products with the Challenged Representations, including the Material Omission, is misleading, false, and deceptive. The Products' labels and packaging lead reasonable consumers to believe that the Products remove or reduce common hazardous contaminants to below lab detectible limits. And they omit the fact that they fail to do so, including some of the most harmful contaminants present in drinking water at levels exceeding the health guidelines.

**D.     Plaintiff and Reasonable Consumers Were Misled by the Challenged Representations and Material Omission into Buying the Products, to Their Detriment**

35.     **Reasonable Consumer's Perception.** The Challenged Representations and Material Omission lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations—meaning, consumers are led to believe that the Products remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits.

36.     **Materiality.** The Challenged Representations and Material Omission are material to

reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning that it is important to consumers that the Products remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits.

37. **Reliance.** The Class, including Plaintiffs, reasonably relied on the Challenged Representations and Material Omission in deciding to purchase the Products.

38. **Falsity.** The Challenged Representations and Material Omission are deceptive because the Products do not remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits. *See* **Exhibit 3-5.**

39. **Consumers Lack Knowledge of Falsity.** The Class, who purchased the Products, including Plaintiff, do not know and had no reason to know, at the time of purchase, that the Products' Challenged Representations and Material Omission are false, misleading, deceptive, and unlawful. Nothing on the Products' labeling or packaging adequately, expressly, unambiguously, or conspicuously inform consumers that the Challenged Representations are false—specifically, that the Products do not remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits. *See* **Exhibit 2** (Product Images). That is because the Products' labeling and packaging do not contain a clear, unambiguous, and conspicuously displayed statement, reasonably proximate to the Challenged Representations, that reasonable consumers are likely to notice, read, and understand to mean that, contrary to the prominent, clear, and unambiguous front-label Challenged Representation, consistent with the Products' design and nature, name, Reinforcing Labeling Claims, and Material Omission, that the Challenged Representations are indeed false. To the extent Defendant hopes that some inconspicuous fine print or other statements and disclaimers on some other portion of the Products' packaging should have cured the reasonable consumers' perception, studies show that only approximately 7.7% to 11.6% of people even look at a consumer product's side or back labels before they buy it.[82] Thus, the very placement of qualifying statements or contradictory disclaimers

---

[82] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  on back or side panels, by their very placement, are not sufficiently conspicuous to presume that a

2  reasonable consumer would have even noticed it, let alone understood it to qualify or contradict

3  prominently placed front-panel representations, like the Challenged Representations.

4    40.    **Defendant' Knowledge.** Defendant knew, or should have known, that the Challenged

5  Representations and Material Omission are false, misleading, deceptive, and unlawful, at the time

6  that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the

7  Challenged Representations and Material Omission to Plaintiffs and the Class. Defendant

8  intentionally and deliberately used the Challenged Representation, alongside the Products'

9  design/purpose, name, and the Reinforcing Labeling Claims, to cause Plaintiff and similarly

10  situated consumers to buy the Products believing that the Challenged Representations are true.

11    a.    **Knowledge of Reasonable Consumers' Perception.** Defendant knew or
          should have known that the Challenged Representations and Material
12          Omission would lead reasonable consumers into believing that the Products
          remove or reduce common hazardous water contaminants, including the
13          Common Hazardous Contaminants, to below lab detectable limits. Not only
          has Defendant utilized a long-standing brand strategy to identify the Products
14          as effective filters that provide clean and safe drinking water, but Defendant

15  ────────────────────────────

16  655A&originRegion=us-east-1&originCreation=20220720162546 (last accessed July 20, 2022)
    (consumer purchasing behavior study using in-store observation and interview data collection
17  methodology to realistically estimate the degree consumers use nutritional information (found on
    side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**,
18  who looked at a product and placed it in their shopping cart, **were actually observed looking at
    the side/back panels of its packaging or labels** (panels other than the front panel) before placing
19  it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product
    "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in
20  detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for
    nutritional information) **is overreported by 50%** when the in-store interview data and observational
21  data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food
    labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available
22  at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022)
    (consumer purchasing behavior study using in-store observation and interview data collection
23  methodology to evaluate whether people look at food labels before buying them, where they looked,
    and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds,
24  per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging,
    and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought);
25  Benn, Yael, et al., *What information do consumers consider and how do they look for it, when
    shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at
26  https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed Jul.
    20, 2022) (consumer purchasing behavior study using online eye-movement tracking and
27  recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of
    products, rather than examine detailed product information; and (2) by comparison to pictures of
28  products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information:
    4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy
    information, and 0.09% recycling information for example).

also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Products remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits. Thus, Defendant either knew that the Challenged Representations are misleading before it marketed the Products to the Class, including Plaintiffs, or Defendant would have known that they were deceptive had it complied with its statutory obligations.

b. **Knowledge of Falsity.** Defendant manufactured and marketed the Products with the Challenged Representations, but Defendant opted to make Products that do not conform with those representations. Specifically, Defendant advertised, labeled, and packaged the Products with the Challenged Representations, but chose to manufacture the Products without the ability to remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits. **Exhibit 3-5.** Additionally, Defendant was obligated under Cal. Health & Safety Code section 116825 *et seq.*, to certify its marketing claims, including those that conveyed to consumers that the Products remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits. Thus, Defendant either complied with its obligation and knew the Products could not live up to Defendant's promises, or Defendant would have known that the Products could not perform had Defendant complied with its statutory obligation.

c. **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations materiality to consumers. ***First***, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels or packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels and packaging demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the constant, unwavering use of the Challenged Representations on countless Products, advertisements, and throughout Defendant's marketing campaign, evidences Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales. ***Third***, the Products' primary, if not only, purpose was to provide safe and clean drinking water. Thus, Defendant knew, in designing the Products, that the Challenged Representations and Material Omission were material to consumers.

d. **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, packaging, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite

41

Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representation in deciding to buy the Products—to filter harmful contaminants out of drinking water—Defendant deliberately chose to market the Products with the Challenged Representation thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

41.     **Duty to Disclose Material Omission.** Defendant had, at all relevant times, an obligation to disclose the Material Omission—that the Products do not remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits. Defendant not only knew or should have known that reasonable consumers would perceive the Products and Challenged Representations to mean that the Products remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits, but Defendant knew that this attribute was material to consumers, causing them to rely on the Challenged Representations in deciding to buy the Products. Defendant also knew or should have that the Challenged Representations were false—that the Products would not remove or reduce common hazardous water contaminants, including the Common Hazardous Contaminants, to below lab detectable limits.

42.     **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's Challenged Representations and Material Omission, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

E.     **The Products are Substantially Similar**

43.     As described herein, Plaintiff purchased the Purchased Product. The additional Products identified *supra* at ¶ 6 (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product.

a.     **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b.     **Brand.** All Products are sold under the same brand name: Brita.

42

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

c.  **Marketing Demographics.**  All Products are marketed directly to consumers for personal use.

d.  **Purpose.**  All Products are water filtration devices designed and marketed to remove or reduce contaminants from water.

e.  **Use.**  All Products are used in the same manner—water is placed into the pitcher or dispenser, and passed through the filter, to then be used or consumed.

f.  **Misrepresentations and omissions.**  All Products contain one or more Challenged Representations conspicuously and prominently placed on the primary display panel of the front label. All Products contain the Material Omission on their packaging and labeling.

g.  **Packaging.** All Products are packaged in similar packaging.

h.  **Key Attributes.**  All Products fail to remove or reduce common contaminants hazardous to health in drinking water to below lab detectable limits identified in the Performance Chart, attached as **Exhibit 3**, including the Common Hazardous Contaminants highlighted here.

i.  **Misleading Effect.**  The misleading effect of the Challenged Representations and Material Omission on consumers is the same for all Products—consumers over-pay for water filtration devices that remove or reduce to below lab detectable limits common contaminants hazardous to health in water, including the Common Hazardous Contaminants highlighted here.

**F.    No Adequate Remedy at Law**

44.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.  **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.  **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations and omissions, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory

43

requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations and omissions. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violations of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

44

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff(s)'s individual claims and any certified class or subclass. Plaintiff(s) therefore reserve(s) Plaintiff(s)'s right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff(s) and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.  CLASS ACTION ALLEGATIONS

45.    **Class Definition.** Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of the Class defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations or Material Omission on the Products' labels or packaging, for purposes other than resale ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this action, purchased the Products, containing the Challenged Representations or Material Omission on the Products' labels or packaging, for purposes other than resale ("**California Subclass**").

(the "Nationwide Class" and "California Subclass" are collectively referred to as the "**Class**").

46.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

47.    **Reservation of Rights to Amend the Class Definition.** Pursuant to California Civil Code Section 382, Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

48.    **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of

purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

49.    **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.    Whether Defendant's conduct of advertising and selling the Products as effective water filters and omitting that they fail to filter higher risk contaminants present in drinking water constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

c.    Whether Defendant used deceptive representations and omissions in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d.    Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e.    Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

f.    Whether Defendant's labeling and advertising of the Products are misleading in violation of Business and Professions Code section 17500, *et seq*.;

g.    Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is misleading in violation of Business and Professions Code section 17500, *et seq*.;

h.    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i.    Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j.    Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k.    Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.    How much more money Plaintiff and the Class paid for the Products than they actually received;

m.    Whether Defendant's conduct constitutes breach of warranty;

n.    Whether Plaintiff and the Class are entitled to injunctive relief; and

46

o.      Whether Defendant was unjustly enriched by their unlawful conduct.

50.      **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

51.      **Typicality.**  Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members purchased Defendant's misleading and deceptive Products.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

52.      **Adequacy.** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

53.      **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

54.      **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.      The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.      Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

47

CLASS ACTION COMPLAINT

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

55.    **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

56.    **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

57.    **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.    CAUSES OF ACTION

### COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**(*On Behalf of the California Subclass*)**

58.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

59.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

60.     **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

61.     **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Challenged Representations and Material Omission—despite the fact the Products fail to remove or reduce to below lab detection limits common contaminants from drinking water that are hazardous to health. Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores and point-of-purchase displays.

62.     **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products fail to remove or reduce to below lab detection limits common contaminants from drinking water that are hazardous to health. Defendant knew and knows that the Products cannot remove or reduce to below lab detection limits some of the most hazardous contaminants prevalent in drinking water, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers they do so.

63.     **Misleading Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products remove or reduce to below lab detection limits common contaminants from drinking water that are hazardous to health.

64.     **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations and Material Omission—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

65.     **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair

competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

66.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

67.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

68.    **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations and omissions, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

69.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

70.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### *"Unfair" Prong*

71.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

72.    **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations and omissions does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, receive Products of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid

any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

73.     **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

74.     **No Utility.** Here, Defendant's conduct of labeling the Products with the Challenged Representations and omissions when the Products fail to filter harmful contaminants of concern has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

75.     **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

76.     **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations and omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

77.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

78.     **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

79.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Challenged Representations.

80.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact, have lost money and were exposed to increased health risks as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that remove or reduce to below lab detection limits common contaminants from their drinking water that are hazardous to health. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

81.     **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

82.     **Fraudulent & Material Challenged Representations and omissions.** Defendant used the Challenged Representations and Material Omissions with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations and Material Omissions are deceptive, and Defendant knew, or should have known, of their deception. The Challenged Representations and omissions are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

83.     **Fraudulent Business Practice.** As alleged herein, the misrepresentations and omissions by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

84.     **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and deceptive Challenged Representations and omissions to their detriment in that they purchased the Products.

85.     **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations and omissions.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

86. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

87. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Challenged Representations and Material Omission.

88. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products with the ability to remove or to reduce to below lab detection limits common contaminants from their drinking water that are hazardous to health, when, in fact, the Products do not filter out a plethora of harmful chemicals. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

89. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

90. **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

91. **Fraud.** Additionally, Defendant's use of the Challenged Misrepresentations to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

92. **Cal. Health & Safety Code §§ 116825, *et seq.* re: Water Treatment Devices.** California Health and Safety Code sections 116825, *et seq.* govern the registration, certification,

labeling/packaging claims, and sale of the Products in the State of California.

a.    **Applicability.**  California Health and Safety Code sections 116825, *et seq.* apply to Defendant's sale of the Products using the Challenged Representations.  The Products are "water treatment devices" because they are systems sold for residential use and intended to improve the water supply through filtration.  *See* Cal. Health & Safety Code § 116825(a).  Defendant claims that the Products remove contaminants—which constitute any health-related physical, chemical, biological, or radiological substance or matter in water.  *Id.* § 116825(d).  Defendant makes "health or safety claims", under section 116825(e), as the Products purport to remove the Filtered Contaminants.

b.    **Registration & Publication.**  California Health and Safety Code section 116832 requires a manufacturer, such as Defendant, who sells water treatment devices, such as the Products, in California for which the manufacturer makes a "health or safety claim," such as the Challenged Representations, to register the devices with the regulatory agency in California that enforces sections 116825, *et seq.*, by providing the following information that the regulatory agency will publish online: (1) identification of the manufacturer by name, contact information, and website; (2) the devices name and product identification number; (3) the name of each contaminant claimed to be removed or reduced by the device; (4) the name of the organization that meets ANSI accreditation standards that has certified that the device removes or reduces the contaminant, including the name of the testing protocol or standard used to test the device, date of the test, summary of the results, and the date by which the device must be retested; and (5) a product information worksheet that summarizes the foregoing information, provides a copy of the aforementioned certificate, provides the service flow rate and rated service life, describes general use conditions/needs (e.g., maximum turbidity,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

bacteriological quality of source water, max/minimum operating temperatures and pressures), and references to the owner's manual for general operation and maintenance and the manufacturer's warranty. Pursuant to section 116845, the California regulatory agency publishes online a list of each water treatment device with valid certification, each device with registration materials submitted in compliance with section 116832, and the aforementioned product information worksheet. Section 116835 prohibits the sale of water treatment devices, such as the Products, in the State of California, if the device is not included on the published list.

c.    **Label/Packaging.** Under California Health and Safety Code section 116835, manufacturers who make a health or safety claim for a water treatment device, such as Defendant who makes the Challenged Representations for the Products, are required to "the exterior packaging . . . shall clearly identify the contaminant or contaminants that the device has been certified . . . to remove or reduce. If a device has been certified to remove or reduce more than five contaminants, at least five contaminants shall be listed on the exterior packaging followed by a statement directing consumers to visit the manufacturer's Internet Web site to obtain information regarding additional contaminants that the device is certified to remove or reduce."

d.    **Violations of Section 116825,** *et seq.* Defendant has violated the registration and certification requirements applicable to the Products. Defendant has failed to register certain Products identified in the Product List, attached as **Exhibit 1**, with the California regulatory agency pursuant to section 116825. Defendant has not provided any of the disclosures or proof of certification through an ANSI accredited laboratory that performed NSF/ANSI standardized testing for the Products performance consistent with the Challenged Representations. Defendant has continued to sell the Products in violation of section 116835, even though said Products are not published

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   online by the California regulatory agency pursuant to section 116845.

2   Defendant has failed to comply with the Label/Packaging requirements

3   pursuant to section 116835 because the Challenged Representations are not

4   clearly identified on the exterior packaging of the Products or on a referenced

5   website.

6       e.   **Statutory Penalties.**  Pursuant to section 116840 of the California Health and

7   Safety Code, Plaintiff and the California Subclass, are entitled to a civil

8   penalty up to and including $5,000 for each violation.  As the conduct

9   constituting Defendant's violation is of a continuing nature, each day of the

10   conduct is a separate and distinct violation.  Accordingly, Plaintiff and the

11   California Subclass seek civil penalties under this section in an amount to be

12   proven at the time of trial.

13   93.   **Additional Violations.** Defendant's conduct in making the deceptive representations

14   and omissions described herein constitutes a knowing failure to adopt policies in accordance with

15   and/or adherence to applicable laws, as set forth herein, all of which are binding upon and

16   burdensome to their competitors. This conduct engenders an unfair competitive advantage for

17   Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under

18   California Business & Professions Code sections 17200-17208. Additionally, Defendant's

19   misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572,

20   1573, 1709, 1710, 1711, and 1770, as well as the common law.

21   94.   **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products,

22   as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct.

23   Defendant knew or should have known of its unlawful conduct.

24   95.   **Reasonably Available Alternatives.** Defendant had reasonably available alternatives

25   to further its legitimate business interests, other than the conduct described herein. Defendant could

26   have refrained from labeling the Products with the Challenged Representations and omissions.

27   96.   **Business Practice.** All of the conduct alleged herein occurs and continues to occur in

28   Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of

1  conduct.

2  97.  **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and

3  the California Subclass seek an order of this Court enjoining Defendant from continuing to engage,

4  use, or employ its practice of deceptive advertising of the Products.

5  98.  **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact

6  and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California

7  Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would

8  not have purchased the Products if they had known that Defendant's purposely deceived consumers

9  into believing that the Products are effective water filters. Accordingly, Plaintiff seeks damages,

10  restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

**(*On Behalf of the California Subclass*)**

15  99.  **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all

16  allegations contained in this complaint, as though fully set forth herein.

17  100.  **California Subclass.** Plaintiff brings this claim individually and on behalf of the

18  California Subclass who purchased the Products within the applicable statute of limitations.

19  101.  **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code

20  section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

21  102.  **Material Challenged Representations Disseminated to Public.** Defendant violated

22  section 17500 when it advertised and marketed the Products through the unfair, deceptive, and

23  misleading Challenged Representations and omissions disseminated to the public through the

24  Products' labeling, packaging, and advertising.  These representations were deceptive because the

25  Products do not conform to them.  The representations were material because they are likely to

26  mislead a reasonable consumer into purchasing the Products.

27  ///

28  ///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

58

CLASS ACTION COMPLAINT

103. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

104. **Intent to sell.** Defendant's Challenged Representations and omissions were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

105. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products and increased health risks from ingesting contaminants the Products fail to filter from drinking water. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

106. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## **COUNT THREE**

### **Violation of California Consumers Legal Remedies Act**

### **(Cal. Civ. Code §§ 1750, *et seq.*)**

### **(*On Behalf of the California Subclass*)**

107.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

108.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

109.    **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

110.    **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

111.    **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

112.    **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

113.    **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

114.    **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive, and fraudulent Challenged Representations and Material Omissions:

   f.    Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

g. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

h. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

115. **Knowledge.** Defendant's uniform and material representations and omission regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were misleading.

116. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

117. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

118. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representation was material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

119. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, Plaintiff, more than thirty days prior to the filing of this complaint, on or about June 15, 2022, Plaintiff's counsel, acting on behalf of all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant The Brita Products Company at is headquarters and principal place of business registered with the California Secretary of State (1221 Broadway St., Oakland, CA 94612) and its registered agent for service of process (CT Corp. System, 330 N. Brand Blvd., Suite 700, Glendale, CA 91203), which were delivered to those addresses on or about June 21, 2022 and June 23, 2022, respectively. *See* **Exhibit 6** (Pre-lit Demand Letter).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

120.    **Causation/Damages.**  As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

121.    **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products with the Challenged Representations.

122.    **Punitive Damages.**  Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of

their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiff seeks an award of punitive damages against Defendant.

## COUNT FOUR

### Breach of Warranty

#### (*On Behalf of the Nationwide Class and California Subclass*)

123.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

124.    **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

125.    **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

126.    **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant—to wit, that the Products, among other things, conform to the Challenged Representations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

127.    **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the Challenged Representations and, therefore, Defendant breached its warranties about the Products and their qualities.

128.    **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

129.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

130.  **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

131.  **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

132.  **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

133.  **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

134.  **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

135.  **Causation/Damages.**   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

136.  **Punitive Damages**.  Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and

unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## VIII.   **PRAYER FOR RELIEF**

137.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of

action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: August 16, 2023                    Respectfully submitted,

                                          **CLARKSON LAW FIRM, P.C.**
                                          By:

                                           */s/ Katherine A. Bruce*
                                          RYAN J. CLARKSON
                                          KATHERINE A. BRUCE
                                          KELSEY J. ELLING
                                          OLIVIA M. TREISTER

                                          *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

## IX.   **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: August 16, 2023

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**
By:

 */s/ Katherine A. Bruce*
RYAN J. CLARKSON
KATHERINE A. BRUCE
KELSEY J. ELLING
OLIVIA M. TREISTER

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

# Exhibit "1"

*Class Action Complaint*

Product List

# Product List

| No. | System Name | System Model # | California Water Board Registration | | | Unregistered |
|-----|-------------|----------------|-------------------------------------|--|--|--------------|
| | | | OB03 | OB06 | OB05 | |
| **Pitchers Compatible with Standard Filter (OB03) and Longlast/Longlast+/Elite Filter (OB06)** | | | | | | |
| 1. | Amalfi | OB32 | 3200 | 3807 3808 | -- | NA |
| 2. | Atlantis | OB32 | 2126c | 2126c | -- | **2018-2023** |
| 3. | Avalon | OB52 | 2126p | 2126p | -- | **2018-2023** |
| 4. | Bella | OB44 | 2126j | 2126j | -- | **2018-2023** |
| 5. | Capri | OB43 | 3201 | 3809 3810 | -- | NA |
| 6. | Carmel | OB52 | 2126q | 2126q | -- | **2018-2023** |
| 7. | Champlain | UNK | Unregistered | Unregistered | -- | **Unregistered** |
| 8. | Chrome | OB39 | 2126g | 2126g | -- | **2018-2023** |
| 9. | Classic | OB01 | 2126a | 2126a | -- | **2018-2023** |
| 10. | Denali | OB62 | 3896 | 3897 | -- | **Pre-2022** |
| 11. | Everyday | OB04 | 2126k | 3811 3812 | | NA |
| 12. | Grand | OB36 | 2126f | 3813 3814 | -- | NA |
| 13. | Huron | OB60 | Unregistered | Unregistered | -- | **Unregistered** |
| 14. | Infinity | OB54 | 3217 | 3217 | -- | NA |
| 15. | Lake | OB58 | 3248 | 3248 | -- | NA |
| 16. | Marina | OB47 | 2126L | 3817 3818 | -- | NA |
| 17. | Metro | OB11 | 3206 | 3819 3820 | -- | NA |
| 18. | Mini Plus | OB44 | 3204 | 3821 3822 | -- | NA |
| 19. | Mist | OB01 | 3199 | 3821 3822 | -- | NA |
| 20. | Monterey | OB50 | 2126o | 3825 3826 | -- | NA |
| 21. | Oceania | OB48 | 2125m | 2125m | -- | **2018-2023** |
| 22. | Pacifica | OB41 | 2126h | 3827 3828 | -- | NA |
| 23. | Slim | OB11 | 2126b | 3898 3899 | -- | NA |
| 24. | Soho | OB11 | 3205 | 3829 3830 | -- | NA |
| 25. | Space Saver | OB21 | 2126c | 3831 3832 | -- | NA |
| 26. | Stainless Steel | OB51 | 2126n | 3877 3878 | -- | NA |

Brita Water Pitcher and Dispenser Systems
Compatible with Standard Filter (OB03), Longlast/Longlast+/Elite (OB03), and Stream (OB05)
Model Nos. and California Water Board Registration Nos.

Page 1 of 2

Revised: 7/27/2023

87

## Product List

| No. | System Name | System Model # | California Water Board Registration | | | Unregistered |
|-----|-------------|----------------|------|------|------|--------------|
| | | | OB03 | OB06 | OB05 | |
| 27. | Tahoe | OB60 | Unregistered | Unregistered | -- | **Unregistered** |
| 28. | Wave | OB53 | 3202 | 3835<br>3836 | -- | NA |
| 29. | Vintage | OB43 | 2126i | 2126i | -- | **2018-2023** |
| **Dispensers Compatible with Standard Filter (OB03) and Longlast/Longlast+/Elite Filter (OB06)** | | | | | | |
| 30. | Ultramax | OB24 | 2126d | 3833<br>3834 | -- | NA |
| 31. | Ultraslim | UNK | 2126b | 3898<br>3899 | -- | NA |
| **Pitchers Compatible with Stream Filter (OB05)** | | | | | | |
| 32. | Cascade | OB57 | -- | -- | 3247 | NA |
| 33. | Hydro | OB56 | -- | -- | 3246 | NA |
| 34. | Rapids | OB55 | -- | -- | 3425 | NA |
| **Dispensers Compatible with Stream Filter (OB05)** | | | | | | |
| 35. | Ultraslim | UNK | -- | -- | Unregistered | **Unregistered** |

Brita Water Pitcher and Dispenser Systems
Compatible with Standard Filter (OB03), Longlast/Longlast+/Elite (OB03), and Stream (OB05)
Model Nos. and California Water Board Registration Nos.

Page 2 of 2

Revised: 7/27/2023

88

# Exhibit "2"

*Class Action Complaint*

Product Images

**Brita® Water Pitcher – Amalfi (Model #OB32) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.shipt.com/up/brita-6-cup-amalfi-pitcher---white/036bfc63-d45f-271f-25ca-d26cfc1e95a0) (captured August 14, 2023)



Exhibit 2-1: Brita® Water Pitcher – Amalfi (Model #OB32) – Standard Filter Labels

**Brita® Water Pitcher – Atlantis (Model #OB32) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.com/dp/B00HEYRLO8/ref=emc_b_5_t) (captured August 14, 2023)



Exhibit 2-2: Brita® Water Pitcher – Atlantis (Model #OB32) – Standard Filter Labels

**Brita® Water Pitcher – Avalon (Model #OB52), Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label**

# PLACEHOLDER

Exhibit 2-3: Brita® Water Pitcher – Avalon (Model #OB52) Labels

**Brita® Water Pitcher – Bella (Model #OB44) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.sg/Brita-Bella-Water-Filter-Pitcher/dp/B003B22NWM) (captured August 14, 2023)



Exhibit 2-4: Brita® Water Pitcher – Bella (Model #OB44) – Standard Filter Labels

**Brita® Water Pitcher – Capri (Model #OB43) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.ca/Brita-Capri-White-Filter-Pitcher/dp/B01GKE1O7C) (captured August 14, 2023)



Exhibit 2-5: Brita® Water Pitcher – Capri (Model #OB43)—Standard Filter Labels

**Brita® Water Pitcher – Carmel (Model #OB52), Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label**

# PLACEHOLDER

Exhibit 2-6: Brita® Water Pitcher – Carmel (Model #OB52) Labels

**Brita Water® Pitcher – Champlain (Model # Unknown) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Champlain-Water-Filter-Pitcher-10-Cup-with-2-Filters/1777047993) (captured August 14, 2023)



Exhibit 2-7: Brita® Water Pitcher – Champlain (Model # Unknown) – Standard Filter Labels

**Brita® Water Pitcher – Chrome (Model #OB39) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Smart-Pitcher-With-Digital-Display-Chrome/8470933?action=product_interest&action_type=title&beacon_version=1.0.2&bucket_id=irsbucketdefault&client_guid=4f04c8e8-d797-4903-825a-5e6ffcf1721d&config_id=1332&customer_id_enc&findingMethod=p13n&guid=4f04c8e8-d797-4903-825a-5e6ffcf1721d&item_id=8470933&parent_anchor_item_id=8470918&parent_item_id=8470918&placement_id=irs-1332-m3&reporter=recommendations&source=new_site&strategy=PWVUB&visitor_id=) (captured August 15, 2023)



Exhibit 2-8: Brita® Water Pitcher – Chrome (Model #OB39) – Standard Filter Labels

**Brita® Water Pitcher – Classic (Model #OB01) – 5 Cup & Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Classic-Water-Filter-Pitcher-40-oz-5-Cups/945600122?wmlspartner=wlpa&selectedSellerId=101041783&&adid=22222222227945600122_101041783_151527880272_18594900855&wl0=&wl1=g&wl2=c&wl3=664864354267&wl4=pla-2126479774970&wl5=9060566&wl6=&wl7=&wl8=&wl9=pla&wl10=293309627&wl11=online&wl12=945600122_101041783&veh=sem&gclid=Cj0KCQjwoeemBhCfARIsADR2QCtSNRmNSXYaBf5fRzfAUzy72hEg0cgrhMbG7dWf3OUlfzllOzkd8gEaAtpKEALw_wcB&gclsrc=aw.ds) (captured August 14, 2023)



Exhibit 2-9(a): Brita® Water Pitcher – Classic (Model #OB01) – 5 Cup & Standard Filter Labels

**Brita® Water Pitcher – Classic (Model #OB01) – 6 Cup & Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/BRITA/25286064) (captured August 15, 2023)



Exhibit 2-9(b): Brita® Water Pitcher – Classic (Model #OB01) – 6 Cup & Standard Filter Labels

**Brita® Water Pitcher – Denali (Model #OB62) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.target.com/p/brita-water-filter-6-cup-denali-water-pitcher-dispenser-with-standard-water-filter-white/-/A-87765946?ref=tgt_adv_xsp&AFID=google&fndsrc=tmnv&DFA=71700000112128494&CPNG=PLA_DVM%2Ba064R0000150IB7QAM-Clorox_Brita_Google+Search_2H_2023-997486&adgroup=PLA_Clorox_Brita&LID=700000001393753pgs&network=g&device=c&location=9060566&gclid=Cj0KCQjwoeemBhCfARIsADR2QCttYPeuarJ31VaaQm5lA1a0S4yBSAzLcbqYFKg1BEUdjcWunSO1bdYaAlQDEALw_wcB&gclsrc=aw.ds) (captured August 14, 2023)



Exhibit 2-10(a): Brita® Water Pitcher – Denali (Model #OB62) – Standard Filter Labels

**Brita® Water Pitcher – Denali (Model #OB62) – Elite Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.heb.com/product-detail/brita-denali-water-pitcher-with-elite-filter-bright-white/9182524) (captured August 15, 2023)



Exhibit 2-10(b): Brita® Water Pitcher – Denali (Model #OB62) – Elite Filter Labels

**Brita® Water Pitcher – Everyday (Model #OB04) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.com/Brita-10060258355090-Everyday-Pitcher-1-Pack/dp/B004GNGID0/ref=asc_df_B004GNGID0/?tag=hyprod-20&linkCode=df0&hvadid=423849325883&hvpos=&hvnetw=g&hvrand=14391874915071544 757&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9060566&hvt argid=pla-381924676506&psc=1&tag=&ref=&adgrpid=95799636462&hvpone=&hvptwo=&hvadid=4238 49325883&hvpos=&hvnetw=g&hvrand=14391874915071544757&hvqmt=&hvdev=c&hvdvcm dl=&hvlocint=&hvlocphy=9060566&hvtargid=pla-381924676506) (captured August 14, 2023)



Exhibit 2-11: Brita® Water Pitcher – Everyday (Model #OB04) – Standard Filter Labels

**Brita® Water Pitcher – Grand (Model #OB36) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.lowes.com/pd/Brita-Water-Filter-Pitcher/50154478) (captured August 14, 2023)



Exhibit 2-12: Brita® Water Pitcher – Grand (Model #OB36) – Standard Filter Labels

**Brita® Water Pitcher – Huron (Model #OB60) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06) Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Large-10-Cup-Water-Filter-Pitcher-with-1-Standard-Filter-Made-Without-BPA-Huron-White/944187164) (captured August 15, 2023)



Exhibit 2-13(a): Brita® Water Pitcher – Huron (Model #OB60) – Standard Filter Labels

**Brita® Water Pitcher – Huron (Model #OB60) – Elite Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Large-10-Cup-Water-Filter-Pitcher-with-1-Brita-Elite-Filter-Made-Without-BPA-Huron-White/682773851) (captured August 14, 2023)



Exhibit 2-13 (b): Brita® Water Pitcher – Huron (Model #OB60) – Elite Filter Labels

**Brita® Water Pitcher – Infinity (Model #OB54), Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label**

# PLACEHOLDER

Exhibit 2-14: Brita Water Pitcher – Infinity (Model #OB54) Labels

**Brita® Water Pitcher – Lake (Model #OB58) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Model-Water-Filter-Water-Cleasner-with-1-Pitcher-and-2-filters-10-cup-capacity-White/399348454) (captured August 14, 2023)



Exhibit 2-15: Brita® Water Pitcher – Lake (Model #OB58) – Standard Filter Labels

**Brita® Water Pitcher – Marina (Model #OB47) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Marina-Pitcher-Filter/16513273) (captured August 14, 2023)



Exhibit 2-16: Brita® Water Pitcher – Marina (Model #OB47) – Standard Filter Labels

**Brita® Water Pitcher – Metro (Model #OB11) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Metro-Water-Filter-Pitcher-Red-5-Cup-SEALED/111989296) (captured August 15, 2023)



Exhibit 2-17: Brita® Water Pitcher – Metro (Model #OB11) – Standard Filter Labels

**Brita® Water Pitcher – Mini Plus (Model #OB44) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.com/Brita-Mini-Water-Filtration-Pitcher/dp/B01LYHDAFZ/ref=cm_cr_arp_d_product_top?ie=UTF8) (captured August 15, 2023)



Exhibit 2-18: Brita® Water Pitcher – Mini Plus (Model #OB44) – Standard Filter Labels

**Brita® Water Pitcher – Mist (Model #OB01) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06) Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Small-Mist-Water-Pitcher-with-Filter-BPA-Free-Blue-6-Cup/55134427) (captured August 15, 2023)



Exhibit 2-19: Brita® Water Pitcher – Mist (Model #OB01) – Standard Filter Labels

**Brita® Water Pitcher – Monterey (Model #OB50) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Monterey-Water-Filter-Pitcher-2-Brita-Filters-Grey-10-Cup-Capacity/163053360) (captured August 15, 2023)



Exhibit 2-20(a): Brita® Water Pitcher – Monterey (Model #OB50) – Standard Filter Labels

**Brita® Water Pitcher – Monterey (Model #OB50) – Longlast Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.lowes.com/pd/Brita-Longlast-Monterey-10-Cup-Blue-Water-Filter-Pitcher/1001329672) (captured August 15, 2023)



Exhibit 2-20(b): Brita® Water Pitcher – Monterey (Model #OB50) –Longlast Filter Labels

**Brita® Water Pitcher – Oceania (Model #OB48) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.pinterest.co.uk/pin/52424783150539437/) (captured August 15, 2023)



Exhibit 2-21: Brita® Water Pitcher – Oceania (Model #OB48) – Standard Filter Labels

**Brita® Water Pitcher – Pacifica (Model #OB41) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Pacifica-Water-Filtration-Pitcher-with-1-Filter-10-Cup-BPA-Free-Blue/20612560) (captured August 15, 2023)



Exhibit 2-22: Brita® Water Pitcher – Pacifica (Model #OB41) – Standard Filter Labels

**Brita® Water Pitcher – Slim (Model #OB11) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.com/Brita-42629-Water-Filter-Pitcher/dp/B0000AP7NV?th=1) (captured August 15, 2023)



Exhibit 2-23: Brita® Water Pitcher – Slim (Model #OB11) – Standard Filter Labels

**Brita® Water Pitcher – Soho (Model #OB11) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://catalog.nationalew.com/p/CLO36089EA/Brita-Classic-Water-Filter-Pitcher-40-oz-5-Cups/) (captured August 15, 2023)



Exhibit 2-24: Brita® Water Pitcher – Soho (Model #OB11) – Standard Filter Labels

**Brita® Water Pitcher – Space Saver (Model #OB21) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.com/Brita-Space-Saver-Pitcher-Filter/dp/B00VAG8ME4) (captured August 15, 2023)



Exhibit 2-25: Brita® Water Pitcher – Space Saver (Model #OB21) – Standard Filter Labels

**Brita® Water Pitcher – Stainless Steel (Model #OB51) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://vipoutlet.com/product/brita-8-cup-filtered-water-pitcher-in-stainless-steel-6025835792/) (captured August 15, 2023)



Exhibit 2-26: Brita® Water Pitcher – Stainless Steel (Model #OB51) – Standard Filter Labels

**Brita® Water Pitcher – Tahoe (Model #OB60) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.com/Brita-Pitcher-Reminder-Standard-Transparent/dp/B0BSHJJJGX) (captured August 15, 2023)



Exhibit 2-27(a): Brita® Water Pitcher – Tahoe (Model #OB60) – Standard Filter Labels

**Brita® Water Pitcher – Tahoe (Model #OB60) – Elite Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.target.com/p/brita-tahoe-pitcher-with-elite-filter/-/A-85731861) (captured August 15, 2023)



Exhibit 2-27(b): Brita® Water Pitcher – Tahoe (Model #OB60) – Elite Filter Labels

**Brita® Water Pitcher – Wave (Model #OB53) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.amazon.com/Filtered-Filter-Pitcher-Capacity-Filters/dp/B01DAE6ZBK) (captured August 15, 2023)



Exhibit 2-28(a): Brita® Water Pitcher – Wave (Model #OB53) – Standard Filter Labels

**Brita® Water Pitcher – Wave (Model #OB53) – Longlast Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Large-10-Cup-Water-Filter-Pitcher-with-2-Longlast-Filters-Wave/874822571) (captured August 15, 2023)



Exhibit 2-28(b): Brita® Water Pitcher – Wave (Model #OB53) –Longlast Filter Labels

**Brita® Water Pitcher – Vintage (Model #OB43) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06) Product Image – Front Label** (*see* https://www.samsclub.com/p/brita-vintage-pitchr-w-nalgene-botg/prod7950119) (captured August 15, 2023)



Exhibit 2-29: Brita® Water Pitcher – Vintage (Model #OB43) – Standard Filter Labels

**Brita® Water Dispenser – Ultramax (Model #OB24) – Standard Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Ultramax-Water-Filter-Dispenser-27-Cup-Black/46928400?wmlspartner=wlpa&selectedSellerId=0&wl13=3803&adid=2222222222774692 8400_117755028669_12420145346&wmlspartner=wmtlabs&wl0=&wl1=g&wl2=c&wl3=5011 07745824&wl4=pla-294505072980&wl5=9060566&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=local&wl 12=46928400&wl13=3803&veh=sem_LIA&gclid=CjwKCAjwxOymBhAFEiwAnodBLFHw_y TctxpqUqGnk88RfbreRtYgOPsv9gUsjdhcN7r_NqcJS2Y1DhoC0AYQAvD_BwE&gclsrc=aw.d s) (captured August 15, 2023)



Exhibit 2-30 (a): Brita® Water Dispenser – Ultramax (Model #OB24) – Standard Filter Labels

**Brita® Water Dispenser – Ultramax (Model #OB24) – Elite Filter, Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06), Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Ultramax-Polystyrene-27-Cup-Black-Water-Filter-Dispenser-with-Elite-Filter/472423413?wmlspartner=wlpa&selectedSellerId=0&wl13=3803&adid=22222222277472 423413_117755028669_12420145346&wmlspartner=wmtlabs&wl0=&wl1=g&wl2=c&wl3=50 1107745824&wl4=pla-294505072980&wl5=9060566&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=local&wl 12=472423413&wl13=3803&veh=sem_LIA&gclid=CjwKCAjwxOymBhAFEiwAnodBLPxaQJ 6POjquRbCjVVetACxdJneJHC7lMN4MOtNrhHwtR3VvOtTuohoC6XsQAvD_BwE&gclsrc=a w.ds) (captured August 15, 2023)



Exhibit 2-30(b): Brita® Water Dispenser – Ultramax (Model #OB24) – Elite Filter Labels

**Brita® Water Dispenser – Ultraslim (Model # Unknown), Compatible with the Standard Filter (Model #OB03) and the Elite/Longlast Filter (Model #OB06) Product Image – Front Label**

# PLACEHOLDER

Exhibit 2-31: Brita® Water Dispenser – Ultraslim (Model # Unknown) Labels

**Brita Water Pitcher-Stream – Cascade (Model #OB57) – Stream Filter (Model #OB05), Product Image – Front Label** (*see* https://us.amazon.com/Brita-60258362848-Filtered-Pitcher-Bordeaux/dp/B078KX94HB) (captured August 15, 2023)



Exhibit 2-32: Brita Water Pitcher-Stream – Cascade (Model #OB57) – Stream Filter Labels

**Brita® Water Pitcher-Stream – Hydro (Model #OB56), Stream Filter (Model #OB05), Product Image – Front Label**

# PLACEHOLDER

Exhibit 2-33: Brita® Water Pitcher-Stream – Hydro (Model #OB56) – Stream Filter Labels

**Brita® Water Pitcher-Stream – Rapids (Model #OB55) – Stream Filter (Model #OB05) Product Image – Front Label** (*see* https://www.amazon.com/Stream-Filter-Pitcher-Rapids-Carbon/dp/B07NNLHX6D) (captured August 15, 2023))



Exhibit 2-34: Brita® Water Pitcher-Stream – Rapids (Model #OB55) – Stream Filter Labels

**Brita® Water Dispenser-Stream – Ultraslim (Model # Unknown) –Stream Filter (Model #OB05) Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Ultraslim-25-Cup-Filtered-Water-Dispenser-with-1-Stream-Filter-Dark-Blue/902586299) (captured August 15, 2023))



Exhibit 2-35: Brita® Water Dispenser-Stream – Ultraslim (Model # Unknown) –Stream Filter Labels

**Brita® Replacement Filters – Standard Filter (Model #OB03) – 1 Count Product Image – Front Label** (*see* https://www.farmandfleet.com/products/221035-brita-replacement-water-filter.html?blaintm_source=bing&blaintm_medium=pla&msclkid=0a2acdbf5ce71a2bac31a9633c5e2db2&utm_source=bing&utm_medium=cpc&utm_campaign=All%20Categories%20%7C%20California%20%7C%20Shopping%20%7C%20ShipTo&utm_term=4583451684715597&utm_content=Cali (captured August 15, 2023))



Exhibit 2-36(a): Brita® Replacement Filters – Standard Filter (Model #0B03) – 1 Count Labels

**Brita® Replacement Filters – Standard Filter (Model #OB03) – 3 Count Product Image – Front Label** (*see* https://www.farmandfleet.com/products/221036-brita-replacement-water-filter.html?blaintm_source=bing&blaintm_medium=pla&msclkid=405c79aa6cf719cbe2931d7633095294&utm_source=bing&utm_medium=cpc&utm_campaign=All%20Categories%20%7C%20California%20%7C%20Shopping%20%7C%20ShipTo&utm_term=4583451684715597&utm_content=Cali) (captured August 15, 2023)



Exhibit 2-36(b): Brita® Replacement Filters – Standard Filter (Model #0B03) – 3 Count Labels

**Brita® Replacement Filters – Standard Filter (Model #OB03) – 4 Count Product Image – Front Label** (*see* https://www.bing.com/images/search?view=detailV2&ccid=NOv5j7jF&id=CE8517F812279FCC1A4E79277147881E58F137A7&thid=OIP.NOv5j7jFpAeU4ISS_wUVFQHaEa&mediaurl=https%3A%2F%2Fi5.walmartimages.ca%2Fimages%2FEnlarge%2F958%2F238%2F6000201958238.jpg&cdnurl=https%3A%2F%2Fth.bing.com%2Fth%2Fid%2FR.34ebf98fb8c5a40794e08492ff051515%3Frik%3DDpzfxWB6IR3EneQ%26pid%3DImgRaw%26r%3D0&exph=595&expw=1000&q=brita+standard+filter+refillable&simid=608023883425478965&form=IRPRST&ck=0B2846102DAE30BED1B9A202C764274D&selectedindex=36&ajaxhist=0&ajaxserp=0&vt=0&sim=11 (captured August 15, 2023))



Exhibit 2-36(c): Brita® Replacement Filters – Standard Filter (Model #0B03) – 4 Count Labels

**Brita® Replacement Filters – Standard Filter (Model #OB03) – 5 Count Product Image – Front** **Label** (*see* https://www.ebay.com/itm/266314724757?var=0&mkevt=1&mkcid=1&mkrid=711-53200-19255-0&campid=5338765313&customid=5761c37fd7cbf44ad0b2f2bdc622da9c&toolid=20006 (captured August 15, 2023))



Exhibit 2-36(c): Brita® Replacement Filters – Standard Filter (Model #0B03) – 4 Count Labels

**Brita® Replacement Filters – Elite Filter (Model #OB06) – 1 Count Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Elite-Replacement-Water-Filter-for-Pitchers-and-Dispensers-1-Pack/55134429?wl13=1700&selectedSellerId=0&http://clickserve.dartsearch.net/link/click?lid=92700060762254883&ds_s_kwgid=58700006715445296&ds_s_inventory_feed_id=97700000003583668&ds_a_cid=654818135&ds_a_caid=13956209185&ds_a_agid=126452889113&ds_a_lid=pla-1392082700544&ds_a_cid=116919406&ds_a_caid=361575031&ds_a_agid=1200667322826314&ds_a_fiid=&ds_a_lid=pla-4578641339573147&&ds_e_adid=&ds_e_matchtype=search&ds_e_device=c&ds_e_network=o&ds_e_product_group_id=4578641339573147&ds_e_product_id=55134429_0&ds_e_product_merchant_id=27449&ds_e_product_country=US&ds_e_product_language=EN&ds_e_product_channel=Local&ds_e_product_store_id=1700&ds_url_v=2&ds_dest_url=?&adid=222222222320000000000_1200667322826314_lia&wmlspartner=wmtlabs&wl0=e&wl1=o&wl2=c&wl3=75041804331059&wl4=pla-4578641339573147&wl5=&wl6=&wl7=&wl10=Walmart&wl11=Local&wl12=55134429_0&wl14=brita%20standard%20filter%20refillable&veh=sem&msclkid=12d31b54ed4813d2995e7f888c31c6a7&gclid=12d31b54ed4813d2995e7f888c31c6a7&gclsrc=3p.ds (captured August 15, 2023))



Exhibit 2-37(a): Brita® Replacement Filters – Elite Filter (Model #OB06) – 1 Count Labels

**Brita® Replacement Filters – Elite Filter (Model #OB06) – 2 Count Product Image – Front Label** (*see* https://www.walmart.com/ip/Brita-Elite-Replacement-Water-Filter-for-Pitchers-and-Dispensers-2-Pack/128876038?wl13=1700&selectedSellerId=0&http://clickserve.dartsearch.net/link/click?lid=92700060762254883&ds_s_kwgid=58700006715445296&ds_s_inventory_feed_id=97700000003583668&ds_a_cid=654818135&ds_a_caid=13956209185&ds_a_agid=126452889113&ds_a_lid=pla-1392082700544&ds_a_cid=116919406&ds_a_caid=361575031&ds_a_agid=1200667322826314&ds_a_fiid=&ds_a_lid=pla-4578641339573147&&ds_e_adid=&ds_e_matchtype=search&ds_e_device=c&ds_e_network=o&ds_e_product_group_id=4578641339573147&ds_e_product_id=128876038_0&ds_e_product_merchant_id=27449&ds_e_product_country=US&ds_e_product_language=EN&ds_e_product_channel=Local&ds_e_product_store_id=1700&ds_url_v=2&ds_dest_url=?&adid=222222222320000000000_1200667322826314_lia&wmlspartner=wmtlabs&wl0=e&wl1=o&wl2=c&wl3=75041804331059&wl4=pla-4578641339573147&wl5=&wl6=&wl7=&wl10=Walmart&wl11=Local&wl12=128876038_0&wl14=brita%20standard%20filter%20refillable&veh=sem&msclkid=911a080c50ac160f19766cd031d5c3cc&gclid=911a080c50ac160f19766cd031d5c3cc&gclsrc=3p.ds (captured August 15, 2023))



Exhibit 2-37(b): Brita® Replacement Filters – Elite Filter (Model #OB06) – 1 Count Labels

**Brita® Replacement Filters – Longlast Filter (Model #OB06) – 1 Count Product Image – Front Label** (*see* https://www.bing.com/images/search?view=detailV2&ccid=Y13v2qB9&id=2AD51EF6637E4A 7AA68E07431E45BF8A5E4D767B&thid=OIP.Y13v2qB9NXQ7xrdT1nSjQQHaHa&mediaurl= https%3A%2F%2Fimages.autods.com%2Fmanual_eBay_images%2FLonglast-Water-Filter-Cartridge-for-Water-Pitcher-BPA-Free-fc484503-aaba-4be9-b046-55660db5900a&cdnurl=https%3A%2F%2Fth.bing.com%2Fth%2Fid%2FR.635defdaa07d35743 bc6b753d674a341%3Frik%3De3ZNXoq%252fRR5DBw%26pid%3DImgRaw%26r%3D0&exp h=1000&expw=1000&q=brita+longlast+filter+refillable&simid=608034560688464810&form=I RPRST&ck=6CC35E0B42D3170162ED7DED1448AB63&selectedindex=29&ajaxhist=0&ajax serp=0&vt=0&sim=11 (captured August 15, 2023))



Exhibit 2-38(a): Brita® Replacement Filters –Longlast Filter (Model #OB06) – 1 Count Labels

**Brita® Replacement Filters – Longlast Filter (Model #OB06) – 2 Count Product Image – Front Label** (*see* https://www.bing.com/images/search?view=detailV2&ccid=D5j6iZbf&id=F3BA2BCA7A7014 D515B626C2E55728AF52B98D10&thid=OIP.D5j6iZbfQ7MoOcS9dSMDQgAAAA&mediaurl =https%3a%2f%2fcanadiantire.scene7.com%2fis%2fimage%2fCanadianTire%2f1422241_1%3f defaultImage%3dimage_na_EN%26imageSet%3dCanadianTire%2f1422241_1%3fdefaultImage %3dimage_na_EN%26id%3d_xorV0%26fmt%3djpg%26fit%3dconstrain%2c1%26wid%3d432 %26hei%3d500&cdnurl=https%3a%2f%2fth.bing.com%2fth%2fid%2fR.0f98fa8996df43b3283 9c4bd75230342%3frik%3dEI25Uq8oV%252bXCJg%26pid%3dImgRaw%26r%3d0&exph=500 &expw=432&q=brita+longlast+filter+refillable&simid=607995558093669286&FORM=IRPRS T&ck=D08B4CAA16648F06AEEA1397248B4445&selectedIndex=14&ajaxhist=0&ajaxserp=0 (captured August 15, 2023))



Exhibit 2-38(b): Brita® Replacement Filters –Longlast Filter (Model #OB06) – 2 Count Labels

**Brita® Replacement Filters – Stream Filter (Model #OB03) – 1 Count Product Image – Front Label** (*see* https://www.heb.com/product-detail/brita-stream-filter-as-you-pour-replacement-filter/2115688 (captured August 15, 2023))



Exhibit 2-39(a): Brita® Replacement Filters –Stream Filter (Model #OB03) – 1 Count Labels

**Brita® Replacement Filters – Stream Filter (Model #OB03) – 3 Count Product Image – Front Label**   (*see*   https://www.farmandfleet.com/products/1275474-brita-stream-replacement-water-filter.html?blaintm_source=bing&blaintm_medium=pla&msclkid=7471390058c910a5d4c15ddc3c72879f&utm_source=bing&utm_medium=cpc&utm_campaign=All%20Categories%20%7C%20California%20%7C%20Shopping%20%7C%20ShipTo&utm_term=4583451684712279&utm_content=Cali (captured August 15, 2023))



Exhibit 2-39(b): Brita® Replacement Filters –Stream Filter (Model #OB03) – 3 Count Labels

# Exhibit "3"

*Class Action Complaint*

Performance Chart

# Performance Chart

| Brita Filter Contaminant Reduction Performance Chart | | Standard OB03 [i] | | Stream OB05 [ii] | | Longlast/Longlast+/Elite OB06 [iii] | | HUB CT01 [iv] | Faucet Mount FR-200 [v] | | | Bottle BB10 and BB11 [vi] | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No. | Contaminant* | Average Reduction | Minimum Reduction | Average Reduction | Minimum Reduction | Longlast+ Overall Reduction [vii] | Elite Overall Reduction [viii] | Overall Reduction | Average Reduction | Minimum Reduction | Overall Reduction | Average Reduction | Minimum Reduction |
| 1. | Alachlor (NSF/ANSI 53) | | | | | | | >98% | >97.5% | >97.5% | | | |
| 2. | Arsenic (NSF/ANSI 53) | | | | | | | | | | | | |
| 3. | Asbestos (NSF/ANSI 53) | | | | | >99% | >99% | | >99% | >99% | | | |
| 4. | Atenolol (NSF/ANSI 401) | | | | | >95% [†] | >95% ^ | 96.4% | | | | | |
| 5. | Atrazine (NSF/ANSI 53) | | | | | 99.3% | 99.3% | >97% | >95% | >95% | | | |
| 6. | Benzene (NSF/ANSI 53) | | | | | 93.5% | 93.5% | >99% | >96.6% | >96.6% | | | |
| 7. | Bisphenol A (NSF/ANSI 401) | | | | | 95.5% [†] | 95.5% ^ | 94.6% | | | 99.1% | | |
| 8. | Cadmium (NSF/ANSI 53) | 93-96% | 89-91% | | | | | | | | | | |
| 9. | Cadmium pH 6.5 (NSF/ANSI 53) | | | | | 96.9% | 96.9% | | | | | | |
| 10. | Cadmium 8.5 (NSF/ANSI 53) | | | | | 99.2% | 99.2% | | | | | | |
| 11. | Carbamazepine (NSF/ANSI 401) | | | | | >96% [†] | >96% ^ | 97.5% | | | | | |
| 12. | Carbofuran (NSF/ANSI 53) | | | | | | | >99% | >98.7% | >98.7% | | | |
| 13. | Carbon Tetrachloride (NSF/ANSI 53) | | | | | 91.2% [†] | 91.2% ^ | 98% | >96.5% | >96.5% | | | |
| 14. | Chloramine (as monochloramine, measured as Cl₂L) (NSF/ANSI 42) | | | | | | | 96.7% | | | | | |
| 15. | Chlordane (NSF/ANSI 53) | | | | | | | | 98.9% | 95.2% | | | |
| 16. | Chlorine (Taste & Odor) (NSF/ANSI 42) | | | 94% | 88% | 97.4% | 97.4% | 98.7% | 97.5% | 97.4% | | 95% | 88% |
| 17. | Chlorobenzene (NSF/ANSI 53) | | | | | | | >99% | 99.9% | 99% | | | |
| 18. | Chloropicrin (VOC) (NSF/ANSI 53) | | | | | | | 99% | | 99% | | | |
| 19. | Chromium 6 (hexavalent chromium) (NSF/ANSI 53) | | | | | | | | | | | | |

# Performance Chart

| Brita Filter Contaminant Reduction Performance Chart | | Standard OB03 [i] | | Stream OB05 [ii] | | Longlast/Longlast+/Elite OB06 [iii] | | HUB CT01 [iv] | Faucet Mount FR-200 [v] | | | Bottle BB10 and BB11 [vi] | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No. | Contaminant* | Average Reduction | Minimum Reduction | Average Reduction | Minimum Reduction | Longlast+ Overall Reduction [vii] | Elite Overall Reduction [viii] | Overall Reduction | Average Reduction | Minimum Reduction | Overall Reduction | Average Reduction | Minimum Reduction |
| 20. | Copper (NSF/ANSI 53) | 86-94% | 80-91% | | | | | | | | | | |
| 21. | 2,4-D (NSF/ANSI 53) | | | | | 88.5% | 88.5% | 98% | 99.9% | 99.9% | | | |
| 22. | DEET (diethyltoluamide) (NSF/ANSI 401) | | | | | 98.0% [i] | 98.0% ^ | 96.4% | | | | | |
| 23. | Dibromochloropropane (DBCP) (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 24. | o-dichlorobenzene (NSF/ANSI 53) | | | | | | | >99% | >99.9% | >99.9% | | | |
| 25. | p-dichlorobenzene (VOC) (NSF/ANSI 53) | | | | | | | >98% | | | >98% | | |
| 26. | 1,2-dichloroethane (VOC) (NSF/ANSI 53) | | | | | | | 95% | | | 95% | | |
| 27. | 1,1-dichloroethylene (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 28. | cis-1,2-dichloroethylene (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 29. | trans-1,2- dichloroethylene (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 30. | 1,2-dichloropropane (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 31. | 1,1-dichloro-2-propanone (VOC) (NSF/ANSI 53) | | | | | | | | | | 99% | | |
| 32. | cis-1,3-dichloropropylene (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 33. | Dinoseb (VOC) (NSF/ANSI 53) | | | | | | | 99% | | | 99% | | |
| 34. | Endrin (NSF/ANSI 53) | | | | | 98.7% | 98.7% | 99% | >97% | >97% | | | |
| 35. | Estrone (NSF/ANSI 401) | | | | | 96.4% [i] | 96.4% ^ | 96.4% | | | 96.5% | | |
| 36. | Ethylbenzene (NSF/ANSI 53) | | | | | 99.0% | 99.0% | >99% | 99.9% | 99.8% | | | |
| 37. | Ethylene dibromide (EDB) (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |

# Performance Chart

| Brita Filter Contaminant Reduction Performance Chart | | Standard OB03 [i] | | Stream OB05 [ii] | | Longlast/Longlast+/Elite OB06 [iii] | | HUB CT01 [iv] | Faucet Mount FR-200 [v] | | | Bottle BB10 and BB11 [vi] | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No. | Contaminant* | Average Reduction | Minimum Reduction | Average Reduction | Minimum Reduction | Longlast+ Overall Reduction [vii] | Elite Overall Reduction [viii] | Overall Reduction | Average Reduction | Minimum Reduction | Overall Reduction | Average Reduction | Minimum Reduction |
| 38. | Haloacetonitriles (HAN): Bromochloroacetonitrile Dibromoacetonitrile Dichloroacetonitrile Trichloroacetonitrile (VOC) (NSF/ANSI 53) | | | | | | | 98% | | | 98% | | |
| 39. | Haloketones (HK): 1,1-dichloro-2-propanone 1,1,1-trichloro-2-propanone (VOC) (NSF/ANSI 53) | | | | | | | 99% 96% | | | 99% 96% | | |
| 40. | Heptachlor (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | 98% | | |
| 41. | Heptachlor epoxide (VOC) (NSF/ANSI 53) | | | | | | | 98% | | | 98% | | |
| 42. | Hexachlorobutadiene (VOC) (NSF/ANSI 53) | | | | | | | >98% | | | >98% | | |
| 43. | Hexachlorocyclopentadiene (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 44. | Ibuprofen (NSF/ANSI 401) | | | | | 94.9% [i] | 94.9% ^ | 95.5% | | | 94.9% | | |
| 45. | Lead pH 6.5 (NSF/ANSI 53) | | | | | 99.5% | 99.5% | 99.8% | >99.3% | >99.3% | | | |
| 46. | Lead pH 8.5 (NSF/ANSI 53) | | | | | 99.6% | 99.6% | 99.8% | | | | | |
| 47. | Lindane (NSF/ANSI 53) | | | | | | | >99% | >99% | >99% | | | |
| 48. | Linuron (NSF/ANSI 401) | | | | | >93% [i] | >93% ^ | 94.8% | | | | | |
| 49. | Meprobamate (NSF/ANSI 401) | | | | | >94% [i] | >94% ^ | 96.2% | | | | | |
| 50. | Mercury (NSF/ANSI 53) | 96% | 93-96% | | | | | | | | | | |
| 51. | Mercury pH 6.5 (NSF/ANSI 53) | | | | | 99.5% | 99.5% | 96.5% | | | | | |
| 52. | Mercury pH 8.5 (NSF/ANSI 53) | | | | | 99.9% | 99.9% | 96.4% | | | | | |
| 53. | Methoxychlor (NSF/ANSI 53) | | | | | | | >99% | 99.7% | 99.3% | | | |

# Performance Chart

| No. | Contaminant* | Standard OB03[i] Average Reduction | Minimum Reduction | Stream OB05[ii] Average Reduction | Minimum Reduction | Longlast+ Overall Reduction[vii] | Elite Overall Reduction[viii] | HUB CT01[iv] Overall Reduction | Faucet Mount FR-200[v] Average Reduction | Minimum Reduction | Overall Reduction | Bottle BB10 and BB11[vi] Average Reduction | Minimum Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 54. | Metolachlor (NSF/ANSI 401) | | | | | >94%[i] | >94%^ | 96.5% | | | | | |
| 55. | Microplastics, particles 0.5-1μm (NSF/ANSI 401) | | | | | | 99.6% | 99.9% | | | | | |
| 56. | Naproxen (NSF/ANSI 401) | | | | | 96.4%[i] | 96.4%^ | 95.9% | | | 96.1% | | |
| 57. | Nitrate (NSF/ANSI 53) | | | | | | | | | | | | |
| 58. | Nitrite (NSF/ANSI 53) | | | | | | | | | | | | |
| 59. | Nonyl phenol (NSF/ANSI 401) | | | | | 93.5%[i] | 93.5%^ | 91.9% | | | 96.2% | | |
| 60. | P-Dichlorobenzene (NSF/ANSI 53) | | | | | 98.2% | 98.2% | | | | | | |
| 61. | Particulate (Class I) (NSF/ANSI 42) | | | | | 99.6% | 99.6% | 99.9% | 99.7% | 99.6% | | | |
| 62. | Particulate (Class VI) (NSF/ANSI 42) | | | 99.8% | 99.8% | | | | | | | >99.9% | >99.9% |
| 63. | Pentachlorophenol (VOC) (NSF/ANSI 53) | | | | | | | >99% | | >99% | | | |
| 64. | Perfluorooctanoic Acid (PFOA) (NSF/ANSI 53) | | | | | | 98.1%^ | 95.5% | | | | | |
| 65. | Perfluorooctane Sulfonate (PFOS) (NSF/ANSI 53) | | | | | | 98.1%^ | 98.3% | | | | | |
| 66. | Phenytoin (NSF/ANSI 401) | | | | | >95%[i] | >95%^ | 96.5% | | | 95.6% | | |
| 67. | Radium (NSF/ANSI 53) | | | | | | | | | | | | |
| 68. | Simazine (NSF/ANSI 53) | | | | | 98.4% | 98.4% | >97% | 87% | 63% | | | |
| 69. | Styrene (NSF/ANSI 53) | | | | | | | >99% | >99.9% | >99.9% | | | |
| 70. | TCEP (tris(2-chloroethyl)phosphate) (NSF/ANSI 401) | | | | | 99%[i] | 99%^ | 96.3% | | | | | |
| 71. | TCPP (tris(1-chloro-2-propyl)phosphate) (NSF/ANSI 401) | | | | | >99%[i] | >99%^ | 92.2% | | | | | |
| 72. | 1,1,2,2-tetrachloroethane (VOC) (NSF/ANSI 53) | | | | | | | >99% | | >99% | | | |
| 73. | Tetrachloroethylene (NSF/ANSI 53) | | | | | 96.1% | 96.1% | >99% | 96.9% | 96.4% | | | |

# Performance Chart

| Brita Filter Contaminant Reduction Performance Chart | | Standard OB03 [i] | | Stream OB05 [ii] | | Longlast/Longlast+/Elite OB06 [iii] | | HUB CT01 [iv] | Faucet Mount FR-200 [v] | | | Bottle BB10 and BB11 [vi] | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No. | Contaminant* | Average Reduction | Minimum Reduction | Average Reduction | Minimum Reduction | Longlast+ Overall Reduction [vii] | Elite Overall Reduction [viii] | Overall Reduction | Average Reduction | Minimum Reduction | Overall Reduction | Average Reduction | Minimum Reduction |
| 74. | Toluene (NSF/ANSI 53) | | | | | | | >99% | >99.9% | >99.9% | | | |
| 75. | Toxaphene (NSF/ANSI 53) | | | | | | | | >93.6% | >93.6% | | | |
| 76. | 2,4,5-TP (silvex) (NSF/ANSI 53) | | | | | | | 99% | | | 99% | | |
| 77. | Tribromoacetic acid (VOC) (NSF/ANSI 53) | | | | | | | >98% | | | >98% | | |
| 78. | 1,2,4-Trichlorobenzene (VOC) (NSF/ANSI 53) | | | 96.4% | 92.2% | | | >99% | | | >99% | | |
| 79. | 1,1,1-trichloroethane (VOC) (NSF/ANSI 53) | | | | | | | 95% | | | 95% | | |
| 80. | 1,1,2-trichloroethane (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |
| 81. | Trichloroethylene (NSF/ANSI 53) | | | | | | | | >99.8% | >99.8% | | | |
| 82. | Trihalomethanes (THMs or TTHM): Chloroform (surrogate chemical) Bromoform Bromodichloromethane Chlorodibromomethane (NSF/ANSI 53) | | | | | | | 95% | 98.7% | 94.3% | | | |
| 83. | Trimethoprim (NSF/ANSI 401) | | | | | >96% [i] | >96% ^ | 97.1% | | | | | |
| 84. | Uranium (NSF/ANSI 53) | | | | | | | | | | | | |
| 85. | VOC (NSF/ANSI 53) | | | | | | | | 99.7% | 99.5% | | | |
| 86. | Xylenes (total) (VOC) (NSF/ANSI 53) | | | | | | | >99% | | | >99% | | |

\* Contaminants hazardous to health are listed in red font and tested according to NSF/ANSI 53.

[i] Valid for the **Brita Longlast+ Filter** (Model #OB06) for the following systems: Metro/Soho (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Amalfi (OB32), Grand Color Series (OB36), Pacifica (OB41), Capri (OB43), Mini Plus (OB44), Marina (OB47), Monterey (OB50), and Wave (OB53).

^ Valid for the **Brita Elite Filter** (Model #OB06) for the following systems: Slim/Metro (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Pacifica (OB41), Marina (OB47), Wave (OB53), Everyday/Huron/Tahoe (OB60), and Denali (OB62).

# Performance Chart

i According to Brita's Performance Data Sheet ("PDS"), WQA and NSF International tested and certified the reduction claims (as summarized here) in **Brita's Standard Filter** (Model #OB03) PDS for the following Brita water filtration pitchers and dispensers: (1) Amalfi (OB32), (2) Capri (OB43), (3) Everyday (OB46), (4) Grand (OB36), (5) Lake (OB58), (6) Marina (OB47), (7) Metro (OB11), (8) Mini Plus (OB44), (9) Mist (OB01), (10) Monterey (OB50), (11) Pacifica (OB41), (12) SoHo (OB11), (13) Space Saver (OB51), (14) Stainless Steel (OB51), (15) Ultramax (OB24), and (16) Wave (OB53). *See* BRITA, *Performance Data Sheet for Brita System Standard Filter (Model #OB03)*, available at https://www.brita.com/assets/9eba678cb04f4b1aa465f67a18372f8a.pdf (accessed Jul. 25, 2023).

ii According to Brita's PDS, WQA tested and certified the reduction claims (as summarized here) in **Brita's Steam Filter** (Model #OB05) PDS for the following Brita water filtration pitchers: (1) Cascade (OB57), (2) Hydro (OB56), and (3) Rapids (OB55). *See* BRITA, *Performance Data Sheet for Brita System Stream Filter (Model #OB05)*, available at https://www.brita.com/assets/ac2353fb91d8b9b5c8efbeaf35bac511.pdf (accessed Jul. 25, 2023).

iii It is ambiguous, but appears likely that the Longlast, Longlast+, and Elite Filters are the same exact filter, just marketed under different names. First, the landing page for Brita Performance Data Sheets provides a link to the "Brita Elite/Longlast+ Filter," even though the linked PDS does not explicitly reference the "Longlast" or "Longlast+" filters. *See* BRITA, *Performance Data Sheets*, available at https://www.brita.com/performance-data/ (accessed Jul. 25, 2023). Second, the Longlast/Longlast+ and Elite filters have the same model number: "OB06." Third, the only significant differences related to reduction claims between the Performance Data Sheets that explicitly references "Longlast+" and "Elite" are: (1) the Elite PDS includes PFOA, PFOS, and Microplastic particles (0.5-1μm), but the Longlast+ PDS does not; and (2) the names of the noted systems for which some of the contaminant reduction claims apply varies somewhat. This could merely be the result of subsequent testing or marketing efforts, and not a difference between the filters, as the Longlast+ Filter PDS appears to be dated June 2021.

iv According to Brita's PDS, IAPMO R&T tested and certified the PFOA and PFOS reduction claims, and WQA tested and certified the lead and mercury claims (as summarized here) in the PDS for **Brita's Hub Systems** (Model #'s 87340 and 87340C) and Filter (Model #CT01). *See* BRITA, *Performance Data Sheet for Brita System Hub System (Model #87340 & 87340C)*, available at https://www.brita.com/assets/44128c45b3085455e9018d93a33cbe7e.pdf (accessed 7/25/2023). Although no certification is expressly indicated, the remaining claims are summarized from the same PDS.

v According to Brita's PDS, WQA and NSF International tested and certified the reduction claims (as summarized here) in **Brita's Faucet Filtration System** (Model #SAFF-100) with Filter (Model FR-200) PDS. *See* BRITA, *Performance Data Sheet for Brita Faucet Filtration System (Model SAFF-100) with Filter (Model # FR-200)*, available at https://www.brita.com/assets/eb3f3fa3a1fff302413cc75c9066e4ff.pdf (accessed Jul. 25, 2023).

vi According to Brita's PDS, WQA tested and certified the reduction claims (as summarized here) in **Brita's Premium Filtering Water Bottle** (Model #BB10 and BB11) PDS. *See* BRITA, *Performance Data Sheet for Premium Filtering Water Bottle (Model #BB10, BB11)*, available at https://www.brita.com/assets/5bed2414275fc34b2b936962a695a2d3.pdf (accessed Jul 25. 2023).

vii The PDS for **Brita's Longlast+ Filter** (Model #OB06) does not specify which systems, pitchers, or dispensers that the WQA tested to certify the reduction claims (as summarized here) for the Longlast+ Filter, with the exception of those noted "i". *See* BRITA, *Performance Data Sheet for Brita System Longlast+ Filter (Model #OB06)*, available at https://www.brita.ca/wp-content/uploads/2021/06/Longlast_PDS_2021-06.pdf (accessed Jul. 25, 2023).

All Brita water pitcher and dispensers are compatible with the Standard Filter (OB03) and Longlast or Elite Filters (OB06), with the exception of pitchers that use the Steam Filter (OB05), such as Cascade, Hydro, and Rapids (OB55-OB57). However, not all compatible pitchers and dispensers are certified to reduce the contaminants marked with "i". Those reduction claims only apply to the following systems: Metro/Soho (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Amalfi (OB32), Grand Color Series (OB36), Pacifica (OB41), Capri (OB43), Mini Plus (OB44), Marina (OB47), Monterey (OB50), and Wave (OB53).

viii According to Brita's PDS, IAPMO R&T tested and certified the PFOA, PFOS, and Microplastics reduction claims, and WQA tested and certified the remaining reduction claims (as summarized here) in the PDS for **Brita's Elite Filter** (Model #OB06) for the following water filtration pitchers and dispensers, except as noted "^": (1) Amalfi (OB32), (2) Capri (OB43), (3) Denali (OB62), (4) Everyday (OB46), (5) Grand Color Series (OB36), (6) Huron (OB60), (7) Lake (OB58), (8) Marina (OB47), (9) Metro (OB11), (10) Mini Plus (OB44), (11) Mist (OB01), (12) Oceania (OB48), (13) Pacifica (OB41), (14) Slim (OB11), (15) Soho (OB11), (16) Space Saver (OB21), (17) Stainless Steel (OB51), (18) Tahoe (OB60), (19) Ultramax Jet Black (OB24), and (20) Wave (OB53). *See* BRITA, *Performance Data Sheet for Brita System Elite Filter (Model #OB06)*, available at https://www.brita.com/assets/23601607167498ba405a22f7692b3b86.pdf (accessed Jul. 25, 2023).

All Brita water pitcher and dispensers are compatible with the Standard Filter (OB03) and Longlast or Elite Filters (OB06), with the exception of pitchers that use the Steam Filter (OB05), such as Cascade, Hydro, and Rapids (OB55-OB57). However, not all compatible pitchers and dispensers are certified to reduce the contaminants marked with "^". Those reduction claims only apply to the following systems: Slim/Metro (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Pacifica (OB41), Marina (OB47), Wave (OB53), Everyday/Huron/Tahoe (OB60), and Denali (OB62).

# Exhibit "4"

*Class Action Complaint*

Tap Water Concentration and Safety Limits Chart

# Exhibit "5"

*Class Action Complaint*

Health Hazards Chart

| No. | Contaminant* | Standard OBOS[1] Average Reduction % | Minimum Reduction % | Stream OBOS[2] Average Reduction % | Minimum Reduction % | Longlast/Longlast+/Elite OBOS[3] Longlast+ Overall Reduction%[ab] | Elite Overall Reduction %[abc] | Contaminant Health Hazards |
|---|---|---|---|---|---|---|---|---|
| 1. | Alachlor (NSF/ANSI 53) | | | | | | | Cancer, Harm to liver, Harm to kidney, Harm to spleen [EWG, Top Water Database—Alachlor (Lasso), https://www.ewg.org/tapwater/contaminant.php?contamcode=2051 (accessed 8/14/2023)] |
| 2. | Arsenic (NSF/ANSI 53) | | | | | | | Cancer, Harm to central nervous system, Harm to the brain and nervous system, Skin damage, Change to the heart and blood vessels, Increase the risk of heart disease, stroke and diabetes [EWG, Top Water Database—Arsenic, https://www.ewg.org/tapwater/contaminant.php?contamcode=2065 (accessed 8/14/2023)] |
| 3. | Asbestos (NSF/ANSI 53) | | | | | 0.9901 | 0.9901 | Cancer [EWG, Top Water Database—Asbestos, https://www.ewg.org/tapwater/contaminant.php?contamcode=1094 (accessed 8/14/2023)] |
| 4. | Atenolol (NSF/ANSI 401) | | | | | 0.9501 | 0.9501 | |
| 5. | Atrazine (NSF/ANSI 53) | | | | | 0.9930 | 0.9930 | Harm to developing fetus, Hormone Distruption, Harm to the reproductive system, Changes in the nervous system, Changes in brain and behavior, Cancer [EWG, Top Water Database—Atrazine, https://www.ewg.org/tapwater/contaminant.php?contamcode=2050 (accessed 8/14/2023)] |
| 6. | Benzene (NSF/ANSI 53) | | | | | 0.9350 | 0.9350 | Cancer, Harm to blood cells, Harm to central nervous system, Harm to child development, Harm to the immune system [EWG, Top Water Database—Benzene, https://www.ewg.org/tapwater/contaminant.php?contamcode=2990 (accessed 8/14/2023)] |
| 7. | Bisphenol A (NSF/ANSI 401) | | | | | 0.9510 | 0.9510 | |
| 8. | Cadmium (NSF/ANSI 53) | 0.9450 | 0.9000 | | | | | Cancer, Harm to the kidney, Change in behavior [EWG, Top Water Database—Cadmium, https://www.ewg.org/tapwater/contaminant.php?contamcode=1015 (accessed 8/14/2023)] |
| 9. | Cadmium pH 6.5 (NSF/ANSI 53) | | | | | 0.9690 | 0.9690 | Cancer, Harm to the kidney, Change in behavior [EWG, Top Water Database—Cadmium, https://www.ewg.org/tapwater/contaminant.php?contamcode=1015 (accessed 8/14/2023)] |
| 10. | Cadmium 8.5 (NSF/ANSI 53) | | | | | 0.9920 | 0.9920 | Cancer, Harm to the kidney, Change in behavior [EWG, Top Water Database—Cadmium, https://www.ewg.org/tapwater/contaminant.php?contamcode=1015 (accessed 8/14/2023)] |
| 11. | Carbamazepine (NSF/ANSI 53) | | | | | 0.9601 | 0.9601 | |
| 12. | Carbofuran (NSF/ANSI 53) | | | | | | | Harm to the brain and nervous system, Harm to the reproductive system [EWG, Top Water Database—Carbofuran , https://www.ewg.org/tapwater/contaminant.php?contamcode=2046 (accessed 8/14/2023)] |
| 13. | Carbon Tetrachloride (NSF/ANSI 53) | | | | | 0.9120 | 0.9120 | Cancer, Harm to the liver, Harm to the central nervous system, Harm to the kidney, Decrease in fertility [EWG, Top Water Database—Carbon Tetrachloride, https://www.ewg.org/tapwater/contaminant.php?contamcode=2982 (accessed 8/14/2023)] |
| 14. | Chloramine (as monochloramine, measured as CL2) (NSF/ANSI 42) | | | | | | | |
| 15. | Chlordane (NSF/ANSI 53) | | | | | | | Cancer, Hormone disruption, Harm to reproduction and child development [EWG, Top Water Database—Chlordane , https://www.ewg.org/tapwater/contaminant.php?contamcode=2959 (accessed 8/14/2023)] |
| 16. | Chlorine (Taste & Odor) (NSF/ANSI 42) | | | 0.9400 | 0.8800 | 0.9740 | 0.9740 | |
| 17. | Chlorobenzene (NSF/ANSI 53) | | | | | | | Harm to the liver, Harm to kidney [EWG, Top Water Database—Monochlorobenzene (Chlorobenzene), https://www.ewg.org/tapwater/contaminant.php?contamcode=2389 (accessed 8/14/2023)] |
| 18. | Chloropicrin (VOC) (NSF/ANSI 53) | | | | | | | Harm to respiratory system, Harm to skin [CDC, Occupational Safety and Health Guideline for Chloropicrin (1995) , https://www.cdc.gov/niosh/docs/81-123/pdfs/0132-rev.pdf (accessed 8/14/2023)] |
| 19. | Chromium 6 (hexavalent chromium) (NSF/ANSI 53) | | | | | | | Cancer, Harm to the liver, Harm to the reproductive system [EWG Tap Water Database, Chromium (hexavalent) , https://www.ewg.org/tapwater/contaminant.php?contamcode=1080 (accessed 8/14/2023)] |
| 20. | Copper (NSF/ANSI 53) | 0.9000 | 0.8550 | | | | | Harm to gastrointestinal system, Harm to kidney, Harm to liver [CDC ATSDR, ToxFAQs for Copper (Apr. 27, 2022), https://wwwn.atsdr.cdc.gov/toxfaqs/tfacts132.pdf (accessed 8/14/2023)] |
| 21. | 2,4-D (NSF/ANSI 53) | | | | | 0.8850 | 0.8850 | Hormone disruption, Harm to the kidney, Harm to the thyroid, Harm to the brain and nervous system, Change to immune function [EWG Tap Water Database, 2,4-D, https://www.ewg.org/tapwater/contaminant.php?contamcode=2105 (accessed 8/14/2023)] |
| 22. | DEET (diethyltoluamide) (NSF/ANSI 401) | | | | | 0.9800 | 0.9800 | |
| 23. | Dibromochloropropane (DBCP) (VOC) (NSF/ANSI 53) | | | | | | | Testicular cancer, Harm to the male reproductive system, Infertility [EWG, Top Water Database—Dibromochloropropane, https://www.ewg.org/tapwater/contaminant.php?contamcode=2931 (accessed 8/14/2023)] |
| 24. | o-dichlorobenzene (NSF/ANSI 53) | | | | | | | Cancer, Harm to the central nervous system [EWG, Top Water Database—o-dichlorobenzene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2968 (accessed 8/14/2023)] |
| 25. | p-dichlorobenzene (VOC) (NSF/ANSI 53) | | | | | | | Cancer, Harm to the liver, Harm to the kidney, Harm to the thyroid [EWG, Top Water Database—p-dichlorobenzene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2969 (accessed 8/14/2023)] |
| 26. | 1,2-dichloroethane (VOC) (NSF/ANSI 53) | | | | | | | Cancer, Harm to the immune system, Harm to the stomach and intestines, Harm to the liver, Harm to the kidney, Harm to the brain and nervous system [EWG, Top Water Database—1,2-dichloroethane , https://www.ewg.org/tapwater/contaminant.php?contamcode=2980 (accessed 8/14/2023)] |
| 27. | 1,1-dichloroethylene (VOC) (NSF/ANSI 53) | | | | | | | Harm to the central nervous system, Change in body weight, Change the liver [EWG, Top Water Database—1,1-dichloroethylene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2977 (accessed 8/14/2023)] |
| 28. | cis-1,2-dichloroethylene (VOC) (NSF/ANSI 53) | | | | | | | Harm to the brain and nervous system, Harm to the kidney, Harm to the liver [EWG, Top Water Database—cis-1,2-dichloroethylene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2380 (accessed 8/14/2023)] |
| 29. | trans-1,2- dichloroethylene (VOC) (NSF/ANSI 53) | | | | | | | Harm to the brain and nervous system, Harm to the liver, Harm to the immune system [EWG, Top Water Database—trans-1,2-dichloroethylene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2979 (accessed 8/14/2023)] |
| 30. | 1,2-dichloropropane (VOC) (NSF/ANSI 53) | | | | | | | Liver cancer, Harm to the liver, Harm to the kidney, Change to blood cells [EWG, Top Water Database—1,2-dichloropropane , https://www.ewg.org/tapwater/contaminant.php?contamcode=2983 (accessed 8/14/2023)] |
| 31. | 1,3-dichloro-2-propanone (VOC) (NSF/ANSI 53) | | | | | | | Acute toxicity, Harm to skin, Harm to eyes [PubChem, 1,3-Dichloroacetone, at §§ 10.1.1 GHS Classification (accessed 8/14/2023) , https://pubchem.ncbi.nlm.nih.gov/compound/1,3-Dichloroacetone, at §§ 10.1.1 GHS Classification (accessed 8/14/2023)] |
| 32. | 1,1-dichloropropylene (VOC) (NSF/ANSI 53) | | | | | | | Cancer [EWG, Top Water Database—cis-1,3-Dichloropropene (aka trans-1,3-dichloropropene) , https://www.ewg.org/tapwater/contaminant.php?contamcode=2228 (accessed 8/14/2023)] |
| 33. | Dinoseb (VOC) (NSF/ANSI 53) | | | | | | | Harm to reproduction and child development, Change to fetal growth and development [EWG, Top Water Database—Dinoseb , https://www.ewg.org/tapwater/contaminant.php?contamcode=2043 (accessed 8/14/2023)] |
| 34. | Endrin (NSF/ANSI 53) | | | | | 0.9870 | 0.9870 | Cancer, Change of the central nervous system, Harm to the immune system, Harm to the reproductive system [EWG, Top Water Database—Endrin , https://www.ewg.org/tapwater/contaminant.php?contamcode=2005 (accessed 8/14/2023)] |
| 35. | Estrone (NSF/ANSI 401) | | | | | 0.9640 | 0.9640 | |
| 36. | Ethylbenzene (NSF/ANSI 53) | | | | | 0.9900 | 0.9900 | Harm to the lungs, Harm to the liver, Harm to the kidney, Change of the central nervous system [EWG, Top Water Database—Ethylbenzene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2992 (accessed 8/14/2023)] |
| 37. | Ethylene dibromide (EDB) (VOC) (NSF/ANSI 53) | | | | | | | Cancer, Harm to the reproductive system, Change to fetal growth and development [EWG, Top Water Database—Ethylene dibromide , https://www.ewg.org/tapwater/contaminant.php?contamcode=2946 (accessed 8/14/2023)] |
| 38 | Haloacetonitriles (HAN): Bromochloroacetonitrile Dibromoacetonitrile Dichloroacetonitrile Trichloroacetonitrile (VOC) (NSF/ANSI 53) | | | | | | | The group of nine haloacetic acids includes monochloroacetic acid, trichloroacetic acid, monobromoacetic acid and dibromoacetic acid, which are regulated as a group by the federal government (HAA5); and bromochloroacetic acid, chlorodibromoacetic acid, and tribomoacetic acid. EWG, Top Water Database – Haloacetic acids (HAA9), https://www.ewg.org/tapwater/contaminant.php?contamcode=E433# (accessed 8/14/2023). They are harmful during pregnancy and may increase risk of cancer (multiple studies by the Nat'l Tox. Prog. have demonstrated cancer-causing properties of individual haloacetic acids in lab animals). Id. They are genotoxic (induce mutations and DNA damage). Id. |
| 39 | Haloketones (HK): 1,3-dichloro-2-propanone / 1,1,1-trichloro-2,3-propanone (VOC) (NSF/ANSI 53) | | | | | | | See , supra , 1,1-dichloro-2-propanone. / Harm to skin, Harm to eyes [PubChem, 1,1,1-Trichloroacetone (aka 1,1,1-trichloro-2-propanone) , https://pubchem.ncbi.nlm.nih.gov/compound/13514, at §§ 10.1.1 GHS Classification (accessed 8/14/2023)] |
| 40. | Heptachlor (VOC) (NSF/ANSI 53) | | | | | | | Cancer, Hormone disruption, Harm to the brain and nervous system [EWG, Top Water Database—Heptachlor , https://www.ewg.org/tapwater/contaminant.php?contamcode=2065 (accessed 8/14/2023)] |
| 41. | Heptachlor epoxide (VOC) (NSF/ANSI 53) | | | | | | | Cancer, Hormone disruption, Harm to liver [EWG, Top Water Database—Heptachlor epoxide , https://www.ewg.org/tapwater/contaminant.php?contamcode=2067 (accessed 8/14/2023)] |
| 42. | Hexachlorobutadiene (VOC) (NSF/ANSI 53) | | | | | | | Cancer [EWG, Top Water Database—Hexachlorobutadiene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2246 (accessed 8/14/2023)] |
| 43. | Hexachlorocyclopentadiene (VOC) (NSF/ANSI 53) | | | | | | | Harm to the stomach and intestines, Change to the liver, Change to the kidney, Irritation of lungs [EWG, Top Water Database—Hexachlorocyclopentadiene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2042 (accessed 8/14/2023)] |
| 44. | Ibuprofen (NSF/ANSI 53) | | | | | 0.9490 | 0.9490 | |
| 45. | Lead pH 6.5 (NSF/ANSI 53) | | | | | 0.9950 | 0.9950 | Brain damage and resultant neurological and behavioral effects, Kidney damage, Harm to hemoglobin production, Harm to endocrine system, Harm to gastrointestinal system, Harm to cardiovascular system, Harm to reproductive system, Developmental damage, etc. [CDC, Lead Toxicity—What Are Possible Health Effects from Lead Exposure? , https://www.atsdr.cdc.gov/csem/leadtoxicity/physiological_effects.html#anchor_1589479814 (accessed 8/14/2023)] |
| 46. | Lead pH 8.5 (NSF/ANSI 53) | | | | | 0.9960 | 0.9960 | See , supra , Lead pH 6.5 |
| 47. | Lindane (NSF/ANSI 53) | | | | | | | Cancer, Harm to the brain and central nervous system, Harm to the immune system [EWG, Top Water Database—Lindane , ... |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Linuron (NSF/ANSI 53) | | | | | https://www.ewg.org/tapwater/contaminant.php?contamcode=2010 (accessed 8/14/2023) |
| 49. | Meprobamate (NSF/ANSI 401) | | | 0.9301 | 0.9301 | |
| 50. | Mercury (NSF/ANSI 53) | 0.9600 | 0.9450 | | | Harm to the brain and nervous system, Harm to fetal growth and child development, Harm to the kidney, Harm to the immune system (EWG, Tap Water Database—Mercury (inorganic), https://www.ewg.org/tapwater/contaminant.php?contamcode=1035 (accessed 8/14/2023)) |
| 51. | Mercury pH 6.5 (NSF/ANSI 53) | | 0.9950 | | | See , supra, Mercury |
| 52. | Mercury pH 8.5 (NSF/ANSI 53) | | 0.9990 | 0.9990 | | See , supra, Mercury |
| 53. | Methoxychlor (NSF/ANSI 53) | | | | | Hormone disruption, Harm to the reproductive system, Harm to the kidney, Harm to the liver, Harm to the immune system, Harm to the brain and nervous system (EWG, Tap Water Database—Methoxychlor , https://www.ewg.org/tapwater/contaminant.php?contamcode=2015 (accessed 8/14/2023)) |
| 54. | Metolachlor (NSF/ANSI 401) | | | 0.9401 | 0.9401 | |
| 55. | Microplastics, particles 0.5-1μm (NSF/ANSI 401) | | | | 0.9960 | |
| 56. | Naproxen (NSF/ANSI 401) | | | 0.9640 | 0.9640 | |
| 57. | Nitrate (NSF/ANSI 53) | | | | | Cancer, Harm to fetal growth and child development (EWG, Tap Water Database—Nitrate , https://www.ewg.org/tapwater/contaminant.php?contamcode=1040 (accessed 8/14/2023)) |
| 58. | Nitrite (NSF/ANSI 53) | | | | | Cancer, Harm to child development (EWG, Tap Water Database—Nitrite , https://www.ewg.org/tapwater/contaminant.php?contamcode=1041 (accessed 8/14/2023)) |
| 59. | Nonyl phenol (NSF/ANSI 401) | | | 0.9350 | 0.9350 | |
| 60. | P-Dichlorobenzene (NSF/ANSI 53) | | | 0.9820 | 0.9820 | Cancer, Harm to the liver, Harm to the kidney, Harm to the thyroid (EWG, Tap Water Database—P-Dichlorobenzene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2969 (accessed 8/14/2023)) |
| 61. | Particulate (Class I) (NSF/ANSI 42) | | | 0.9960 | 0.9960 | |
| 62. | Particulate (Class VI) (NSF/ANSI 42) | 0.9980 | 0.9980 | | | |
| 63. | Pentachlorophenol (VOC) (NSF/ANSI 53) | | | | | Cancer, Harm to child development, Harm to the immune system, Hormone disruption (EWG, Tap Water Database—Pentachlorophenol , https://www.ewg.org/tapwater/contaminant.php?contamcode=2336 (accessed 8/14/2023)) |
| 64. | Perfluorooctanoic Acid (PFOA) (NSF/ANSI 53) | | | 0.9810 | | Cancer, Harm to the immune system, Hormone disruption, Harm to fetal growth and child development, Harm to the liver (EWG, Tap Water Database—Perfluorooctanoic Acid , https://www.ewg.org/tapwater/contaminant.php?contamcode=E207 (accessed 8/14/2023)) |
| 65. | Perfluoroctane Sulfonate (PFOS) (NSF/ANSI 53) | | | 0.9810 | | Cancer, Harm to the liver, Harm to the immune system, Hormone disruption, Harm to fetal growth and child development, Harm to the kidney (EWG, Tap Water Database—Perfluorooctane Sulfonate , https://www.ewg.org/tapwater/contaminant.php?contamcode=E206 (accessed 8/14/2023)) |
| 66. | Phenytoin (NSF/ANSI 401) | | | 0.9501 | 0.9501 | |
| 67. | Radium (NSF/ANSI 53) | | | | | Cancer (EWG, Tap Water Database—Radium, combined (-226 & -228) , https://www.ewg.org/tapwater/contaminant.php?contamcode=1725 (accessed 8/14/2023)) |
| 68. | Simazine (NSF/ANSI 53) | | | 0.9840 | 0.9840 | Harm to developing fetus, Hormone disruption, Harm to the reproductive system, Changes in the nervous system, Changes in brain and behavior, Cancer (EWG, Tap Water Database—Simazine , https://www.ewg.org/tapwater/contaminant.php?contamcode=2037 (accessed 8/14/2023)) |
| 69. | Styrene (NSF/ANSI 53) | | | | | Cancer, Harm to the liver, Harm to the brain and nervous system (EWG, Tap Water Database—Styrene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2996 (accessed 8/14/2023)) |
| 70. | TCEP (tris(2-chloroethyl)phosphate) (NSF/ANSI 401) | | | 0.9900 | 0.9900 | |
| 71. | TCPP (tris(1-chloro-2-propyl)phosphate) (NSF/ANSI 401) | | | 0.9901 | 0.9901 | |
| 72. | 1,1,2,2-tetrachloroethane (VOC) (NSF/ANSI 53) | | | | | Cancer, Harm to the liver, Change to the central nervous system, Change to the stomach and intestines (EWG, Tap Water Database—1,1,2,2-tetrachloroethane , https://www.ewg.org/tapwater/contaminant.php?contamcode=2988 (accessed 8/14/2023)) |
| 73. | Tetrachloroethylene (NSF/ANSI 53) | | | 0.9610 | 0.9610 | Lung cancer, Breast cancer, Colon cancer, Harm to the liver, Harm to the central nervous system (EWG, Tap Water Database—Tetrachloroethylene (perchloroethylene), https://www.ewg.org/tapwater/contaminant.php?contamcode=2987 (accessed 8/14/2023)) |
| 74. | Toluene (NSF/ANSI 53) | | | | | Harm to the brain and nervous system, Harm to the liver, Harm to the immune system, Harm to the reproductive system, Harm to fetal growth and development (EWG, Tap Water Database—Toluene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2991 (accessed 8/14/2023)) |
| 75. | Toxaphene (NSF/ANSI 53) | | | | | Cancer, Harm to the liver, Harm to the kidney, Hormone disruption (EWG, Tap Water Database—Toxaphene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2020 (accessed 8/14/2023)) |
| 76. | 2,4,5-TP (silvex) (NSF/ANSI 53) | | | | | Cancer, Harm to liver (EWG, Tap Water Database—2,4,5-TP (Silvex) , https://www.ewg.org/tapwater/contaminant.php?contamcode=2110 (accessed 8/14/2023)) |
| 77. | Tribromoacetic acid (VOC) (NSF/ANSI 53) | | | | | Change to fetal growth and development (EWG, Tap Water Database—Tribromoacetic acid , https://www.ewg.org/tapwater/contaminant.php?contamcode=2378 (accessed 8/14/2023)) |
| 78. | 1,2,4-Trichlorobenzene (VOC) (NSF/ANSI 53) | 0.9640 | 0.9220 | | | Harm to the adrenal gland, Cancer (EWG, Tap Water Database—1,2,4-Trichlorobenzene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2953 (accessed 8/14/2023)) |
| 79. | 1,1,1-trichloroethane (VOC) (NSF/ANSI 53) | | | | | Harm to brain and nervous system (EWG, Tap Water Database—1,1,1-Trichloroethane, https://www.ewg.org/tapwater/contaminant.php?contamcode=2981 (accessed 8/14/2023)) |
| 80. | 1,1,2-trichloroethane (VOC) (NSF/ANSI 53) | | | | | Liver cancer, Harm to the kidney, Change to the central nervous system (EWG, Tap Water Database—1,1,2-Trichloroethane , https://www.ewg.org/tapwater/contaminant.php?contamcode=2985 (accessed 8/14/2023)) |
| 81. | Trichloroethylene (NSF/ANSI 53) | | | | | Harm to developing fetus, Harm to the immune system, Harm to the brain and nervous system, Hormone disruption, Harm to the reproductive system (EWG, Tap Water Database—Trichloroethylene , https://www.ewg.org/tapwater/contaminant.php?contamcode=2988 (accessed 8/14/2023)) |
| 82. | Trihalomethanes (THMs or TTHM): | | | | | Bladder cancer, Skin cancer, Harm to fetal growth and development (EWG, Tap Water Database—Trihalomethanes (TTHMs) , https://www.ewg.org/tapwater/contaminant.php?contamcode=2950 (accessed 8/14/2023)) |
| | Chloroform (surrogate chemical) | | | | | Cancer, Harm to fetal growth and development (EWG, Tap Water Database—Chloroform , https://www.ewg.org/tapwater/contaminant.php?contamcode=2941 (accessed 8/14/2023)) |
| | Bromoform | | | | | Cancer, Harm to fetal growth and child development, Change to fetal growth and development (EWG, Tap Water Database—Bromoform , https://www.ewg.org/tapwater/contaminant.php?contamcode=2942 (accessed 8/14/2023)) |
| | Bromodichloromethane | | | | | Cancer, Harm to reproduction and child development, Change to fetal growth and development (EWG, Tap Water Database—Bromodichloromethane , https://www.ewg.org/tapwater/contaminant.php?contamcode=2945 (accessed 8/14/2023)) |
| | Chlorodibromomethane | | | | | Cancer, Harm to fetal growth and development (EWG, Tap Water Database—Chlorodibromomethane , https://www.ewg.org/tapwater/contaminant.php?contamcode=2944 (accessed 8/14/2023)) |
| 83. | Trimethoprim (NSF/ANSI 401) | | | 0.9601 | 0.9601 | |
| 84. | Uranium (NSF/ANSI 53) | | | | | Cancer, Harm to the kidney (EWG, Tap Water Database—Uranium , https://www.ewg.org/tapwater/contaminant.php?contamcode=4006 (accessed 8/14/2023)) |
| 85. | VOC (NSF/ANSI 53) | | | | | Volatile organic compounds (VOCs) are contaminants that can move from water into air and enter the body through skin. EWG, Cancer-causing volatile organic compounds (Oct. 2019), https://www.ewg.org/tapwater/reviewed-vocs.php (accessed 8/14/2023). They include, but are not limited to, 23 different types for which the Federal Government has set legal limits. Id. VOCs may include hundreds of chemicals. Id. Most welcome are those that harm the developing fetus or increase th risk of cancer. Id. Twelve carcinogenic VOCs that the EWG identified in tap water are: Benzene (leukemia and lymphoma), Carbon tetrachloride (non-Hodgkin lymphoma), 1,2-Dichloroethane, Dichloromethane (methylene chloride), 1,2-Dichloropropane, 1,4-Dioxane, Styrene, Tetrachloroethylene (PCE or PERC) (bladder cancer), 1,1,2-Trichloroethane, Trichloroethylene (TCE) (liver kidney and blood cancer), 1,2,3-Trichloropropane, and Vinyl chloride. Id. In addition, some VOCs, like Toluene, Ethylbenzene, and Xylene, are toxic to the liver, kidney, and nervous system. Toluene also harms the hormone system. Id. |
| 86. | Xylenes (total) (VOC) (NSF/ANSI 53) | | | | | Cancer, Harm to the brain and nervous system, Change to the central nervous system, Harm to fetal growth and development (EWG, Tap Water Database—Xylenes (total) , https://www.ewg.org/tapwater/contaminant.php?contamcode=2955 (accessed 8/14/2023)) |

Brita Water Treatment Devices—Summary of Contaminant Reduction Claims in Performance Data Sheets (downloaded on July 25, 2023, from https://www.brita.com/performance-data/)

Last Revised August 14, 2023

**Note:** Contaminant reduction rates reported as greater than a certain percentage (e.g., ">99%") were adjusted up by 1/100 (e.g., ["99.01%"). Rates reported as a range of percentages (e.g., "93-96%) were adjusted to the midpoint (e.g., "94.50%"). All percentages were converted to their numerical value (e.g., "99.01%" = "0.9901").

**References:**

* Contaminants hazardous to health are listed in red font and tested according to NSF/ANSI 53.

† Valid for the **Brita Longlast+ Filter** (Model #0806) for the following systems: Metro/Soho (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Amalfi (OB31), Grand Color Series (OB36), Pacifica (OB41), Capri (OB43), Mini Plus (OB44), Marina (OB47), Monterey (OB50), and Wave (OB53).

‡ Valid for the **Brita Elite Filter** (Model #0806) for the following systems: Slim/Metro (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Pacifica (OB41), Marina (OB47), Wave (OB53), Everyday/Huron/Tahoe (OB60), and Denali (OB62).

§ According to Brita's Performance Data Sheet ("PDS"), WQA and NSF International tested and certified the reduction claims (as summarized here) in **Brita's Standard Filter** (Model #0601) PDS for the following Brita water filtration pitchers and dispensers: (1) Amalfi (OB31), (2) Capri (OB43), (3) Everyday (OB46), (4) Grand (OB36), (5) Marina (OB47), (7) Metro (OB11), (8) Mini Plus (OB44), (9) Mini (OB01), (10) Monterey (OB50), (11) Pacifica (OB41), (12) Soho (OB11), (13) Space Saver (OB21), (14) Stainless Steel (OB51), (15) Ultramax (OB24), and (16) Wave (OB53). See Brita, Performance Data Sheet for Brita System Standard Filter (Model #0601), available at https://www.brita.com/assets/9eba978cb04f4b1aa4b5fb7cd3372f8a.pdf (accessed Jul. 25, 2023).

¶ According to Brita's PDS, WQA tested and certified the reduction claims (as summarized here) in **Brita's Steam Filter** (Model #0605) PDS for the following Brita water filtration pitchers: (1) Cascade (OB57), (2) Hydro (OB04), and (3) Rapids (OB55). See Brita, Performance Data Sheet for Brita System Stream Filter (Model #0605), available at https://www.brita.com/assets/ac2310f691d8b9b0c8ef8eaf35be511.pdf (accessed Jul. 25, 2023).

[20] It is ambiguous, but appears likely that the LongJet, LongJet+, and Elite Filters are the same exact filter, just marketed under different names. First, the landing page for Brita Performance Data Sheets provides a link to the "Brita Elite/LongJet+ Filter," even though the linked PDS does not explicitly reference the "LongJet" or "LongJet+" filters. *See Brita, Performance Data Sheets* , available at https://www.brita.com/performance-data/ (accessed Jul. 25, 2023). Second, the LongJet/LongJet+ and Elite Filters have the same model number: "OB06." Third, the only significant differences related to reduction claims between the Performance Data Sheets that explicitly references "LongJet+" and "Elite" are: (1) the Elite PDS includes PFOA, PFOS, and Microplastic particles (0.5-1µm), but the LongJet+ PDS does not; and (2) the names of the noted systems for which some of the contaminant reduction claims apply varies somewhat. This could merely be the result of subsequent testing or marketing efforts, and not a difference between the filters, as the LongJet+ Filter PDS appears to be dated June 2021.

[21] According to Brita's PDS, IAPMO R&T tested and certified the PFOA and PFOS reduction claims, and WQA tested and certified the lead and mercury claims (as summarized here) in the POS for **Brita's Hub Systems** (Model #'s 87340 and 87340C) and Filter (Model #CF01). *See Brita, Performance Data Sheet for Brita System Hub System (Model #87340 & 87340C)* , available at https://www.brita.com/assets/4412bc43b308045e9018df01a10cbe7e.pdf (accessed 7/25/2023). Although no certification is expressly indicated, the remaining claims are summarized from the same POS.

[22] According to Brita's PDS, WQA and NSF International tested and certified the reduction claims (as summarized here) in **Brita's Faucet Filtration System** (Model #SAFF-100) with Filter (Model FR-200) PDS. *See Brita, Performance Data Sheet for Brita Faucet Filtration System (Model SAFF-100) with Filter (Model # FR-200)* , available at https://www.brita.com/assets/eb3f3fa3a1fff30241bcc75c900de4ff.pdf (accessed Jul. 25, 2023).

[23] According to Brita's PDS, WQA tested and certified the reduction claims (as summarized here) in **Brita's Premium Filtering Water Bottle** (Model #BB10 and BB11) PDS. *See Brita, Performance Data Sheet for Premium Filtering Water Bottle (Model #BB10, BB11)* , available at https://www.brita.com/assets/58ed241427f7c34b2bf3b962ad95a2d3.pdf (accessed Jul 25, 2023).

[24] The POS for **Brita's LongJet+ Filter** (Model #OB06) does not specify which systems, pitchers, or dispensers that the WQA tested to certify the reduction claims (as summarized here) for the LongJet+ Filter, with the exception of those noted "Y". See BRITA, Performance Data Sheet for Brita System LongJet+ Filter (Model #OB06), available at https://www.brita.co/wp-content/uploads/2021/06/LongJet_PDS_2021-06.pdf (accessed Jul. 25, 2023).

All Brita water pitcher and dispensers are compatible with the Standard Filter (OB03) and LongJet or Elite Filters (OB06), with the exception of pitchers that use the Steam Filter (OB05), such as Cascade, Hydro, and Rapids (OB53-OB57). However, not all compatible pitchers and dispensers are certified to reduce the contaminants marked with "Y". Those reduction claims only apply to the following systems: Metro/Soho (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Amalfi (OB32), Grand Color Series (OB36), Pacifica (OB41), Capri (OB43), Mini Plus (OB44), Marina (OB47), Monterey (OB50), and Wave (OB53).

[25] According to Brita's POS, IAPMO R&T tested and certified the PFOA, PFOS, and Microplastics reduction claims, and WQA tested and certified the remaining claims (as summarized here) in the POS for **Brita's Elite Filter** (Model #OB06) for the following water filtration pitchers and dispensers, except as noted "*": (1) Amalfi (OB32), (2) Capri (OB43), (3) Denali (OB62), (4) Everyday (OB44), (5) Grand Color Series (OB36), (6) Huron (OB40), (7) Lake (OB58), (8) Marina (OB47), (9) Metro (OB11), (10) Mini Plus (OB44), (11) Mist (OB01), (12) Oceania (OB48), (13) Pacifica (OB41), (14) Slim (OB11), (15) Space Saver (OB21), (17) Stainless Steel (OB51), (18) Tahoe (OB60), (19) Ultramax Jet Black (OB24), and (20) Wave (OB53). See BRITA, Performance Data Sheet for Brita Elite Filter (Model #OB06), available at https://www.brita.com/assets/23601007167498a405a32f7b92b3b8b.pdf (accessed Jul. 25, 2023).

All Brita water pitcher and dispensers are compatible with the Standard Filter (OB03) and LongJet or Elite Filters (OB06), with the exception of pitchers that use the Steam Filter (OB05), such as Cascade, Hydro, and Rapids (OB53-OB57). However, not all compatible pitchers and dispensers are certified to reduce the contaminants marked with "*". Those reduction claims only apply to the following systems: Slim/Metro (OB11), Ultramax Jet Black (OB24), Space Saver (OB21), Pacifica (OB41), Marina (OB47), Wave (OB53), Everyday/Huron/Tahoe (OB60), and Denali (OB62).

# Exhibit "6"

*Class Action Complaint*

Pre-lit Demand Letter



**CLARKSON**
LAW FIRM

Experience. Integrity. Justice.

Lauren E. Anderson, Esq.
Associate Attorney

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
(213) 788-4050 (Main)
(213) 788-4070 (Fax)
www.clarksonlawfirm.com
landerson@clarksonlawfirm.com

June 15, 2022

**VIA U.S. CERTIFIED MAIL RETURN RECEIPT REQUESTED**

The Brita Products Company          C T Corporation System
Attn: Eric Reynolds, CEO            Re: The Brita Products Company
1221 Broadway St.                   330 N Brand Blvd., Suite 700
Oakland, CA 94612                   Glendale, CA 91203

     Re:    Brita Water Filter California Litigation

To Whom It May Concern:

     On behalf of Nicholas Brown ("Plaintiff") and all others similarly situated,[1] this letter is to notify The Brita Products Company ("Defendant") that it has violated the California Consumers Legal Remedies Act ("CLRA") by employing or committing methods, acts, or practices declared unlawful by California Civil Code Section 1770. Pursuant to California Civil Code Section 1782(a), after thirty (30) days from the date of this notice, Plaintiff intends to initiate an action against Defendant in a U.S. District Court or a California Superior Court for injunctive relief, restitution, and damages. *See* Cal. Civ. Code § 1782(a)-(b). Further, this letter establishes a limited time period during which informal settlement of Plaintiff and the Plaintiff Class's claims may be accomplished. *Outboard Marine Corp. v. Sup. Ct.*, 52 Cal. App. 3d 30, 41 (1975).

     The unlawful acts committed by Defendant, in violation of the CLRA, include deceptive labeling and advertising of all Brita Water Filter products manufactured or sold by Defendant, including but not limited to, Brita Everyday Water Pitcher with Longlast+ Filter, Brita Grand Water Pitcher, Brita Cascade Stream Water Pitcher, Brita Lake Water Pitcher, Brita Metro Pitcher with Longlast+ Filter, Brita Metro Water Pitcher, Brita Monterey Water Pitcher with Longlast+ Filter, Brita Pacifica Water Pitcher, Brita Rapids Stream Water Pitcher, Brita SoHo Water Pitcher with Standard Filter, Brita SoHo Water Pitcher with Longlast+ Filter, Brita Space Saver Water Pitcher, Brita Tahoe Pitcher with Elite Filter, Brita Tahoe Pitcher with Standard Filter, Brita Wave Water Pitcher, Brita Ultramax Water Dispenser with Elite Filter, Ultramax

---

[1] Plaintiff serves this notice on behalf of all persons who purchased the Products for personal use and not for resale in California (the "Plaintiff Class") within the last four (4) years or since the date of Product launch, which is shorter (the "Class Period").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

157

June 15, 2022
Page 2 of 9

Water Dispenser with Standard Filter, Brita Ultraslim Stream Water Dispenser (the "Products"[2]) by falsely representing the Products as effective water filters and materially omitting that Defendant's "water filtration systems" fail to filter some of the highest-risk contaminants from consumers' tap water, such as, and in various combinations, arsenic, lead, total trihalomethanes (TTHMs), polyfluoroalkyl and perfluoroalkyl substances (PFAs), chromium-6 (hexavalent chromium), organic chemicals such as atrazine, trichloroethylene, and tetrachloroethylene, and nitrates and nitrites.[3,4,5,6,7] Accordingly, Defendant makes false, deceptive, and misleading claims and promises, as well as material omissions, to consumers about the Products in a pervasive, statewide, and nationwide advertising scheme.

---

[2] Plaintiff reserves the right to broaden his class definition to include, and hereby puts Defendant on notice of, similar violations with respect to other similar products within Defendant's product lines. This includes, by way of example and without limitation, Defendant's Faucet Filter product. California state and federal courts have ruled that standing to pursue claims involving "substantially similar" products exists in circumstances such as these, i.e., similarity in products, claims, and injury to consumers. *Prescott v. Bayer HealthCare LLC*, 2020 WL 4430958 (N.D. Cal. 2020) (purchaser of mineral-based sunscreen lotion had standing to pursue claims related to unpurchased mineral-based sunscreen varieties because "the essence of each label is the same"); *Maisel v. S.C. Johnson & Son, Inc*., 2021 WL 1788397 (N.D. Cal. 2021) (finding "substantial similarity even among diverse products" between purchased Ecover Dishwasher Tablets and 13 other cleaning products not purchased); *Bush v. Rust-Oleum Corporation*, 2021 WL 24842 (N.D. Cal. 2021) (finding standing to allege claims against two Rust-Oleum purchased products and twelve other Rust-Oleum unpurchased products because the front-label representations about their eco-friendly properties were substantially similar); *Baum v. J-B Weld Company*, LLC, 2019 WL 6841231 (N.D. Cal. 2019) (purchaser of epoxy products permitted to pursue claims involving other unpurchased epoxy products because of identical label misrepresentations, similarity in kind, and use of the same components that render the challenged label representation false); *Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) (finding standing for purchaser of chocolate almond milk to pursue claims related to unpurchased products of flavored almonds, 16 other varieties of almond milk, and nut chips); *Colucci v. ZonePerfect Nutrition Co*., 2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012) ("more than enough similarity" between purchased nutrition bar and 19 others not purchased); *Astiana v. Dreyer's Grand Ice Cream, Inc*., 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) (purchaser of ice cream permitted to pursue claims involving unpurchased ice cream because "Plaintiffs are challenging the same basic mislabeling practice across different product flavors"); *Koh v. S.C. Johnson & Son, Inc*., 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 6, 2010) (allowing plaintiff to sue for purchased product (Shout) and unpurchased product (Windex) because the challenged representation on the labels was the same on both products; also recognizing that "there is no bright line rule that different product lines cannot be covered by a single class.").

[3] *Drinking Water Contaminants - US EPA*. https://www.epa.gov/sites/default/files/2015-10/documents/ace3_drinking_water.pdf.

[4] "Department of Labor Logo United States department of Labor." *Hexavalent Chromium - Overview | Occupational Safety and Health Administration*, https://www.osha.gov/hexavalent-chromium.

[5] National Center for Biotechnology Information. "PubChem Compound Summary for CID 6359, Bromodichloromethane" *PubChem*, https://pubchem.ncbi.nlm.nih.gov/compound/Bromodichloro methane (Last visited June 14, 2022).

[6] *Glossary: Dibromochloromethane*, https://www.greenfacts.org/glossary/def/dibromochloromethane.htm.

[7] *EPA*, Environmental Protection Agency, https://www.epa.gov/pfas/pfas-explained.

June 15, 2022
Page 3 of 9

Defendant's actions violate Sections 1770(a)(5), (a)(7), and (a)(9) of the CLRA. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the proposed Plaintiff Class purchased the Products, which they otherwise would not have purchased but for Defendant's fraudulent representations, and are therefore entitled to restitution in an amount to be determined at trial.

What follows is a recitation of: (1) Defendant's false, misleading, and/or deceptive labeling and advertising; (2) the basis for Plaintiff's claims; and (3) Plaintiff's demand for relief.

## I.    DEFENDANT'S FALSE AND MISLEADING REPRESENTATIONS

Defendant deceptively labels the Products as effective tap water filtration systems but fails to notify consumers that the Products do not filter many high-risk chemicals of concern. Below is a true and correct image of one variety of the Products, Brita Metro Water Pitcher, evidencing the deception.[8]



---

[8] https://www.target.com/p/brita-water-filter-6-cup-metro-water-pitcher-dispenser-with-standard-water-filter/-/A-53267503?preselect=53162438#lnk=sametab

June 15, 2022
Page 4 of 9

Defendant's front label claims, including, "THE #1 FILTER" and "reduces chlorine (taste and odor), mercury, copper, and more," communicate that the Products are effective tap water filters.[8] In actuality, the Products materially omit the fact that they fail to filter, in various combinations, some of the highest-risk contaminants from consumers' tap water, such as arsenic, lead, total trihalomethanes (TTHMs), polyfluoroalkyl and perfluoroalkyl substances (PFAs), chromium-6 (hexavalent chromium), organic chemicals such as atrazine, trichloroethylene, and tetrachloroethylene, and nitrates and nitrites.[9,10,11,12,13]

Plaintiff purchased a Brita Metro Water Pitcher from a store in Los Angeles, CA in or around early 2022. Plaintiff made his purchase decision in part based on his belief that he would receive a product that could effectively filter contaminants from his tap water. Plaintiff paid approximately $15.00 for the Product and would not have bought the Product, or would have paid significantly less for the Product, if he had known it could not effectively filter contaminants of concern from his tap water. Plaintiff would like to purchase the Products again in the future if he could be sure the Products were compliant with California and federal consumer protection and labeling laws.

## II.    BASIS OF PLAINTIFF'S CLAIMS

Clean drinking water, once safeguarded as essential to American health and prosperity, is no longer a privilege enjoyed by the consuming public.[14] "The array of toxic pollutants in California drinking water could in combination cause more than 15,000 excess cases of cancer," according to the first peer-reviewed study to assess the cumulative risk from carcinogenic drinking water contaminants.[15] Consumers are not drinking one chemical at a time; rather, just one glass of California tap water often contains a cocktail of harmful chemicals.[15] Assessed together, the array of carcinogenic contaminants in consumers' water supplies creates serious increased risk of a range of negative health effects, including, with increasing degrees of frequency and severity, cancer.[15]

The most harmful water supply contaminants contributing to increased lifetime cancer risk include arsenic, carcinogenic disinfection byproducts, hexavalent chromium, radioactive

---

[9] *Drinking Water Contaminants - US EPA*. https://www.epa.gov/sites/default/files/2015-10/documents/ace3_drinking_water.pdf.

[10] "Department of Labor Logo United States department of Labor." *Hexavalent Chromium - Overview | Occupational Safety and Health Administration*, https://www.osha.gov/hexavalent-chromium.

[11] National Center for Biotechnology Information. "PubChem Compound Summary for CID 6359,
Bromodichloromethane" *PubChem*, https://pubchem.ncbi.nlm.nih.gov/compound/Bromodichloro methane (Last visited June 14, 2022).

[12] *Glossary: Dibromochloromethane*,
https://www.greenfacts.org/glossary/def/dibromochloromethane.htm.

[13] *EPA*, Environmental Protection Agency, https://www.epa.gov/pfas/pfas-explained.

[14] Teresa Cotsirilos,   January 12. "Study: Nearly 400,000 Californians Lack Safe Drinking Water, Often Due to AG Pollution." *Food and Environment Reporting Network*,
https://thefern.org/ag_insider/study-nearly-400000-californians-lack-safe-drinking-water-often-due-to-ag-
pollution/#:~:text=Drinking%20water%20for%20more%20than,agricultural%20industry%20is% 20to%20blame.

[15] *California Drinking Water: How the Combination of Multiple Contaminants Raises Cancer Risks*. Environmental Working Group.
https://www.ewg.org/research/california-drinking-water (Last visited June 14, 2022).

June 15, 2022
Page 5 of 9

elements, and carcinogenic volatile organic chemicals.[16] Defendant's best-selling Products ("THE #1 FILTER" according to Defendant's sales data) do not effectively remove these contaminants, and Defendant fails to warn consumers of the same. Accordingly, Defendant's labeling, advertising, marketing, and packaging of the Products as effective "water filtration systems" is false, misleading, and deceptive. The Products' front labels lead reasonable consumers to believe that the Products effectively filter contaminants of concern from tap water. In reality, the Products' front labels materially omit the fact that they fail to filter some of the most harmful contaminants in California and United States' water supplies, such as, in various combinations, arsenic, lead, total trihalomethanes (TTHMs), polyfluoroalkyl and perfluoroalkyl substances (PFAs), chromium-6 (hexavalent chromium), organic chemicals such as atrazine, trichloroethylene, and tetrachloroethylene, and nitrates and nitrites.[17,18,19,20,21]

The majority of the Products' filtration systems are coconut-based granulated activated carbon filters.[22] While these filters are effective in reducing some contaminants, such as copper, chlorine, and mercury, they cannot remove the contaminants which pose the highest risks to human health.[23] Accordingly, Defendant's claim that the Products are effective "water filtration systems," without any warning of their failure to remove the aforementioned harmful contaminants, is not only false and misleading, it poses a serious risk of harm and a grave false sense of security to consumers seeking clean drinking water.

Inorganic arsenic is highly toxic, naturally found in the earth's crust, and "is widely distributed throughout the environment in the air, water, and land."[24] However, arsenic poses the largest threat to public health through contaminated water.[24] Long-term exposure leads to chronic arsenic poisoning, of which skin lesions and skin cancer are common.[24] At certain locations, water in California contains "more than double the average arsenic contaminant levels of the United States."[25] All contaminants have a federal legal limit (in parts per billion) that they

---

[16] Stoiber et al., *Applying a Cumulative Risk Framework to Drinking Water Assessment: A Commentary*. Environmental Health (2019) 18:37 doi: https://doi.org/10.1186/s12940-019-0475-5 (Last visited June 14, 2022)

[17] *Drinking Water Contaminants - US EPA*. https://www.epa.gov/sites/default/files/2015-10/documents/ace3_drinking_water.pdf.

[18] "Department of Labor Logo United States department of Labor." *Hexavalent Chromium - Overview | Occupational Safety and Health Administration*, https://www.osha.gov/hexavalent-chromium.

[19] National Center for Biotechnology Information. "PubChem Compound Summary for CID 6359,
Bromodichloromethane" *PubChem*, https://pubchem.ncbi.nlm.nih.gov/compound/Bromodichloro methane. (Last visited June 14, 2022).

[20] *Glossary: Dibromochloromethane*,
https://www.greenfacts.org/glossary/def/dibromochloromethane.htm.

[21] *EPA*, Environmental Protection Agency, https://www.epa.gov/pfas/pfas-explained.

[22] *What makes Brita Filters Better?"* Brita.com https://www.brita.com/why-brita/better-water/ (Last visited June 14, 2022).

[23] *Water Filter Technology: A Primer"* Environment Working Group (August 2020) https://www.ewg.org/tapwater/water-filter-technology.php#carbon (Last visited June 14, 2022).

[24] "Arsenic." *World Health Organization*, World Health Organization, https://www.who.int/news-room/fact-sheets/detail/arsenic.

[25] Whitney, & S., W. (2021, June 18). *Los Angeles Tap Water Quality 2019: Is La Tap Water Safe to drink?* Premiere Sales. Retrieved May 10, 2022, from https://premieresales.com/la-tap-water-drinking-water-los-angeles-california-water-quality/ (last visited June 14, 2022).

June 15, 2022
Page 6 of 9

cannot exceed, such as 10 ppb for arsenic.[26] But a federal legal limit does not promise safe living conditions, as the health-based recommendation for arsenic is 0.004 ppb.[26] According to recent findings, arsenic alone contributes to 7,251 cancer cases that could be avoided with efficient filtration in California.[27] Brita's Products do not filter arsenic from tap water and Defendant fails to inform consumers of the same.[28]

Brita water filters also fail to remove chromium-6 (or "hexavalent chromium"), the notorious "Erin Brockovich" chemical.[29] Chromium-6 is used in a number of industrial processes, such as corrosion-resistant coatings, leather tanning, chromium plating, colored glass marking, and in paints and inks that color plastics.[30] Exposure to relatively low amounts of chromium-6 is linked to an increased risk of cancer and individuals who have poor liver function or are taking antacids are at an increased risk from chromium-6 exposure.[31] In one study in Parajo Valley Unified School District (CA), researchers discovered that the 50 ppb hexavalent chromium maximum contaminant level (MCL) was 500 times higher than the Public Health Goal of 0.02 ppb.[32] State and local governments have failed to effectively reduce or remove hexavalent chromium from municipal water supplies, despite the decades of research indicating its potential for grave harm. Instead, consumers turn to water filters, such as the Products, for assurance that their drinking water is free from contamination. Defendant's "water filtration system" does not remove hexavalent chromium from consumers' drinking water. Defendant fails to inform consumers that its Products do not filter hexavalent chromium from tap water.

In addition to arsenic and hexavalent chromium, the Products fail to remove PFAs.[33] Per- and polyfluoroalkyl substances ("PFAs") are widely-used, long-lasting chemicals of industry, components of which break down very slowly over time.[34] Their inability to break down, combined with their potential to accumulate in people, animals, and the environment over time,

---

[26] *EPA*, Environmental Protection Agency, https://www.epa.gov/dwreginfo/chemical-contaminant-rules.
[27] *California Drinking Water: How the Combination of Multiple Contaminants Raises Cancer Risks*. Environmental Working Group. https://www.ewg.org/research/california-drinking-water (Last visited June 14, 2022).
[28] Barnaby, et al. "Effectiveness of table top water pitcher filters to remove arsenic from drinking water," Environmental Research (2017) 158:610-615, ISSN 0013-9351, https://doi.org/10.1016/j.envres.2017.07.018.
[29] Millar, Helen. (2022, March 24), Do Brita filters work? What to know, *Medical News Today*, https://www.medicalnewstoday.com/articles/do-brita-filters-work-effectiveness-and-what-they-filter (Last visited June 14, 2022)
[30] Rafferty, John P. *What is Hexavalent Chromium (or Chromium-6)*, Britannica, https://www.britannica.com/story/what-is-hexavalent-chromium-or-chromium-6 (Last visited June 14, 2022)
[31] "What Is Chromium-6? Here's What You Need to Know." *Environmental Working Group*, 26 May 2022, https://www.ewg.org/news-insights/news/2022/03/what-chromium-6-heres-what-you-need-know.
[32] J. M., Staff Report - May 10, & -, S. R. (2020, January 3). *Ohlone school grappling with water quality issues - the Pajaronian: Watsonville, CA*. The Pajaronian | Watsonville, CA. https://pajaronian.com/ohlone-school-grappling-with-water-quality-issues/ (Last visited June 14, 2022).
[33] *Brita*, https://www.brita.com/why-brita/better-water/.
[34] Environmental Protection Agency. (n.d.). *PFAS Explained*. EPA. https://www.epa.gov/pfas/pfas-explained (Last visited June 14, 2022).

June 15, 2022
Page 7 of 9

earned them the ominous name, "forever chemicals."[35] Current peer-reviewed scientific studies have shown that exposure to certain levels of PFAs may lead to negative reproductive effects, such as decreased fertility or increased high blood pressure in pregnant women; negative developmental effects, or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes; increased risk of cancers, including prostate, kidney, and testicular cancers; reduced ability of the body's immune system to fight infections, including reduced vaccine response; interference with the body's natural hormones; and increased cholesterol levels and risk of obesity.[36,37] PFA water pollution is "widespread throughout the state," in fact, "at least 69 percent of state-identified disadvantaged communities have PFA contamination in their public water systems."[38] Defendant's "water filtration system" does not remove PFAs from consumers' drinking water and Defendant fails to inform consumers of the same.

Defendant highlights that its Standard Filter effectively "reduce[s] mercury and chlorine taste and odor" and "captures copper, zinc, and cadmium," and thereby indicates to consumers that these highlighted chemicals are the most important to remove from their drinking water.[39] However, these chemicals are not the most prevalent contaminants in the California water supply, nor the most harmful.[40] Chlorine is widely used as a disinfectant in municipal water supplies to prevent microorganisms from growing in the water distribution system.[41] Mercury is rarely found in tap water, and where it is, it is at significantly lower concentrations than the arsenic, chromium, and PFAs.[42] While copper is a contaminant in municipal water supplies "the copper content is potable water is generally low," and what contamination there is often results from household copper pipes.[43]

[35] Environmental Protection Agency. (n.d.). *Per- and Polyfluoroalkyl Substances (PFAS)*. EPA. https://www.epa.gov/pfas; https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (Last visited June 14, 2022).

[36] Environmental Protection Agency. (n.d.). *Per- and Polyfluoroalkyl Substances (PFAS)*. EPA. https://www.epa.gov/pfas; https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (Last visited June 14, 2022).

[37] Group, E. W. (n.d.). *The pfas and the furious*. Environmental Working Group – Know your choices. https://www.ewg.org/research/the-pfas-and-the-furious/ (Last visited June 14, 2022)

[38] Dirty Water: Toxic "Forever" PFAS Chemicals Are Prevalent in the Drinking Water of Environmental Justice Communities, National Resources Defense Counsel (August 18, 2021). https://www.nrdc.org/resources/dirty-water-toxic-forever-pfas-chemicals-are-prevalent-drinking-water-environmental (Last visited June 14, 2022).

[39] *Brita*, https://www.brita.com/better-water/how-do-brita-filters-work/.

[40] Teresa Cotsirilos, & nbsp; January 12. "Study: Nearly 400,000 Californians Lack Safe Drinking Water, Often Due to AG Pollution." Food and Environment Reporting Network, https://thefern.org/ag_insider/study-nearly-400000-californians-lack-safe-drinking-water-often-due-to-ag-pollution/#:~:text=Drinking%20water%20for%20more%20than,agricultural%20industry%20is%20to%20blame.

[41] California Water Service, "Why is Drinking Water Chlorinated?" https://www.calwater.com/help/water-quality-faqs/why-is-drinking-water-chlorinated-chloraminated/ (Last visited June 14, 2022).

[42] "Mercury: Inorganic" Environmental Working Group. https://www.ewg.org/tapwater/contaminant.php?contamcode=1035 (Last visited June 14, 2022).

[43] Office of Environmental Health Hazard Assessment: Copper, (Feb. 2008), https://oehha.ca.gov/media/downloads/water/chemicals/phg/copperphg020808.pdf (Last visited June 14, 2022).

June 15, 2022
Page 8 of 9

It is misleading for Defendant to promote that the Products filter chlorine, mercury, copper, zinc, and cadmium while more prevalent and dangerous contaminants—contaminants that can cause irreversible harm to the human body[44]—remain.  The Products cannot filter some of the most acute toxicants from tap water, such as, in various combinations, arsenic, lead, total trihalomethanes (TTHMs), polyfluoroalkyl and perfluoroalkyl substances (PFAs), chromium-6 (hexavalent chromium), organic chemicals such as atrazine, trichloroethylene, and tetrachloroethylene, and nitrates and nitrites.[45,46,47,48,49]

By marketing its "water filtration systems" as effective water filters and failing to inform consumers that they do not filter the contaminants of highest concern from consumers' tap water, Defendant labels and advertises, through a uniform and consistent message, that the Products are something that they are not: effective water filtration systems. Defendant disseminates this uniform message through a broad range of media, including, by way of example and without limitation, claims on its official website, packaging and labeling, and the like. This creates consumer confusion about which water filters are truly effective at removing chemicals of concern from drinking water. It also exposes the consuming public to harmful pollutants without their knowledge or consent.

## III.    DEMAND FOR RELIEF

Pursuant to California Civil Code Section 1782(b), Plaintiff demands that Defendant agree to correct, repair, and rectify its unlawful acts within 30 days. In particular, Plaintiff demands that Defendant terminate its unlawful business practice as set forth herein. We also request that Defendant compensate Plaintiff for his attorney's fees and costs pursuant to Civil Code section 1780(e) and Code of Civil Procedure section 1021.5.

**Litigation Hold Notice:** This letter also serves as a demand that you preserve and maintain all of the following records, including but not limited to, all electronically stored information ("ESI"), records, and date, pending resolution of this matter, in accordance with state and federal law:

(1)    All internal manuals, written policies, directives, memoranda, correspondence, emails, ESI, and all other records of communication concerning the Products' sales within the last four (4) years;

---

[44] Bendix, A. (2019, July 5). *11 terrifying things that could be lurking in your tap water*. Business Insider. https://www.businessinsider.com/toxic-chemicals-tap-drinking-water-2019-4 (Last visited June 14, 2022).
[45] *Drinking Water Contaminants - US EPA*. https://www.epa.gov/sites/default/files/2015-10/documents/ace3_drinking_water.pdf.
[46] "Department of Labor Logo United States department of Labor." *Hexavalent Chromium - Overview | Occupational Safety and Health Administration*, https://www.osha.gov/hexavalent-chromium.
[47] National Center for Biotechnology Information. "PubChem Compound Summary for CID 6359,
Bromodichloromethane" *PubChem*, https://pubchem.ncbi.nlm.nih.gov/compound/Bromodichloro methane (Last visited June 14, 2022).
[48] *Glossary: Dibromochloromethane*,
https://www.greenfacts.org/glossary/def/dibromochloromethane.htm.
[49] *EPA*, Environmental Protection Agency, https://epa.gov/pfas/pfas-explained.

June 15, 2022
Page 9 of 9

    (2)     All internal manuals, written policies, directives, memoranda, correspondence, emails, ESI, and all other records of communication concerning the Products' labeling and advertising within the last four (4) years;

    (3)     All materials disseminated to consumers, including all communications by email and other correspondence, including ESI, that discuss or concern the Products within the last four (4) years;

    (4)     All internal manuals, written policies, directives, memoranda, correspondence, emails, ESI, and all other records of communication concerning the Products' filters and efficacy within the last four (4) years;

    (5)     All internal manuals, written policies, directives, memoranda, correspondence, emails, ESI, and all other records of communication concerning scientific studies, journals, or articles regarding the Products' filters and efficacy within the last four (4) years;

    (6)     All documents, including ESI, concerning consumer and employee complaints from all sources in connection with the Products within the last four (4) years;

If you wish to discuss this matter prior to Plaintiff initiating formal litigation, please contact me at landerson@clarksonlawfirm.com. If we do not hear from you on or before July 18, 2022, then we, on behalf of Plaintiff and the proposed Plaintiff Class, will file our client's complaint.

Thank you for your attention to this matter.

Sincerely,

CLARKSON LAW FIRM, P.C.

Lauren E. Anderson, Esq.



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
330 N Brand Blvd, Ste 700
Glendale, CA 91203

9590 9402 7330 2028 3670 47

2. Article Number (Transfer from service label)

7021 0950 0001 5075 7715

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                  ☐ Agent
                                   ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

JUN 2 3 2022

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

Delivery Service

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   ($0)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brita Products Company
1221 Broadway, STE. 2300
Oakland, CA 94612

9590 9402 7330 2028 3670 30

2. Article Number (Transfer from service label)
7021 0950 0001 5075 7722

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Jeremy Pachter

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery
   20)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

USPS.COM®

Quick Tools       Send       Receive       Shop       Business       International       Help

## USPS Tracking®

Tracking    |    FAQs ›

**Track Packages**
**Anytime, Anywhere**
Get the free Informed Delivery® feature to receive automated notifications on your packages

Learn More

Tracking Number:

**70210950000150757722**

Copy    Add to Informed Delivery

Remove ✕

**Latest Update**

Your item was picked up at a postal facility at 4:39 pm on June 21, 2022 in OAKLAND, CA 94612.

Get More Out of USPS Tracking:

USPS Tracking Plus®

● **Delivered**
**Delivered, Individual Picked Up at Postal Facility**
OAKLAND, CA 94612
June 21, 2022, 4:39 pm

● **No Access to Delivery Location**
OAKLAND, CA 94612
June 21, 2022, 9:13 am

● **Out for Delivery**
OAKLAND, CA 94612
June 21, 2022, 7:05 am

● **Arrived at Post Office**
OAKLAND, CA 94612
June 21, 2022, 6:54 am

● **In Transit to Next Facility**
June 20, 2022

● **Departed USPS Regional Facility**
OAKLAND CA DISTRIBUTION CENTER
June 18, 2022, 10:32 pm

● **Arrived at USPS Regional Facility**
OAKLAND CA DISTRIBUTION CENTER
June 18, 2022, 7:00 am

● **Departed USPS Regional Facility**
TACOMA WA DISTRIBUTION CENTER
June 17, 2022, 10:33 am

● **Arrived at USPS Regional Facility**
TACOMA WA DISTRIBUTION CENTER
June 16, 2022, 11:13 pm

Hide Tracking History

Text & Email Updates                                          ⌄

USPS Tracking Plus®                                           ⌄

Product Information                                           ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers.

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs



USPS.COM®

**HELPFUL LINKS**
Contact Us
Site Index
FAQs
Feedback

**ON ABOUT.USPS.COM**
About USPS Home
Newsroom
USPS Service Updates
Forms & Publications
Government Services
Careers

**OTHER USPS SITES**
Business Customer Gateway
Postal Inspectors
Inspector General
Postal Explorer
National Postal Museum
Resources for Developers

**LEGAL INFORMATION**
Privacy Policy
Terms of Use
FOIA
No FEAR Act/EEO Contacts
Accessibility Statement

Copyright © 2023 USPS. All Rights Reserved.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Ryan J. Clarkson (SBN 257074) Katherine A. Bruce (SBN 288694)
Kelsey J. Elling (SBN 337915) Olivia Treister (SBN 341191)
Clarkson Law Firm, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265
TELEPHONE NO.: (213) 788-4050    FAX NO.: (213) 788-4070
ATTORNEY FOR *(Name):* Plaintiff Nicholas Brown

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

**Electronically FILED by
Superior Court of California,
County of Los Angeles
8/16/2023 9:39 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk**

CASE NAME:
Brown v. The Brita Products Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] **Counter**   [ ] **Joinder** <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 23STCV19534 <br> JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* 5; violations of Consumer Legal Remedies Act
5. This case [✓] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 8/16/2023

Katherine A. Bruce
(TYPE OR PRINT NAME)                              ► (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| Brown v. The Brita Products Company | 23STCV19534 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.  Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.  Location where petitioner resides. |
| 2.  Permissive filing in Central District. | 8.  Location wherein defendant/respondent functions wholly. |
| 3.  Location where cause of action arose. | 9.  Location where one or more of the parties reside. |
| 4.  Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.  Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.  Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Brown v. The Brita Products Company | |

| | | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | | ☐ 2307 Construction Accidents | 1, 4 |
| | | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | | Business Tort (07) | ☑ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

172

| SHORT TITLE | CASE NUMBER |
|---|---|
| Brown v. The Brita Products Company | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Brown v. The Brita Products Company | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Brown v. The Brita Products Company | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: |
|---|---|
| CITY:  STATE:  ZIP CODE: | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __08/16/2023_____          _____

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

175

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THE BRITA PRODUCTS COMPANY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NICHOLAS BROWN, individually and on behalf of all others similarly situated

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/16/2023 9:39 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER: |
| --- | --- |
| The name and address of the court is: Sup. Ct. of CA, County of Los Angeles | *(Número del Caso):* |
| *(El nombre y dirección de la corte es):* | 23STCV19534 |

Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ryan J. Clarkson, Katherine A. Bruce, Kelsey J. Elling, Olivia Treister, Clarkson Law Firm, P.C.

22525 Pacific Coast Highway, Malibu, CA 90265; (213) 788-4050

| DATE: 08/16/2023 | Clerk, by | David W. Slayton, Executive Officer/Clerk of Court | , Deputy |
| --- | --- | --- | --- |
| *(Fecha)* | *(Secretario)* | J. Nunez | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
| --- | --- | --- |
| Judicial Council of California | | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | | |

DocuSign Envelope ID: 81EAAF79-D7E0-4F1D-B967-98573EC19184

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
Olivia Treister (SBN 341191)
*otreister@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/16/2023 4:42 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Carini, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| NICHOLAS BROWN, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE BRITA PRODUCTS COMPANY,<br><br>        Defendant. | Case No.   23STCV19534<br><br>**DECLARATION OF PLAINTIFF NICHOLAS BROWN PURSUANT TO CAL. CIV. CODE § 1780(D)** |

DocuSign Envelope ID: 84EAAE79-D7E0-4F1D-B967-98573EC19184

I, Nicholas Brown, declare as follows:

1.    I am a Plaintiff in this putative class action and a citizen of the State of California. I have personal knowledge of the facts stated herein (except where expressly stated as based upon information and belief) and, if called as a witness, I could and would testify competently thereto.

2.    Based upon information and belief, the complaint being filed in the County of Los Angeles, State of California, for the above-entitled action, is being filed in the proper place for trial under California Civil Code Section 1780(d), in that Defendant conducts a substantial amount of business in the County of Los Angeles, including, for example, the marketing, advertising, and sale of Brita water filtration devices, such as the Products at issue in this case.

3.    Additionally, it is my understanding and belief that this case arises out of a transaction that occurred in the County of Los Angeles. I am a resident of the County of Los Angeles. While living in this County, I purchased a Brita Everyday Water Pitcher and Brita Standard Filter from a retailer located in the County of Los Angeles. In making the purchase, I relied on the Product (a home water filtration device) and certain packaging and labeling claims, which led me to believe that the Product would remove or reduce to below lab detectable limits contaminants found in drinking water that are hazardous to health. I would not have purchased the Product, if I had known that it would not remove or reduce such contaminants to below lab detectable limits.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on 8/15/2023 .

_____
Nicholas Brown

DECLARATION OF PLAINTIFF BROWN PURSUANT TO CAL. CIV. CODE § 1780(D)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>08/16/2023<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ J. Nunez _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>23STCV19534 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Kenneth R. Freeman | 14 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 08/16/2023
    (Date)

David W. Slayton, Executive Officer / Clerk of Court

By J. Nunez_____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## Superior Court of California, County of Los Angeles

---

### ALTERNATIVE DISPUTE RESOLUTION (ADR)
### INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

<u>**What is ADR?**</u>

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

<u>**Advantages of ADR**</u>

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

<u>**Disadvantages of ADR**</u>

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

<u>**Main Types of ADR**</u>

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

       **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

       **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                              (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)
Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)
Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)
Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

| LACIV 229 (Rev 02/15)<br>LASC Approved 04/11 | **STIPULATION – EARLY ORGANIZATIONAL MEETING** | Page 2 of 2 |

185

Print    Save    Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:        FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

     iii.    Be filed within two (2) court days of receipt of the Request; and

     iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

187

Page 2 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

Date: _____

➢ _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

Date: _____

➢ _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

[ Print ]   [ Save ]                                    [ Clear ]

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)
189

Print     Save     Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine.  Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine.  In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions.  If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues.  For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference.  Each side's portion of the short joint statement of issues may not exceed three pages.  The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

Print    Save    Clear

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

# FILED

LOS ANGELES SUPERIOR COURT

MAY 11 2011

JOHN A. CLARKE, CLERK
*N. Navarro*
BY NANCY NAVARRO, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

General Order Re )
Use of Voluntary Efficient Litigation )
Stipulations )
)
)
)
_____ )

ORDER PURSUANT TO CCP 1054(a),
EXTENDING TIME TO RESPOND BY
30 DAYS WHEN PARTIES AGREE
TO EARLY ORGANIZATIONAL
MEETING STIPULATION

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

-1-

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_

_____
Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 3 2019

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT ) | FIRST AMENDED GENERAL ORDER |
| — MANDATORY ELECTRONIC FILING ) | |
| FOR CIVIL ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

    a) **"Bookmark"**   A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

    b) **"Efiling Portal"**   The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

    c) **"Electronic Envelope"**   A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

    d) **"Electronic Filing"**   Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

1    d) Documents in Related Cases

2        Documents in related cases must be electronically filed in the eFiling portal for that case type if

3        electronic filing has been implemented in that case type, regardless of whether the case has

4        been related to a Civil case.

5    3) EXEMPT LITIGANTS

6        a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt

7            from mandatory electronic filing requirements.

8        b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of

9            Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused

10           from filing documents electronically and be permitted to file documents by conventional

11           means if the party shows undue hardship or significant prejudice.

12   4) EXEMPT FILINGS

13       a) The following documents shall not be filed electronically:

14           i)    Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of

15                 Civil Procedure sections 170.6 or 170.3;

16           ii)   Bonds/Undertaking documents;

17           iii)  Trial and Evidentiary Hearing Exhibits

18           iv)   Any ex parte application that is filed concurrently with a new complaint including those

19                 that will be handled by a Writs and Receivers department in the Mosk courthouse; and

20           v)    Documents submitted conditionally under seal.  The actual motion or application shall be

21                 electronically filed.  A courtesy copy of the electronically filed motion or application to

22                 submit documents conditionally under seal must be provided with the documents

23                 submitted conditionally under seal.

24       b) Lodgments

25           Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in

26       paper form.  The actual document entitled, "Notice of Lodgment," shall be filed electronically.

27   //

28   //

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day <u>before</u> the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i) Any printed document required pursuant to a Standing or General Order;

   ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv) Demurrers;

   v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi) Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1    11) SIGNATURES ON ELECTRONIC FILING

2        For purposes of this General Order, all electronic filings must be in compliance with California

3        Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4        Division of the Los Angeles County Superior Court.

5

6            This First Amended General Order supersedes any previous order related to electronic filing,

7        and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8        Supervising Judge and/or Presiding Judge.

9

10       DATED: May 3, 2019        KEVIN C. BRAZILE

11                                                     Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

    a.  **The Civil Mediation Vendor Resource List**
        If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

        • **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
        • **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

        **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

        **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

    b.  **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases. https://dcba.lacounty.gov/countywidedrp/

        **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

    c.  Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3.  **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4.  **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 03/23                                   Page 2 of 2
For Mandatory Use

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 3 2019

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )
− MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
_____ )

FIRST AMENDED GENERAL ORDER

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

    i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

    ii) Bonds/Undertaking documents;

    iii) Trial and Evidentiary Hearing Exhibits

    iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

    v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

   Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

   If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

   Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

   a) Filed Date

      i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

      ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

   a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day <u>before</u> the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i) Any printed document required pursuant to a Standing or General Order;

    ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii) Pleadings and motions that include points and authorities;

    iv) Demurrers;

    v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi) Motions for Summary Judgment/Adjudication; and

    vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1   11) SIGNATURES ON ELECTRONIC FILING

2     For purposes of this General Order, all electronic filings must be in compliance with California

3     Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4     Division of the Los Angeles County Superior Court.

5

6       This First Amended General Order supersedes any previous order related to electronic filing,

7   and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8   Supervising Judge and/or Presiding Judge.

9

10   DATED: May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

**VOLUNTARY EFFICIENT LITIGATION STIPULATIONS**



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application.  These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise?  If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve.  Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable?  Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation.  (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core."  In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case.  Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15)
LASC Approved 04/11
For Optional Use

**STIPULATION – EARLY ORGANIZATIONAL MEETING**
212

Page 1 of 2

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    <span>(INSERT DATE)</span>              <span>(INSERT DATE)</span>
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

| LACIV 229 (Rev 02/15)<br>LASC Approved 04/11 | **STIPULATION – EARLY ORGANIZATIONAL MEETING** | Page 2 of 2 |
|---|---|---|

213

Print     Save     Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

   i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

   ii. Include a brief summary of the dispute and specify the relief requested; and

   iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

   i. Also be filed on the approved form (copy attached);

   ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

      iii.    Be filed within two (2) court days of receipt of the Request; and

      iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use
**STIPULATION – DISCOVERY RESOLUTION**
215
Page 2 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____

➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

Date: _____

➢ _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

| Print | Save |          | Clear |

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

216

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

217

Print    Save    Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine.  Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine.  In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions.  If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues.  For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference.  Each side's portion of the short joint statement of issues may not exceed three pages.  The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| Print | Save | | Clear |
|---|---|---|---|

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

# FILED

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

BY NANCY NAVARRO, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

General Order Re )  ORDER PURSUANT TO CCP 1054(a),
Use of Voluntary Efficient Litigation )  EXTENDING TIME TO RESPOND BY
Stipulations )  30 DAYS WHEN PARTIES AGREE
  )  TO EARLY ORGANIZATIONAL
  )  MEETING STIPULATION
_____ )

Whereas the Los Angeles Superior Court and the Executive Committee of the

Litigation Section of the Los Angeles County Bar Association have cooperated in

drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los

Angeles County Bar Association Labor and Employment Law Section; the Consumer

Attorneys Association of Los Angeles; the Association of Southern California Defense

Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

Employment Lawyers Association all "endorse the goal of promoting efficiency in

litigation, and ask that counsel consider using these stipulations as a voluntary way to

promote communications and procedures among counsel and with the court to fairly

resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)